John Mayfield Rushing (SBN # 24034659)
Ryan McCarl (Cal SBN # 302206)
Davit Avagyan (Cal SBN # 336350)
Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant Colynda Williams-Arowolo*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| T2 MODUS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>COLYNDA WILLIAMS-AROWOLO,<br><br>Defendant. | Case No. 4:22-cv-263<br><br>Defendant Colynda Williams-Arowolo's First Amended Counterclaims |
| COLYNDA WILLIAMS-AROWOLO,<br><br>Counterclaimant,<br><br>v.<br><br>T2 MODUS, LLC and JIM ROACH,<br><br>Counterdefendants. | |

Defendant and Counterclaimant Colynda Williams-Arowolo ("Williams") alleges — with personal knowledge as to Williams' own actions and upon information and belief as to the actions of others — as follows:

## INTRODUCTION

1. Williams was hired as T2 Modus, LLC ("T2")'s Vice President of Training and Education in December 2019.

2. Williams' excellent work performance earned her a promotion to Executive Vice President of Customer Excellence and Engagement around May 1, 2021.

3. In her positions with T2, Williams was earning a salary of $130,000 per year, as stated in her employment contract. As a salaried employee, she did not receive any overtime pay, despite regularly working overtime.

4. During the COVID-19 pandemic in 2020, T2 withheld wages owed to Williams and other employees in violation of Williams' employment contract and applicable labor laws. Williams worked for T2 throughout 2022, but Williams' W2 shows that T2 paid her only $99,948.78 for that year (not the contractually owed $130,000). T2 has, despite multiple promises, failed to make up for the deficiency.

5. Upon information and belief, T2 also eavesdropped on Williams' telephone conversations without her consent.

## PARTIES, JURISDICTION, AND VENUE

6. Counterclaimant Colynda Williams-Arowolo resides in San Pedro, California.

7. Counterdefendant T2 Modus, LLC is a Texas limited liability company with its principal place of business at 905 Shadow Ridge Drive, Highland Village, Texas 75077.

8. Counterdefendant Jim Roach is a resident of Texas and the Chief Executive Officer of T2 Modus, LLC. At all relevant times, he was acting within the scope of his employment as a managing agent of T2. He and T2 Modus are liable for each other's torts, and Roach is liable for his own torts. As a managing agent of T2, he is personally liable for T2's failure to pay Williams' wages under applicable law.

9. Upon information and belief, each Defendant is responsible in some way for the acts alleged in this Complaint and each proximately caused the Plaintiffs' damages. Each was acting as an agent for the others within the scope of that agency and with the others' authorization, participation, or approval.

10. Upon information and belief, each Defendant is an alter ego of the others. At all relevant times, there has existed a unity of interest and ownership between these Defendants such that any individuality and separateness between them have ceased. Adherence to the fiction of these Defendants as separate persons or entities would allow an abuse of the corporate privilege and sanction injustices.

11. Jurisdiction is proper under 28 U.S.C. § 1367. Williams brings this counterclaim in an action initiated by T2, over which this Court has jurisdiction under 28 U.S.C. § 1331.

## Common Allegations

12. Williams was hired by T2 and entered into an Employment Agreement with T2 dated December 1, 2019 ("Employment Agreement"). A copy of the Employment Agreement is attached as Exhibit A and incorporated here by reference.

13. The Employment Agreement provides that Williams "will be paid a $10,833.33 monthly salary, one hundred thirty thousand ($130,000 on an annualized basis)."[1] But in 2020, T2, citing COVID-19 as an excuse, unilaterally cut employees' contractually owed wages and paid Williams only $99,948.78 — a shortfall of $30,051.22. (T2 may also have shortchanged Williams in 2021.)

14. The Employment Agreement includes no clauses that would excuse T2 from paying Williams her contractual salary, and T2 has no excuse for its failure to pay. T2 repeatedly promised to make catch-up payments, but never did so.

