John Mayfield Rushing (SBN # 24034659)
Ryan McCarl (Cal SBN # 302206)
Davit Avagyan (Cal SBN # 336350)
Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082 E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant Colynda Williams-Arowolo*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

T2 MODUS, LLC,

*Plaintiff,*

v.

COLYNDA WILLIAMS-AROWOLO,

*Defendant.*

COLYNDA WILLIAMS-AROWOLO,

*Counter-Claimant,*

v.

T2 MODUS, LLC and JIM ROACH,

*Counter-Defendants.*

Case No. 4:22-cv-263

Defendant and Counterclaimant Colynda Williams-Arowolo's Notice of Motion and Motion for Summary Judgment

[Concurrently filed with Separate Statement of Undisputed Facts, Request for Judicial Notice, Declaration of Colynda Williams-Arowolo, and Declaration of Wyman King]

## WILLIAMS' STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

Plaintiff and Counterdefendant T2 Modus, LLC ("T2") licenses online customer database software to auto dealerships such as Freeman Honda, a dealership based in Dallas.

In January 2022, Freeman asked Defendant and Counterclaimant Colynda Williams-Arowolo ("Williams"), a former T2 employee, to log into Freeman's online T2 portal and export a CSV file containing data belonging to the dealership. She then did so on Freeman's behalf, logging in through normal means and using the download function that T2 made available to Freeman and other dealerships who wish to retrieve their data.

T2 then inexplicably sued Williams on theories of computer intrusion, theft of trade secrets, breach of fiduciary duty, etc. T2 has yet to identify any T2-owned data, much less trade secrets, that Williams misappropriated. Nor has it identified any damages it supposedly suffered as a result of Freeman's download of its own T2-hosted data.

The issues to be decided are as follows; each is governed by Fed. R. Civ. P. 56(a):

1. **T2's unlawful-access claims**. T2 alleges that Williams violated the Consumer Fraud and Abuse Act ("CFAA")[1] and Texas Harmful Access to Computers Act ("THACA").[2] Do these claims survive summary judgment, given that Freeman Honda authorized Williams to log into its licensed T2-hosted software account, and that T2 has adduced no evidence of fraudulent intent or damage?

2. **T2's trade secrets claim**. T2 alleges that Williams violated the Texas Uniform Trade Secrets Act ("TUTSA")[3]. Does this claim survive summary judgment, given that the

[1] 18 U.S.C. § 1030 *et seq.*; *see* 18 U.S.C. §§ 1030(a)(4), 1030(b)(5).

[2] Texas Pen. Code § 33.00; *see* Texas Pen. Code §§ 33.02(a), 33.01(15).

[3] *Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 186 (Tex. App. 2018); Texas Penal Code § 33.00 *et seq.*

data Williams downloaded either belonged outright to T2's customer Freeman Honda or was made freely available by T2 for Freeman Honda to download?

3. **T2's breach-of-NDA claim**. T2 alleges that Williams violated a nondisclosure agreement (NDA) by accessing unspecified confidential information and thereby causing unquantifiable damages. Does this claim survive summary judgment, given that the file Williams downloaded for Freeman Honda contained only data about Freeman Honda's customers (not T2's customers), and that any T2-owned data in the file had been freely disclosed by T2 to a third party?

4. **T2's fiduciary duty claim**. Is T2's breach-of-fiduciary duty claim preempted by T2's TUTSA claim? And even if it were not, can it survive summary judgment given that former employees owe no fiduciary duty to their former employers?

5. **Williams' unpaid wages counterclaims**. T2 and Williams signed a written employment agreement in which T2 agreed to pay Williams $130,000 per year. But in 2020, T2 and counterdefendant Jim Roach (T2's CEO) unilaterally decided that T2 didn't need to pay its employees, so it cut Williams' wages and ultimately underpaid her by $59,284.49. Is Williams entitled on summary judgment to recover her unpaid wages as well as their associated statutory penalties and attorney fees?

6. **T2's and Roach's defenses**. T2's answer conclusorily alleges five fact-free affirmative defenses, none of which is plausible or sufficiently pleaded. Neither T2 nor Roach (who shares liability for T2's failure to pay owed wages) has produced or can produce evidence supporting any defenses that could excuse their failure to pay employees in accordance with California and Texas labor law. Is Williams entitled to summary judgment on all the counterdefendants' affirmative defenses?

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

Please take notice that Defendant and Counterclaimant Colynda Williams-Arowolo ("Williams") hereby moves this Court under Fed. R. Civ. P. 56 for an order granting Williams summary judgment on all claims alleged in Plaintiff T2 Modus, LLC's ("T2") Complaint and on the unpaid wages claims in Williams' Counterclaim.

Specifically, Williams requests summary judgment in her favor and against T2 and Counterdefendant Jim Roach (T2's CEO) on the following claims, defenses, and issues:

*T2's Claims*

1. Violation of Computer Fraud and Abuse Act (Count 1)
2. Violation of the Texas Harmful Access to Computer Act (Count 2)
3. Violation of the Texas Uniform Trade Secrets Act (Count 3)
4. Breach of a Non-Disclosure Agreement (Count 4)
5. Breach of Fiduciary Duty (Count 5)

*Williams' Counterclaims against T2 and Roach*

6. Violation of Cal. Lab. Code §§ 202, 203, and 558.1 for failure to pay wages (Count 1)
7. Violation of Texas Lab. Code §§ 61.014 and 61.018 for failure to pay wages (Count 2)
8. Breach of Williams' employment contract for failure to pay wages (Count 3)
9. Unjust enrichment for failure to pay wages (Count 4)
10. Violation of Cal. Bus. & Prof Code § 17200 for failure to pay wages (Count 5)

Williams also requests summary judgment on all T2's and Roach's defenses and for a finding that Williams is entitled to attorney fees.

This Motion is based on the following documents, as well as any other papers filed or arguments made at or before a hearing:

- Statement of Issues and Memorandum of Points and Authorities in Support of Williams' Motion for Summary Judgment (attached)
- Declarations of Colynda Williams-Arowolo and Wyman King
- Request for Judicial Notice
- Any other papers submitted before, or arguments presented at, the hearing.