15. Williams' Employment Agreement provides that "[t]he prevailing party shall be entitled to recover from the losing party its attorneys' fees and costs incurred in any action brought to enforce any right arising out of this Agreement."[2] Williams will be entitled to attorney fees both on her counterclaims and on T2's underlying suit, which is a frivolous trade secrets lawsuit brought in bad faith with the intent to intimidate a former

[1] Exh. A, ¶ 2 ("Compensation"), subpara. (a) ("Salary/Wages").

[2] *Id.* ¶ 9 ("Attorneys' Fees").

employee and gain information about her new employer (a T2 competitor).

16. During the COVID-19 pandemic in 2020, T2 began withholding wages owed to Williams under the Employment Agreement, claiming that the company was facing financial difficulties due to the pandemic. But Williams was a salaried employee rather than a partner or shareholder, so T2 had no basis for reducing her wages.

17. T2 was approved to receive a federal loan under the Paycheck Protection Program ("PPP") on April 8, 2020.

18. In the calendar year 2020, T2 paid Williams total wages of $99,948.78.

19. In late 2020 or early 2021, T2 resumed paying Williams her full salary and promised to pay her the back wages she was owed from 2020. T2 failed to pay Williams these wages.

20. T2's PPP loan was forgiven on April 29, 2021. But at no time did T2 make up the shortfall in Williams' wages.

21. Williams continued to work for T2 until she resigned after the workday on December 13, 2021 to pursue another opportunity.

22. In December 2021, a T2 employee, acting as an agent of T2 and within the scope of their employment, informed Williams that her telephone conversations during work discussions and meetings had been recorded by that T2 employee.

23. Williams did not give T2 permission to record or eavesdrop on her telephone conversations, nor was she aware of any recording or eavesdropping.

## CAUSES OF ACTION

### Count I: Cal. Lab. Code §§ 202, 203, and 558.1

24. Each preceding paragraph is realleged and incorporated here by reference.

25. At all relevant times, Williams resided in and worked for T2 from California. Because she worked the majority of time in California and California was the physical location where she presented herself for work, the California Labor Code applied to Williams at the time she was employed by T2.[3]

26. An employee that leaves her employment without a 72-hour notice is entitled to receive payment of all wages owed to her within 72 hours of the employment's termination.

27. Williams terminated her employment with T2 on December 13, 2021, after the workday ended.

28. On December 13, 2021, T2 owed Williams at least $30,051.22 in unpaid wages.

29. T2 willfully failed to pay Williams her owed wages.

---

[3] *See Ward v. United Airlines*, 986 F.3d 1234, 1238 (9th Cir. 2021).

30. Under Cal. Lab. Code § 203, if an employer willfully fails to pay owed wages by the statutory deadline, “waiting time” penalties begin to accrue. Here, T2 owes an estimated statutory penalty of $15,476.19.

31. Williams is also entitled to interest on all unpaid wages under Cal. Lab. Code § 218.6 and reasonable attorneys’ fees under Cal. Lab. Code § 218.5.

32. Under Cal. Lab. Code § 558.1, Roach as the owner and officer of T2, is personally liable to Williams for the violations of Cal. Lab. Code § 203.

33. Williams requests at least $30,051.22 in owed wages as well as prejudgment and statutory interest under Cal. Lab. Code §§ 202, 203, and 218.5; all applicable statutory penalties (in an amount of at least $15,476.19); and her attorneys’ fees and costs.

**Count II: Violation of Texas Labor Code §§ 61.014 and 61.018**

34. Each preceding paragraph is realleged and incorporated here by reference.

35. T2’s failure to pay Williams’ contractual wages also violated Texas Labor Code §§ 61.011, 61.014(b), 61.018, and other law. Texas law requires payment of owed wages at least monthly as well as payment in full by the next regularly scheduled payday to an employee who voluntarily leaves employment.

36. As described above and as reflected on Williams’ 2020 W2, T2 failed to Williams her contractual wages for numerous months in 2020 and ultimately shortchanged her by at least $30,051.22.

37. Williams voluntarily left employment with T2 on December 13, 2021, after the workday. Her next regularly scheduled payday was no later than December 31, 2021. But T2 willfully failed to pay Williams the amounts owed.