Dated: November 9, 2022

Respectfully submitted,

Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

## TABLE OF CONTENTS


I. Introduction ........ 9

II. Statement of Uncontested Facts ........ 9

III. Legal Standard ........ 13

IV. Williams is entitled to an order granting her summary judgment and dismissing all of T2's causes of action. ........ 15

A. Williams is entitled to judgment as a matter of law as to T2's statutory causes of action for unlawful computer access. ........ 16

1. There is no material question of fact as to whether Williams was permitted to access Freeman Honda's data and information through its online portal. ........ 17

2. There is no material question of fact as to whether Williams intended to defraud T2. ........ 18

3. There is no material question of fact as to whether T2 suffered any damages. ........ 20

B. Williams is entitled to judgment as a matter of law as to T2's TUTSA claim. ........ 20

C. Williams is entitled to judgment as a matter of law as to T2's NDA-related breach of contract claim. ........ 23

1. The NDA does not encompass the data in Freeman Honda's T2 account. ........ 24

2. The NDA excludes information that is disclosed to a third party without a duty of confidentiality on the third party. ........ 25

3. The NDA also excludes information rightfully received by Williams without any duty of confidentiality. ........ 25

D. Williams is entitled to judgment as a matter of law as to T2's breach of fiduciary duty claim. ........ 26

V. Williams is entitled to summary judgment on each of her counterclaims. ........ 28

A. Williams is entitled to judgment as a matter of law as to her Cal. Lab. Code §§ 202, 203, and 558.1 claims. ........ 28

B. Williams is entitled to summary judgment on her Texas Labor Code §§ 61.011, 61.014, and 61.018 claims. ........ 31

C. Williams is entitled to summary judgment as to her breach of contract claim. ........ 32

D. Williams is entitled to summary judgment for her unjust enrichment claim. 32

E. Williams is entitled to summary judgment as to her Cal. Bus. & Prof. Code § 17200 *et seq.* claims. 33

F. Calculation of damages on Williams' counterclaims 33

G. T2's affirmative defenses should be dismissed. 34

VI. Conclusion 34

## TABLE OF AUTHORITIES

**Cases**

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503 (Tex. App. 2003) 29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) 15, 20

*Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789 (5th Cir. 2010) 15, 16

*Baxter & Assocs., L.L.C. v. D&D Elevators, Inc.*, No. 05-16-00330-CV, 2017 Tex. App. LEXIS 1352 (Tex. App. Feb. 15, 2017) 22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). 15

*Clarke-Smith v. Bus. Partners in Healthcare, LLC*, Civil Action No. 3:14-CV-2732-M, 2016 U.S. Dist. LEXIS 7498 (N.D. Tex. Jan. 22, 2016) 28, 29

*Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706, 715 (Cal. 2000) 34

*Cox Operating v. Wells Fargo N.A.*, No. 4:19-CV-1889, 2021 U.S. Dist. LEXIS 239133 (S.D. Tex. Nov. 5, 2021) 23

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197 (5th Cir. 2018) 28

*Fast Capital Mktg., LLC v. Fast Capital LLC*, No. H-08-2142, 2008 U.S. Dist. LEXIS 103988 (S.D. Tex. Dec. 24, 2008) 24

*Frost Nat'l Bank v. L & F Distribs.*, 122 S.W.3d 922 (Tex. App. 2003) 24

*Gonzalez v. Denning*, 394 F.3d 388 (5th Cir. 2004) 24

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016) 15

*Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194 (5th Cir. 1984) 22

*Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676 (2014) ....................................35

*Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474 (5th Cir. 2001)............................................15

*Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494 (5th Cir. 1986)...........................35

*Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177 (Tex. App. 2018) .......................2, 22

*Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277 (5th Cir. 2007) ...................................28

*Numed, Inc. v. McNutt*, 724 S.W.2d 432 (Tex. App. 1987).....................................................22

*Reingold v. Swiftships, Inc.*, 126 F.3d 645 (5th Cir. 1997) ......................................................23

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017) ..........................................................................................................27

*Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348 (Tex. App. 2009) .........................................................................33

**Statutes**

18 U.S.C. § 1030 *et seq.* ............................................................................2, 17, 19, 21

Cal. Bus. & Prof. Code § 17200........................................................................34, 35

Cal. Lab. Code § 202 ......................................................................................30, 35

Cal. Lab. Code § 203 ......................................................................................30, 35

Cal. Labor Code § 229.........................................................................................35

Cal. Labor Code § 558.1...................................................................................30, 35

Fed. R. Civ. P. 56 ...............................................................................................15

Tex. Civ. Prac. & Rem. Code § 134A.002 ......................................................22, 23, 27

Texas Civ. Prac. and Remedies Code § 143.001 ......................................................21

Texas Labor Code § 61.011..............................................................................32, 35

Texas Labor Code § 61.014..............................................................................32, 35

Texas Labor Code §61.018.....................................................................................32

Texas Pen. Code § 33.00.............................................................................2, 17, 19, 20

## Memorandum of Points and Authorities in Support of Defendant Colynda Williams-Arowolo's Motion for Summary Judgment

### I. Introduction

T2 licenses software to auto dealerships allowing the dealerships to view their data, and analysis derived from that data, about the dealerships' customers (vehicle owners). Williams was an employee of T2, whose employment terminated in December 2021, when Williams left T2 to pursue another opportunity.

One of the dealerships to whom T2 licensed software was Freeman Honda. That software license entailed T2 providing Freeman Honda with access to an account through an online portal, for which T2 provided Freeman Honda with access credentials. On January 6, 2022, Freeman Honda requested the assistance of Williams, who was no longer employed by T2, in accessing its account through the online portal. Williams helped Freeman Honda log in to its T2 account portal and download its customer data from that portal.

### II. Statement of Uncontested Facts

T2 is a company that provides software to auto dealerships that allows them to maintain and update customer information.[4] T2' software required its customers to upload data about its customers and prospective customers (that is, vehicle owners) to T2's online portal. The portal was accessible by logging in with a username and password.[5] Jim Roach is T2's Chief Executive Officer.[6]

---

[4] Request for Judicial Notice (RJN) Exh. A (T2 Complaint) ¶ 8; RJN Exh. E (T2's Responses to Williams' First Set of Interrogatories) No. 7.

[5] Declaration of Wyman King ("King Decl.") ¶ 4.

[6] Declaration of Williams in Support of Motion for Summary Judgment ("Williams Decl.") ¶ 8; RJN Exhibit G (T2 Amended Answer to Counterclaims) ¶ 8.

Williams entered an Employment Agreement with T2.[7] Williams' initial position with T2 was Vice President of Training and Education.[8] T2 promoted Williams to Executive Vice President of Customer Excellence and Engagement around May 1, 2021.[9] Williams' salary was $10,833.33 monthly, or $130,000 per year.[10] During her employment with T2, Williams was never an officer, director, owner, member, or manager, and at all times reported to a supervisor.[11]

During the COVID-19 pandemic, T2 reduced all employees' wages.[12] At no time did Williams give T2 authorization, written or otherwise, to reduce her wages.[13] T2 was approved to receive a Paycheck Protection Program ("PPP") federal loan on April 8, 2020.[14] T2 paid Williams $99,948.78 in total wages in 2020.[15]

In 2021, a T2 executive sent a message to T2 employees, including Williams, stating that the company was having financial difficulties, so it had to reduce employees' salaries.[16] At some point in 2021, T2 resumed paying Williams her full salary, but her back pay was not

---

[7] RJN Exh. C (T2 Answer) ¶ 9; Williams Decl. ¶ 3; Williams Decl. Exhibit A (T2 Employment Agreement).