38. Under Texas's Civil Practice and Remedies Code § 38.001, Williams is entitled to back pay and attorneys' fees.

**Count III: Violation of Cal. Penal Code § 632**

39. Each preceding paragraph is realleged and incorporated here by reference.

40. On or about December 13, 2021, a T2 employee, acting as an agent of T2, informed Williams that her telephone conversations during work discussions and meetings were recorded by that T2 employee.

41. All conversations that were surreptitiously recorded were "confidential communications" within the meaning of Cal. Penal Code § 632(c). Williams expected and desired that these conversations would be confined to the parties on the call at that time.

42. Williams' expectation that the conversations were "confidential communications" was objectively reasonable as she was never informed that her conversations were being recorded and due to the private nature of the conversations, including business strategies and development.

43. T2, through its agents, intentionally recorded the conversations without advising Williams that the conversations were being recorded, in violation of Cal. Penal Code § 632(a).

44. At no time did Williams consent to T2 recording her conversations.

45. Williams is entitled to three times the amount of actual damages or $5,000 per violation under Cal. Penal Code § 637.2.

**Count IV: Breach of Contract**

46. Each preceding paragraph is realleged and incorporated here by reference.

47. T2 and Williams entered into an enforceable employment contract for Williams' services. That agreement is attached as Exhibit A and incorporated into this Countercomplaint by reference.

48. Williams fully performed under the Employment Agreement.

49. T2 breached the Employment Agreement by failing to pay Williams wages in the amount of $30,051.22 she was expressly owed under the agreement.

50. The Employment Agreement contains a fee-shifting clause.

51. Williams is entitled to compensatory damages in the amount of at least $30,051.22, statutory penalties, plus an award of attorneys' fees, costs and prejudgment interest.

**Count V: Unjust Enrichment**

52. Each preceding paragraph is realleged and incorporated here by reference.

53. T2 benefited from Williams' services but failed to pay her wages, thereby obtaining her services for less than their value.

54. T2 was unjustly enriched by obtaining free work from Williams.

55. The circumstances are such that T2 knew that it owed Williams for the services she provided and yet failed to pay her for such to unjustly enrich itself from Williams' labor. Williams requests restitution of all sums unjustly received by T2.

**Count VI: Violation of Cal. Bus. & Prof. Code § 17200 *et seq*.**

56. Each preceding paragraph is realleged and incorporated here by reference.

57. The allegations above describe several unlawful, unfair, or deceptive business practices that violate California's Business and Professional Codes § 17200 *et seq.*

58. T2's unlawful business practices are described throughout this counterclaim, and more will be uncovered in discovery. But they include, at minimum, violations of the California Labor Code through failing to pay wages and violations of Cal. Penal Code § 632 (which bars covert or nonconsensual audio recording and eavesdropping).

59. As a result of these violations, Williams has been harmed in an amount to be proved at trial. Williams asks for restitution of such sums.

**Relief Requested**

- Compensatory damages in the amount to be determined at trial, but in no event less than $30,051.22;
- Statutory penalties and damages in the amount to be determined at trial, but in no event less than $15,476.19;
- Statutory treble damages under Cal. Penal Code § 637.2;
- Disgorgement and restitution of all sums unjustly received by T2;
- Reasonable attorneys' fees in the amount to be determined at trial;
- Prejudgment interest;
- Costs of suit; and
- Any other relief the Court finds appropriate.

Dated: October 20, 2022

Respectfully submitted,

Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

# EXHIBIT A

# EMPLOYMENT AGREEMENT

This Employment Agreement is made and entered into by and between T2 Modus, LLC, a Texas Corporation (the "Company") and Colynda Williams-Arowolo ("Employee") as of December 1, 2019. Employee and Company is individually referred to herein as a "Party" and collectively as the "Parties".

## RECITALS

A. The Company desires to employ Employee and Employee desires to serve as an employee of the Company on the terms specified herein;

B. The Parties desire to set forth the terms of Employee's service as an employee of the Company, and Employee is willing to perform such services, all on the terms set forth herein;

## AGREEMENT

1. POSITION AND DUTIES: Employee will be employed by the Company effective December 1, 2019 as its Vice President of Training and Education reporting to Brad Nichols ("Supervisor"). Employee accepts employment with the Company on the terms and conditions set forth in this Agreement, and Employee agrees to devote his full business time, energy and skill to his duties at the Company. These duties shall include such duties consistent with Employee's position as may be assigned by the Supervisor.