[8] RJN Exh. A ¶ 14; RJN Exh. C ¶ 1; Williams Decl. ¶ 5; Williams Decl. Exh. A § 1.

[9] RJN Exh. A ¶ 14; RJN Exh. C ¶ 2; Williams Decl. ¶ 13.

[10] RJN Exh. A, Exhibit A (T2 Agreement) ¶ 2(a); RJN Exh. C, ¶ 3; Williams Decl. ¶ 4; Williams Decl. Exh. A § 2.

[11] Williams Decl. ¶ 5; Exh. G ¶ 16.

[12] RJN Exh. C ¶ 4; RJN Exh. G ¶¶ 13, 16; Williams Decl. ¶ 8.

[13] RJN Exh. D No. 51; Williams Decl. ¶ 8.

[14] RJN Exh. C ¶ 14.

[15] RJN Exh. B ¶ 13; RJN Exh. D No. 56; RJN Exh. B ¶ 13; Williams Decl. ¶ 9; Williams Decl. Exh. B (Williams' 2020 T2 W-2).

[16] RJN Exh. D (T2's Response to Defendant's First Request for Admission) No. 55.

made current, and T2 underpaid Williams wages by $13,757.08 for 2021.[17] On April 9, 2021, T2's PPP loan was forgiven.[18]

Williams worked for T2 until she resigned on December 13, 2021.[19] When Williams resigned on December 13, 2021, the T2 Employment Agreement was still the employment agreement applicable to Williams.[20] After Williams resigned, she accepted a position as Vice President of Strategy & Growth at The AutoMiner, LLC ("AutoMiner").[21]

Freeman Honda is a car dealership located in Dallas, Texas.[22] On January 6, 2022, Freeman Honda was a customer of T2 and had a valid, active software license with T2 to use T2's online software through January 31, 2022.[23] The customer data on T2's portal was provided by Freeman Honda and belonged to Freeman Honda. It was freely available for Freeman Honda or its agents to view or download pursuant to Freeman Honda's software license.[24] T2's online software includes an export or download function that allows dealerships to download their data from the dealership's T2 account.[25]

On January 6, 2022, Freeman Honda had valid access to the online portal that T2 had made available to Freeman Honda to access its account,[26] and had the ability to download data about its customers from that online portal.[27]

---

[17] Williams Decl. ¶ 10; Williams Decl. Exh. C; RJN Exh. C ¶ 16.
[18] RJN Exh. C ¶ 17.
[19] RJN Exh. A ¶ 19; RJN Exh. C ¶¶ 18, 24; Williams Decl. ¶ 14.
[20] RJN Exh. D No. 44.
[21] RJN Exh. A ¶ 20; William Decl. ¶ 19.
[22] RJN Exh. A ¶ 22.
[23] RJN Exh. D No. 1; Declaration of Wyman King ("King Decl.") ¶ 3.
[24] King Decl. ¶ 5.
[25] King Decl. ¶ 6.
[26] RJN Exh. A ¶ 23; RJN Exh. D No. 2.
[27] RJN Exh. A ¶ 23; RJN Exh. D No. 3.

On January 1, 2022, Freeman Honda sent T2 a notice of cancellation of its services from T2.[28] Freeman Honda's software license remained in effect as of January 6, 2022 through expiration on January 31, 2022.[29] Between January 1, 2022, when Freeman Honda sent its notice of cancellation, and January 6, 2022, T2 did not cut off Freeman Honda's access to the data in the January 6, 2022, download.[30]

Wyman King ("King") is the General Sales Manager at Freeman Honda.[31] King, who had a close working relationship with Williams when she was employed at T2,[32] asked Williams for help retrieving Freeman Honda's customer data.[33] King gave Williams permission, and the account login credentials and password, to log into Freeman Honda's T2 account to retrieve Freeman Honda's customer data.[34]

On January 6, 2022, Williams used Freeman Honda's credentials to access its account through an online portal.[35] The January 6, 2022 download was from an online portal that T2 made available to Freeman Honda.[36] All of the data in the January 6, 2022 download was made available for Freeman Honda to view or download.[37] The person who performed the January 6, 2022 download (Williams) accessed the data by logging into Freeman Honda's T2 portal using Freeman Honda's password credentials.[38]

---

28 RJN Exh. A ¶ 22.
29 RJN Exh. D No. 16; King Decl. ¶ 3.
30 RJN Exh. D No. 19.
31 King Decl. ¶ 1.
32 Williams Decl. ¶ 20; Williams Decl. Exhibit E (December 14, 2021 text messages).
33 King Decl. ¶ 7; Williams Decl. ¶ 15; King Decl. Exhibit C (screenshot of text messages between King and Williams).
34 King Decl. ¶ 7; Williams Decl. ¶ 21; Williams Decl. Exh. C.
35 Williams Decl. ¶ 21.
36 RJN Exh. D No. 6; Williams Decl. ¶ 21.
37 RJN Exh. E No. 11; Williams Decl. ¶ 21; King Decl. ¶ 8.
38 RJN Exh. A ¶ 23; RJN Exh. D No. 8; Williams Decl. ¶ 21; King Decl. ¶ 7.

A password was required to access T2's customer portal, but no password was required to open any of the files downloaded in the January 6, 2022 download.[39] Customers, including Freeman Honda, can access their T2 customer portals without using two-factor authentication.[40]

All of the data and information downloaded on January 6, 2022 by Williams belonged to Freeman Honda, pertained to Freeman Honda's customers, was made available by T2 for Freeman Honda to view or download at any time,[41] and consisted of a single file called "Freeman Honda VNLO JAN HSRP.csv," which was a spreadsheet-like data file with each row reflecting information about a Freeman Honda customer or prospective customer.[42]

T2's servers did not experience downtime, interruption of service, or damages as a result of the January 6, 2022 download or any other event T2 alleged in its Complaint.[43] Nor did the January 6, 2022 download cause any T2 data, program, system, or information to become unavailable to T2 or any customer.[44]

## III. Legal Standard

Pursuant to Fed. R. Civ. P. 56(a), "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Summary judgment "shall" be granted when "there is no genuine

---

[39] RJN Exh. D No. 24; Williams Decl. ¶ 26.

[40] RJN Exh. D No. 25.

[41] Williams Decl. ¶ 17; King Decl. ¶ 10; Williams Decl. ¶ 27.

[42] King Decl. ¶¶ 8–9; King Decl. Exhibit A (page one of the downloaded file); King Decl. Exhibit B (redacted copy of entire downloaded file); Williams Decl. ¶ 25; Williams Exhibit F (redacted copy of entire downloaded file).