2. COMPENSATION: Employee will be compensated by the Company for services as follows:

(a) Salary/Wages: Employee will be paid a $10,833.33 monthly salary, one hundred thirty thousand ($130,000 on an annualized basis), less applicable withholding, in accordance with the Company's normal payroll procedures. Employee's salary will be reviewed by the Company on an annual basis, and may be subject to adjustment based upon various factors including, but not limited to, his performance and the Company's profitability. Any adjustment to Employee's salary will be at the sole discretion of the Company.

(b) Benefits: No benefits are available to part time Employees. Employee will have the right to participate in and receive benefits under the Company's medical, disability or other group insurance plans or other benefit plans. In addition, Employee will be entitled to the benefits afforded to other employees under the Company's vacation, holiday and business expense reimbursement policies.

(c) Withholding: All bonuses, if any, will be subject to applicable withholding.

3. TERM OF EMPLOYMENT:

(a) Employee's employment with the Company is for no specified term, and may be terminated by Employee or the Company at any time, with or without cause upon notification via in person or over the phone and confirmed by email. Except as set forth below, upon the termination of his employment (whether his employment is terminated by the Company or Employee) Employee shall receive only Employee's Base Salary and Benefits earned under paragraph 2 through the date of such termination. Employee shall not be entitled to any severance pay or other benefits, except COBRA benefits, if any, as and to the extent prescribed by law.

(b) Termination For Cause. For purposes of the vesting of this Agreement, "termination for cause" shall be defined in the following manner:

(i) If the Employee's supervisor determines in good faith that Employee has failed, or is failing to comply with written instructions or directions of Employee's supervisor that are consistent with the terms of Employee's Employment Agreement, with reasonable performance objectives and with applicable local, state or federal law, unless such failure or refusal is cured within thirty (30) days after receipt of a written notice of intent to terminate for cause for failure to comply with such instructions, Employee may be terminated for cause; or

(ii) If, at any time during Employee's employment, Employee commits misconduct, which shall mean the commission of any act of fraud, embezzlement or dishonesty by Employee related to Employee's employment, any unauthorized use or disclosure by Employee of confidential information or trade secrets of T2 Modus (or any Subsidiary of T2 Modus), any breach of a material term of any employment, confidentiality or non-compete agreement between Employee and T2 Modus, any habitual and willful neglect of Employee's duties, any act that constitutes a felony, or any other intentional misconduct by Employee adversely affecting the business or affairs of T2 Modus (or any Subsidiary of T2 Modus) in a material manner, Employee may be terminated for cause.

4. CONFIDENTIAL AND PROPRIETARY INFORMATION: As a condition of his employment, Employee agrees to sign and abide by the Company's standard form of proprietary information and assignment of inventions agreements.

5. CONFLICTS WITH THIS AGREEMENT: Employee represents and warrants that Employee is not under any pre-existing obligation in conflict or in any way inconsistent with the provisions of this Agreement. Employee warrants that Employee has the right to disclose or use all ideas, processes, techniques and other information, if any, which Employee has gained from third parties, and which Employee discloses to the Company in the course of performance of this Agreement, without liability to such third parties. Employee represents and warrants that Employee has not granted any rights or licenses to any intellectual property or technology that would conflict with Employee's obligations under this Agreement. Employee will not knowingly infringe upon any copyright, patent, trade secret or other property right of any former client, employer or third party in the performance of the services required by this Agreement.

6. NON-COMPETITION: In order to protect the Company's valuable proprietary information, Employee agrees that during his employment and for a period of two years following the termination of his employment with the Company for any reason, he will not, directly or indirectly, engage in any business (whether as a compensated or uncompensated officer, director, consultant, advisor, partner, joint venturer, investor, independent contractor, employee or otherwise) which is, to the best of Employee's knowledge, competitive in any respect with the business in which the Company is involved or plans to be involved with as of the termination date**.** Employee acknowledges and agrees that the restrictions contained in the preceding sentence are reasonable and necessary, as there is a significant risk that his provision of labor, services, advice or assistance to any of the Company's competitors could result in the inevitable disclosure of the Company's proprietary information. Employee further acknowledges and agrees that the restrictions contained in this paragraph are not so broad as to prevent Employee from earning a livelihood or practicing Employee's chosen profession after termination of Employee's employment with the Company.