[43] RJN Exh. D Nos. 32–34.

[44] RJN Exh. D No. 35.

issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."[45]

Material facts are those which "might affect the outcome of the suit under the governing law."[46] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[47] Further, "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them[.] A judicial admission is conclusive."[48]

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.[49] Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[50] Further, "[a]ll facts and inferences must be drawn in the light most favorable to the party opposing the motion. But unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."[51]

Finally, "Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[52] The Court "views all

---

45 Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

46 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

47 *Id.* at 248.

48 *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 477 (5th Cir. 2001).

49 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

50 *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)).

51 *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016).

52 *Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)).

facts and evidence in the light most favorable to the non-moving party and mere conclusory allegations are insufficient to defeat summary judgment."[53]

## IV. Williams is entitled to an order granting her summary judgment and dismissing all of T2's causes of action.

Because T2 fails to allege facts that, drawn in the light most favorable to it, create a genuine dispute as to any fact which would affect the outcome of any cause of action, Williams is entitled to judgment as a matter of law as to each of T2's causes of action. The gravamen of T2's case is that, at the express request of T2's customer Freeman Honda,[54] which had a valid and active license[55] and the legal right to access T2 software through an online portal that T2 provided to Freeman Honda[56] for the purpose of downloading data about Freeman Honda customers,[57] Williams used Freeman Honda's online portal to access and download data about Freeman Honda customers.[58] That a customer, owning a license and right to access its own data through a plaintiff-provided portal, accessed and downloaded its data with the assistance of T2's former employee,[59] does not establish a claim to relief under any cause of action alleging unlawful access. Nor can a claim sounding in trade secret infringement be sustained where the data and information were accessed through a customer's portal.[60] T2 cannot identify any contractual provision or

---

53 *Apache Corp.*, 626 F.3d at 793.

54 Williams Decl. ¶ 20; King Decl. ¶ 7; King Decl. Exh. C.

55 RJN Exh. A No. 1; King Decl. ¶ 3; RJN Exh. E Nos. 7–8; Williams Decl. ¶ 16.

56 RJN Exh. D No. 2; King Decl. ¶¶ 4–5; RJN Exh. E Nos. 11, 14.

57 RJN Exh. D No. 3.

58 King Decl. ¶¶ 6–7; Williams Decl. ¶ 21; Williams Decl. Exh. G

59 RJN Exh. A ¶¶ 19, 24; RJN Exh. C ¶¶ 18, 24.

60 King Decl. ¶ 5; RJN Exh. A ¶ 23; RJN Exh. D No. 3; RJN Exh. E Nos. 11, 14.

fiduciary duty[61] which Williams breached. Finally, T2 cannot show that it incurred any damages.

Williams is entitled to summary judgment on each of T2's causes for these reasons and those set forth below.

### A. Williams is entitled to judgment as a matter of law as to T2's statutory causes of action for unlawful computer access.

T2 cannot establish either of its claims for violation of Computer Fraud and Abuse Act ("CFAA")[62] or Texas Harmful Access to Computer Act ("THACA"),[63] because no genuine issue of material fact exists as to whether Williams accessed any computer network or system without authorization or consent, whether Williams intended to defraud T2, or whether Williams caused T2 any damage.

---

[61] RJN Exh. D No. 65; Williams Decl. ¶ 5.

[62] 18 U.S.C. § 1030 *et seq*. Section 1030(a)(4) of the CFAA prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value"; Section 1030(a)(5)(B) prohibits "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage."

[63] Texas Penal Code § 33.00 *et seq*. Section 33.02(a) of the THACA provides: "A person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner." Section 33.01(15) defines "owner" to include "a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor," or a person who "is the licensee of data or computer software."

**1. There is no material question of fact as to whether Williams was permitted to access Freeman Honda's data and information through its online portal.**

T2 makes no allegation nor seeks to demonstrate that Williams hacked into its computer system. Rather, T2 alleges, merely, that Williams, as a former employee, was somehow forbidden from assisting T2's customer with using its customer portal to access and download its own data and information, as the T2-granted license expressly permits and contemplates.

The central uncontested facts of this case are that: (i) the data and information available to Freeman Honda through its T2 online portal belonged to Freeman Honda;[64] (ii) Freeman Honda's software license with T2 to access that data and information through the portal was in effect on the day in question: January 6, 2022;[65] (iii) T2 did not in any way restrict

---

[64] *See* King Decl. ¶ 5 ("The customer data on the T2 Modus portal was provided by Freeman Honda and belonged to Freeman Honda. It was freely available for Freeman Honda or its agents to view or download pursuant to Freeman Honda's software license."); RJN Exh. A ¶¶ 8 (T2's software is used by dealerships "to maintain and update information about [their] clients"), 12 ("T2 software is designed to capture personal information about vehicle owners (*i.e.* the dealership's customers) from the car dealership's Client Relationship Management ('CRM') system"); RJN Exh. D No. 6 ("the data in the JANUARY 6, 2022 DOWNLOAD was downloaded from an online portal that T2 made available to Freeman Honda"); RJN Exh. E Nos. 11, 14. T2 further concedes that it did not cut off Freeman Honda's access to the downloaded data between the time Freeman Honda notified T2 of its decision to cancel its contract and the January 6 download. RJN Exh. D No. 19. That Freeman Honda sent T2 a cancellation notice (RJN Exh. A ¶ 22) did not render Freeman Honda's license immediately cancelled nor its access to its customer data immediately forfeited.

[65] King Decl. ¶ 3; Williams Decl. ¶ 16; RJN Exh. D Nos. 1, 20; RJN Exh. E Nos. 7–8; *see also* RJN Exh. A ¶¶ 12 ("T2 grants the car dealership a license for its software in exchange for payments"), ¶ 22 (explaining that Freeman Honda was a client of T2, albeit one that "attempted to cancel its contract with T2" on or about January 1, 2022).

the data and information accessible through the portal for Freeman Honda's use;[66] (iv) Freeman Honda was expressly authorized to access the data and information available through the portal;[67] (v) Freeman Honda not only consented to Williams accessing and downloading the information and data on its behalf, but expressly requested that she do so;[68] and (vi) Freemen Honda provided Williams with its password to access the portal.[69]

Under these uncontested facts, there is simply no material question of fact that can be raised as to whether the access to Freeman Honda's data and information through the T2 portal on January 6, 2022 was unauthorized.[70] Accordingly, the entirety of T2's Complaint fails for that reason alone.

**2. There is no material question of fact as to whether Williams intended to defraud T2.**

T2 cannot establish any material facts evidencing that Williams' access of the Freeman Honda data and information on January 6, 2022 was part of a scheme to defraud as is separately required to establish a claim under the CFAA.[71] As established above, Williams

---

[66] RJN Exh. D Nos. 2, 3, 9; King Decl. ¶ 5; RJN Exh. E Nos. 11, 14; RJN Exh. A ¶ 23.