7. NON-SOLICITATION: Employee agrees that during his employment and for a period of two years following the termination of his employment with the Company for any reason, he will not, directly or indirectly recruit, induce or attempt to persuade any person who on the date hereof is, or subsequent thereto, becomes an employee, sales representative or consultant of the Company to terminate his or her relationship with the Company; provided, however, that Employee may engage in general non-targeted solicitation not directed at any such employee, representative or consultant.

8. DISPUTE RESOLUTION: In the event of any dispute or claim relating to or arising out of our employment relationship or this Agreement (including, but not limited to, any claims of breach of contract, wrongful termination or age, sex, disability, race, national origin or other discrimination or harassment), we agree that all such disputes shall be fully and finally resolved by binding arbitration. The arbitrator shall apply Texas law, without reference to rules of conflicts of law or rules of statutory arbitration, to the resolution of any dispute. We hereby agree to waive any and all rights that we have to bring such disputes to trial by a court or jury. However, we agree that this arbitration provision shall not apply to any dispute or claim relating to or arising out of the misuse or misappropriation of the Company's trade secrets or proprietary or confidential information.

9. ATTORNEYS' FEES: The prevailing party shall be entitled to recover from the losing party its attorneys' fees and costs incurred in any action brought to enforce any right arising out of this Agreement.

10. INTERPRETATION: This Agreement shall be interpreted in accordance with and governed by the laws of the State of Texas.

11. ASSIGNMENT: In view of the personal nature of the services to be performed under this Agreement by Employee, Employee shall not have the right to assign or transfer any of his obligations under this Agreement.

12. ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between Employee and the Company regarding the terms and conditions of his employment, with the exception of (i) the agreement described in paragraph 4. This Agreement (including the agreements described in (i) supersedes all prior negotiations, representations or agreements between Employee and the Company regarding his employment, whether written or oral.

13. MODIFICATION: This Agreement may only be modified or amended by a supplemental written agreement signed by an authorized executive of the Company.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year written below.

T2 Modus, LLC

Date: 11/18/2019

DocuSigned by: Brad Nichols
7F9067F27679445...
Brad Nichols- Executive Vice President OPS

Date: 11/19/2019

DocuSigned by: [signature]
B86CE6B6A7E443D...
Colynda Williams-Arowolo

## PROOF OF SERVICE

United States District Court, Eastern District of Texas

*T2 Modus, LLC v. Colynda Williams-Arowolo*

No. 4:22-cv-263

I, the undersigned, declare that I am over age 18, employed in Los Angeles, and not a party to this action. My business address is 929 McCarthy Ct., El Segundo, CA 90245. On October 20, 2022, I electronically served true and correct copies of the following document on the parties listed in the attached service list:

1. Defendant Colynda Williams-Arowolo's Counterclaims

I declare under penalty of perjury that the above is true.

______/s/ Ryan McCarl_____

Date: October 20, 2022

**Service List for**

***T2 Modus, LLC v. Colynda Williams-Arowolo***

John Rushing (SBN 24034659)
*john.rushing@rushingmccarl.com*
Rushing McCarl LLP
929 McCarthy Ct.
El Segundo, CA 90245
T: (310) 896-5082
F: (310) 388-6006

*Attorneys for Defendant and Counterclaim Plaintiff Colynda Williams-Arowolo*

William Finegan (SBN: 07008700)
*bfinegan@munsch.com*
Aynsley Young (SBN: 24102674)
*ayoung@munsch.com*
Munsch Hardt Kopf & Harr, P.C.
500 N. Akard St., Suite 3800
Dallas, Texas, 75201
T: (214) 855-7500
F: (214) 855-7584

*Attorneys for Plaintiff and Counterdefendant T2 Modus, LLC*