[67] King Decl. ¶ 10; Williams Decl. ¶ 27.

[68] Williams Decl. ¶ 20; King Decl. ¶ 7; King Decl. Exh. C.

[69] Williams Decl. ¶ 21; King Decl. ¶ 7.

[70] This conclusion is further strengthened by the fact that THACA's definition of "owner" includes anyone who has "possession of the property, whether lawful or not." Tex. Pen. Code § 33.01(15). Since T2 gave Freeman Honda the credentials to access its account through the T2-provided portal, and Freeman Honda was in possession of its account and the data contained in it at the time Williams accessed that account on Freeman Honda's behalf, T2's assertion that Williams accessed Freeman Honda's account on Freeman Honda's behalf constitutes an admission that Freeman Honda was the "owner" of the data and Williams acted with the owner's consent in accessing the data. *See* RJN Exh. E Nos. 11, 14.

[71] *See* 18 U.S.C. § 1030 (a)(4).

was duly authorized to access Freeman Honda's data and information through the T2 portal.

However, even if T2 had somehow done something to lawfully restrict Freeman Honda's access to its own data and information, which it did not, T2 still cannot demonstrate that Williams' actions evidenced an intent to defraud, because T2 cannot bring forward any facts indicating Williams would have known that T2 had unilaterally restricted access to Freeman Honda data and information.[72] To survive a motion for summary judgment, a plaintiff must do more than show "some alleged factual dispute" and show that there is a "*genuine* issue of *material* fact."[73] Because T2 fails to even plead facts showing Williams had unauthorized access and knowing that, accessed Freeman Honda's account, it cannot survive a motion to dismiss, let alone a motion for summary judgment.

Further demonstrating that Williams' actions were not fraudulent is the fact that on January 6, 2022, Freeman Honda could access its T2 customer portals without using two-factor authentication,[74] and that no password was required for Williams to open any file downloaded on Freeman Honda's behalf on January 6, 2022.[75]

---

[72] Under the THACA, a defendant who receives consent from a third party need not investigate whether that party has lawful or unlawful possession of the data. *See* Tex. Pen. Code § 33.01(15). The THACA defines "owner" to include anyone with possession, "whether lawful or unlawful." Tex. Pen. Code § 33.01(15).

[73] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48.

[74] RJN Exh. D No. 24; Williams Decl. ¶ 17.

[75] RJN Exh. D Nos. 8, 24; Williams Decl. ¶ 17.

### 3. There is no material question of fact as to whether T2 suffered any damages.

T2 does not allege nor can it demonstrate any damages. T2 admits its servers and services did not experience any downtime or interruption of service as a result of the download.[76] T2 also admits that its servers were not damaged as a result of the download or any other event it alleges in its complaint.[77] T2 further admits that the download did not cause any of its "data, program, system, or information…to become unavailable to T2 or any customer."[78] The term "damage" is defined by § 1030 as "any impairment to the integrity or availability of data, a program, a system, or information."[79] In the above admissions, T2 admits that it did not suffer any damages as defined by the statute.[80] T2 does not allege any other damages, much less facts showing a genuine dispute that there are any damages.

Therefore, Williams is entitled to summary judgment dismissing T2's causes of action under the CFAA and THACA.[81]

## B. Williams is entitled to judgment as a matter of law as to T2's TUTSA claim.

The elements of a Texas Uniform Trade Secrets Act ("TUTSA") misappropriation of trade secrets claim are (1) ownership of a trade secret; (2) misappropriation of the trade secret;

---

76 RJN Exh. D Nos. 32—33.
77 RJN Exh. D No. 34.
78 RJN Exh. D No. 35; *see also* RJN Exh. E Nos. 22, 24.
79 18 U.S.C. § 1030(e)(8).
80 RJN Exhibit F (T2's Initial Disclosures) No. 6.
81 As to T2's allegation that Williams violated Texas Civ. Prac. and Remedies Code § 143.001(a), that claim falls with the THACA claim, *see* Section 143.001(a) (requiting a violation under Chapter 33), and likewise cannot be sustained absent a showing of damages.

and (3) an injury.[82] "Trade secrets" are defined as information, including customer lists, that:

> (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[83]

First, the allegation that Williams accessed Freeman Honda's T2 account on Freeman Honda's behalf does not establish a claim under the TUTSA, because the data and information accessible through a T2-provided portal to the Freeman Honda account does not meet the definition of a trade secret.[84] Information can only qualify as a trade secret if its owner took reasonable measures to keep the information secret, [85] and information is not reasonably kept secret if one voluntarily discloses it.[86]

Indeed, T2 does not advance any secrecy measures it took to keep Freeman Honda from accessing this information even after Freeman Honda notified T2 that it decided to cancel its contract.[87] T2 could have revoked Freeman Honda's access to its portal, changed its

---

[82] *Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 186 (Tex. App. 2018).

[83] *Baxter & Assocs., L.L.C. v. D&D Elevators, Inc.*, No. 05-16-00330-CV, 2017 Tex. App. LEXIS 1352, at *23 (Tex. App. Feb. 15, 2017).

[84] *See Baxter & Assocs.*, 2017 Tex. App. LEXIS 1352, at *23 (requiring trade secrets to be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy").

[85] Tex. Civ. Prac. & Rem. Code § 134A.002(6)(a).

[86] *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984); *see also Numed, Inc. v. McNutt*, 724 S.W.2d 432, 434 (Tex. App. 1987) (finding information was not a trade secret because the owner previously disclosed it in contracts with its customers).

[87] T2 admits "that between the date Freeman Honda notified T2 of its decision to cancel or not renew its contract and January 6, 2022, T2 did not cut off Freeman Honda's access to the data in the" January 6, 2022 download. RJN Exh. D No. 19.

password, or required two-factor authentication; but T2 did not take these or any other security measures.

Moreover, an "owner" under TUTSA is a person that has "rightful, legal, or equitable title to, or the right to enforce rights in, the trade secret."[88] T2's allegations do not specify the information that qualifies as a trade secret except the vaguely worded (i) "identities of T2's customers" and (ii) the "confidential and proprietary information concerning those customers."[89] While identities of customers may be a trade secret under certain special circumstances, T2 does not allege the elements required to turn a simple list of publicly known entities into a trade secret under TUTSA, and thus cannot raise a question of material fact relating to this claim.

Finally, T2 also fails to allege how any list of its customers has independent economic value as required by TUTSA.[90] Considerations for a court in determining the independent economic value of information include the money and time invested in making the trade secret, how difficult it would be to duplicate the trade secret independently or through reverse engineering, and the royalties paid to utilize the trade secret.[91] T2 does not allege the existence of any tangible customer lists, much less that the lists generate any revenue for T2 through royalties for their use or in any other manner. Absent any specific factual allegation that the lists exist in tangible form *and* have any independent economic value,

---

[88] Tex. Civ. Prac. & Rem. Code § 134A.002(3-a).

[89] RJN Exh. A ¶ 35.

[90] *See* Tex. Civ. Prac. & Rem. Code § 134A.002(6)(b).

[91] *Cox Operating v. Wells Fargo N.A.*, No. 4:19-CV-1889, 2021 U.S. Dist. LEXIS 239133, at *20-21 (S.D. Tex. Nov. 5, 2021) (citing *Reingold v. Swiftships, Inc.*, 126 F.3d 645 (5th Cir. 1997)).

T2 has failed to establish that a "customer list" constitutes a protectable trade secret under TUTSA.[92]

Since there is no genuine dispute as to any material fact, Williams is entitled to summary judgment as to T2's TUTSA claim.

### C. Williams is entitled to judgment as a matter of law as to T2's NDA-related breach of contract claim.

T2 alleges that Williams violated a nondisclosure agreement ("NDA")[93] by "using and accessing" unspecified "confidential and proprietary information" belonging to T2 "on behalf of herself and/or Freeman Honda,"[94] allegedly causing unquantifiable damages to T2.[95] This cause of action is baseless and should be dismissed. The terms of the NDA unambiguously exclude the data Williams allegedly accessed in Freeman Honda's T2 account.[96]

---

92 To the extent T2's Complaint suggests that a "customer list" is the list of vehicle owners uploaded by dealerships, T2 lacks standing to assert any confidentiality rights over such a list or to any data pertaining to a dealership's vehicle owners.

93 *See* Williams Decl. Exh. H.

94 RJN Exh. A ¶ 45.

95 *See* RJN Exh. A ¶ 46.

96 Williams Decl. Exh. H § 4. The interpretation of a contract "is a purely legal issue." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). "[O]nly when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* (internal quotation marks omitted). Whether a contract contains an ambiguity is also a question of law. *Fast Capital Mktg., LLC v. Fast Capital LLC*, No. H-08-2142, 2008 U.S. Dist. LEXIS 103988, at *59 (S.D. Tex. Dec. 24, 2008). To determine whether a contract is ambiguous or not, the court must examine whether the contractual language can be given "definite or certain legal meaning." *Id.* If the contract is unambiguous, then it should be enforced as written. *Frost Nat'l Bank v. L & F Distribs.*, 122 S.W.3d 922, 930 (Tex. App. 2003).

**1. The NDA does not encompass the data in Freeman Honda's T2 account.**

The NDA's stated purpose is to "protect certain confidential information, which may be disclosed between T2 and [Williams]."[97] T2 defines "Confidential Information" as "non-public information that is exchanged between the parties," provided that the information is either (i) identified as confidential by the disclosing party at the time of disclosure or "(ii) disclosed under circumstances that would indicate to a reasonable person that the information ought to be treated as confidential" by the receiving party.[98]

T2 fails to identify any accessed data that was either "non-public" or "exchanged between the parties," as required by the NDA.[99] As for the "non-public" requirement,[100] T2 admits that the Freeman Honda customer data Williams accessed was made available to Freeman Honda pursuant to the dealership's software license — meaning that it was not "non-public" as to Freeman Honda and its agents (including Williams, who T2 alleges accessed the information on Freeman Honda's behalf).[101]

As for the "exchanged between the parties" requirement, T2 alleges that Williams obtained Freeman Honda's data by logging into Freeman Honda's T2 software portal at that dealership's request after Williams' employment with T2 ended.[102] The data was therefore not provided by T2 to Williams (or "exchanged between" T2 and Williams). Rather, to the extent that the data was not owned outright by Freeman Honda, that data was provided by T2 to Freeman Honda pursuant to its software license, and it was then

97 *See* Williams Decl. Exh. H § 4.
98 *Id.* § 1.
99 *Id.*
100 The NDA also excludes information that "is or becomes public knowledge through no fault of the Recipient." *See id.* § 4(i).
101 RJN Exh. A ¶ 23.
102 RJN Exh. A ¶ 24.

provided by Freeman Honda to Williams when the dealership asked Williams for help retrieving the data from its portal.

**2. The NDA excludes information that is disclosed to a third party without a duty of confidentiality on the third party.**

The NDA excludes information that T2 discloses to a third party without a duty of confidentiality on that third party.[103] T2 does not allege and cannot establish that Freeman Honda, a third party, had a duty to keep confidential any T2-generated information that T2 made available in Freeman Honda's account. On the contrary, the purpose of T2's contract with Freeman Honda was to make that information available to Freeman Honda through T2's software portal.[104]

T2's allegations are clear: Freeman Honda had an account provided by T2 giving Freeman Honda access to an account hosted on T2's system, and the information Williams allegedly helped Freeman Honda access was available to Freeman Honda within its T2 account. As the relevant information was disclosed by T2 to a third party without any duty of confidentiality on that third party, it is specifically excluded by the NDA.

**3. The NDA also excludes information rightfully received by Williams without any duty of confidentiality.**

Another NDA exclusion applies. The NDA states that the data "Recipient" has no obligation with respect to confidential information that was rightfully received without any duty of confidentiality.[105] Here, Williams rightfully received the information about

---

[103] Williams Decl. Exh. H § 4(iv).

[104] *See* RJN Exh. A ¶¶ 11–12 (describing the nature of T2's product offering and software license for auto dealerships).

[105] Williams Decl. Exh. H § 4(iii).

Freeman Honda's customers hosted on T2's system because she was given access to the information by the information's owner or licensee — namely, Freeman Honda, the party whose customer data is at issue.[106]

Therefore, Williams is entitled to summary judgment on T2's breach of contract claim.

**D. Williams is entitled to judgment as a matter of law as to T2's breach of fiduciary duty claim.**

T2's breach-of-fiduciary-duty claim, conclusorily alleging that Williams' use of "T2's confidential and proprietary information for the benefit of herself and/or Freeman Honda" constituted a breach of fiduciary duty is duplicative of other claims and fails as a matter of law. The claim is preempted by the Texas Uniform Trade Secrets Act (TUTSA), which T2 also alleges Williams violated;[107] and T2 fails to allege any facts showing that Williams — a former T2 customer relations employee[108] — had a fiduciary duty to T2 at any time, much less after she left her job at T2.

The TUTSA displaces other laws that provide civil remedies for the misappropriation of trade secrets.[109] When a breach of fiduciary duty or other tort claim seeks relief for conduct encompassed by TUTSA, the tort claim necessarily fails.[110] Here, T2 alleges claims under both the TUTSA (Count 3) and tort law (Count 5) for the same conduct — namely, Williams' alleged accessing of Freeman Honda's T2 software portal on Freeman Honda's

---

106 King Decl. ¶ 7.

107 *See* RJN Exh. A ¶¶ 34–40 (Count 3, alleging violation of TUTSA).

108 *See* RJN Exh. A ¶ 14 (describing Williams' former role at T2, which was essentially that of a salesperson).

109 Tex. Civ. Prac. & Rem. Code §§ 134A.007(a) (stating that TUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret").

110 *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017).

behalf after Williams' employment ended.[111] Though the Complaint vaguely alludes to other "conduct that was directly contrary to T2's interests,"[112] T2 fails to describe any conduct by Williams other than her access to Freeman Honda's T2 account on Freeman Honda's behalf in January 2022.

What's more, T2 fails to allege facts establishing that Williams either had or breached a fiduciary duty to T2.[113] T2 alleges that Williams' fiduciary duty to T2 arose out of her position as a T2 employee. But "employees are not fiduciaries of their employers simply by virtue of the employment relationship."[114] While Texas courts have recognized that employees may have fiduciary duties, these are only limited duties "to not compete with their employers"[115] and may arise only in cases where the "employee has been placed in a position of particular confidence or trust toward the employer."[116]

Moreover, even where an employee owes her employer a fiduciary duty, that duty does not continue after the employment relationship has ended.[117] T2 admits "that Williams

---

[111] *Compare* RJN Exh. A ¶ 23 *with* Exh. A ¶ 49 (Williams' alleged breach of fiduciary duty consisted of her "use of T2's confidential and proprietary information" as "evidenced by her access of the T2 database").

[112] RJN Exh. A ¶ 48.

[113] The elements of a breach of fiduciary duty claim are (1) existence of a fiduciary duty; (2) breach of the duty by defendant; and (3) injury to plaintiff or benefit to defendant. *See Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

[114] *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018).

[115] *Id.*

[116] *Clarke-Smith v. Bus. Partners in Healthcare, LLC*, Civil Action No. 3:14-CV-2732-M, 2016 U.S. Dist. LEXIS 7498, at *34-35 (N.D. Tex. Jan. 22, 2016).

[117] *D'Onofrio*, 888 F.3d at 219 ("An employee's fiduciary duty to not compete with her employer ends when the employment relationship ends.").

was not a T2 employee on January 6, 2022."[118] Texas employees have a constitutional right to compete with their employers after resigning.[119]

T2 likewise does not and cannot describe any special relationship of confidence or trust in Williams that would exempt her from these rules. An employee owes a fiduciary duty to an employer only in exceptional circumstances and not as a matter of course.[120] T2 describes the information to which Williams had access as information about T2's services and business practices, the identities of T2's customers and vendors, customers' preferences, and similar basic information without which Williams could not do the job for which T2 hired her.[121] These facts allege an ordinary employment relationship that does not give rise to a fiduciary duty under Texas law.

Because there is no genuine dispute as to any material fact, Williams is entitled to summary judgment as to T2's breach-of-fiduciary-duty claim.

## V. Williams is entitled to summary judgment on each of her counterclaims.

### A. Williams is entitled to judgment as a matter of law as to her Cal. Lab. Code §§ 202, 203, and 558.1 claims.

T2 violated Cal. Labor Code §§ 202, 203, and 558.1 by failing to pay Williams owed wages on time. Jim Roach violated Cal. Labor Code § 558.1, making him personally liable for the § 203 claims. T2 also violated Texas Labor Code §§ 61.014 and 61.018.

---

118 RJN Exh. D No. 65.

119 *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex. App. 2003) ("In Texas, to resign from one's employment and go into business in competition with one's former employer is, under ordinary circumstances, a constitutional right.").

120 *Clarke-Smith*, Civil Action No. 3:14-CV-2732-M, 2016 U.S. Dist. LEXIS 7498, at *34—35.

121 RJN Exh. A ¶ 48.

Jim Roach is T2's managing member and was Williams' employer while she worked for T2.[122] Under Cal. Lab. Code § 203, "If an employer willfully fails to pay" owed wages by the statutory deadline, waiting time penalties begin to accrue.[123] In the case of an employee who resigns without providing a 72-hour notice, § 202 provides that her employer must send the owed payment by mail "within 72 hours of the notice of quitting."[124] That penalty is in the amount of the employee's wages, which accrue for up to 30 days.[125]

Cal. Labor Code § 558.1 provides:

> Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Section[] 203 . . . may be held liable as the employer for such violation.[126]

The statute defines "other person acting on behalf of an employer" as "a natural person who is an owner, director, officer, or managing agent of the employer." Under this provision, Jim Roach is personally liable as the managing member of T2.

T2 admits that the Employment Agreement "between T2 and Williams was the employment agreement applicable to Williams as of her December 2021 termination date."[127] For unexplained reasons, T2 denies that T2 contractually owed Williams

---

[122] RJN Exh. F No. 1.
[123] Cal. Lab. Code § 203(a).
[124] Cal. Lab. Code § 202(a).
[125] Cal. Lab. Code § 203(a).
[126] Cal. Labor Code § 558.1(a).
[127] RJN Exh. D No. 44.

"$130,000 per year or $10,833.33 per month" in 2021[128] and that the Employment Agreement "states the terms of Williams' employment . . . as they existed until Williams terminated her employment with T2 in December 2021."[129] T2 does concede, however, that the Employment Agreement provides:

> 12. ENTIRE AGREEMENT: This Agreement constitutes the entire agreement between Employee and the Company regarding the terms and conditions of his employment, with the exception of (i) the agreement described in paragraph 4. This Agreement (including the agreements described in (i) supersedes all prior negotiations, representations or agreements between Employee and the Company regarding his employment, whether written or oral.
>
> 13. MODIFICATION: This Agreement may only be modified or amended by a supplemental written agreement signed by an authorized executive of the Company.

It is undisputed that Williams never entered into a written agreement amending her wages. The Employment Agreement expressly provides, "Employee will be paid a $10,833.33 monthly salary, one hundred thirty thousand ($130,000 on an annualized basis), less applicable withholding, in accordance with the Company's normal payroll procedures."[130] Again without explanation, T2 denies "that Williams' contractual salary as a T2 employee was fixed at $10,833.33 per month[.]"[131] Similarly, while admitting that it "temporarily reduced Williams' salary" without her written authorization[132] and paid

---

[128] RJN Exh. D No. 46.
[129] RJN Exh. D No. 43.
[130] Exh. C ¶ 2(a); Williams Decl. Exh. A § 2(a).
[131] RJN Exh. D No. 47.
[132] RJN Exh. D Nos. 48, 51; RJN Exh. G ¶¶ 13, 16; Williams Decl. ¶ 8.

Williams only $99,948.78 in 2021, T2 inexplicably also denies that it "did not pay Williams her contractually owed salary in 2021."[133]

T2's contradictory denials do not raise genuine dispute as to any material fact. Because there are no genuine disputes as to any material facts, Williams is entitled to judgment as a matter of law on her Cal. Labor Code §§ 202, 203, and 558.1 claims.

### B. Williams is entitled to summary judgment on her Texas Labor Code §§ 61.011, 61.014, and 61.018 claims.

T2 violated Texas Labor Code §§ 61.011,[134] 61.014(b),[135] 61.018,[136] and other law by failing to pay Williams her contracted-for wages. As described above, T2 failed to pay Williams her contractual wages for numerous months in 2020 and shortchanged her by at least $30,051.22. T2 violated Section 61.011 by withholding wages owed in 2020 for more than a month. T2 violated Section 61.014(b) by permitting a scheduled payday (December 31, 2021)[137] to long pass; Williams left employment on December 13, 2021, and her next regularly scheduled payday was no later than December 31, 2021. Since none of the exceptions under Section 61.018 apply, T2 also violated that section.

---

[133] RJN Exh. D No. 56.

[134] Section 61.011 provides: "An employer shall pay wages to each employee . . . at least once a month."

[135] Section 61.014(b) states: "An employer shall pay in full an employee who leaves employment other than by discharge not later than the next regularly scheduled payday."

[136] Section 61.018 prohibits an employer from withholding "any part of an employee's wages unless the employer: (1) is ordered to do so by a court of competent jurisdiction; (2) is authorized to do so by state or federal law; or (3) has written authorization from the employee to deduct part of the wages for a lawful purpose."

[137] RJN Exh. G ¶ 37

There being no genuine questions of material fact, Williams is entitled to judgment as a matter of law as to her Texas Labor Code §§ 61.011, 61.014 and 61.018 claims.

**C. Williams is entitled to summary judgment as to her breach-of-contract claim.**

T2 and Williams entered an enforceable employment contract effective December 1, 2019.[138] Williams performed as required by the agreement. T2 breached the Employment Agreement by failing to pay Williams in the amount of $30,051.22 that she was expressly owed under the agreement.

The Employment Agreement contains a fee-shifting clause stating that "[t]he prevailing party shall be entitled to recover from the losing party its attorneys' fees and costs incurred in any action brought to enforce any right arising out of this Agreement."[139] Williams is entitled to compensatory damages of at least $30,051.22, statutory penalties, attorneys' fees, costs, and prejudgment interest.

**D. Williams is entitled to summary judgment as to her unjust enrichment claim.**

In Texas, "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits."[140] T2 benefited from Williams' services but failed to pay her contractually owed wages. Williams performed so well that she was promoted to Executive Vice President of Customer and Engagement. T2 took advantage of Williams' hard work, withheld at least $30,051.22 in wages, and unjustly enriched itself from her labor. Williams is entitled to restitution of all sums T2 unjustly received by refusing to pay her.

---

[138] Williams Decl. Exh. A.

[139] *Id.* § 9.

[140] *Texas Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App. 2009).

There being no genuine question of material fact, Williams is entitled to judgment as a matter of law as to her unjust enrichment claim.

### E. Williams is entitled to summary judgment as to her Cal. Bus. & Prof. Code § 17200 *et seq.* claims.

Cal. Bus. & Prof. Code § 17200 defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."[141] Section 17203 allows for "orders for payment of wages unlawfully withheld from an employee."[142] Since T2 withheld wages in violation of the Labor Code, Williams is entitled to payment of those wages in restitution.

There being no genuine question of material fact, Williams is entitled to judgment as a matter of law as to her Cal. Bus. & Prof. Code § 17200 *et seq.* claims.

### F. Calculation of damages on Williams' counterclaims

The damages Williams has suffered associated with her counterclaims are set forth below:

| | |
|---|---|
| Unpaid wages for 2020 | $30,051.22 |
| Unpaid wages for 2020 | $13,757.08 |
| California waiting time penalty | $15,476.19 |
| --- | --- |
| Counterclaim amount (owed wages + penalty) | $59,284.49 |

[141] Cal. Bus. & Prof. Code § 17200.

[142] *Cortez v. Purolator Air Filtration Prod. Co.*, 999 P.2d 706, 715 (Cal. 2000).

### G. T2's affirmative defenses should be dismissed.

T2's five affirmative defenses, sounding in (i) arbitration, (ii) prior breach, (iii) waiver, (iv) failure to mitigate, and (v) offset[143] should all be dismissed.

T2 has waived its right to seek arbitration (First Affirmative Defense) of Williams' Employment Agreement-based counterclaims by commencing a lawsuit based on its own Employment Agreement-based claim.[144] T2's Second Affirmative Defense, alleging a prior breach by Williams, is not supported by any evidence, and thus must be dismissed. Likewise, T2's Third and Fourth Affirmative Defenses for waiver and failure to mitigate, respectively, are stock affirmative defenses not supported by any evidentiary showing. Finally, T2's Fifth Affirmative Defense for offset must be dismissed because it is not supported by any material facts.

## VI. Conclusion

There is no genuine dispute as to any material fact for T2's CFAA, THACA, TUTSA, breach-of-contract, or breach-of-fiduciary-duty claims. Taken in the light most favorable to T2, Williams is entitled to judgment as a matter of law as to all of these claims.

Likewise, there is no genuine dispute as to any material fact for Williams' Cal. Lab. Code §§ 202, 203, and 558.1, Texas Labor Code §§ 61.014 and 61.011, breach-of-contract, unjust enrichment, or Cal. Bus. & Prof. Code § 17200 *et seq.* counterclaims. Taken in the light most

---

[143] RJN Exh. C at 7.

[144] *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986). In any event, Williams' counterclaims alleging violations of Cal. Labor Code §§ 202, 203, and 558.1 are not subject to private arbitration agreements. *See* Cal. Labor Code § 229; *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676 (2014).

favorable to T2, Williams is entitled to judgment as a matter of law as to all of these counterclaims.

Williams respectfully requests the Court grant this Motion in its entirety.[145]

---

[145] T2 has never taken its own lawsuit seriously; it has failed to conduct any discovery or produce any evidence identifying or supporting its claims. Indeed, T2 even refused to identify the alleged trade secret it claims Williams misappropriated.

## RELIEF REQUESTED

- Compensatory damages in the amount to be determined at trial, but in no event less than $30,051.22;
- Statutory penalties and damages in the amount to be determined at trial, but in no event less than $15,476.19;
- Disgorgement and restitution of all sums unjustly received by T2;
- Reasonable attorneys' fees in the amount to be determined at trial;
- Prejudgment interest; and
- Costs of suit; and any other relief the Court finds appropriate.

Dated: November 9, 2022

Respectfully submitted,



Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082 E: info@rushingmccarl.com