IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| T2 MODUS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:22-cv-263 |
| | § | |
| COLYNDA WILLIAMS-AROWOLO, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| COLYNDA WILLIAMS-AROWOLO, | § | |
| | § | |
| Counterclaimant, | § | |
| | § | |
| v. | § | |
| | § | |
| T2 MODUS, LLC and JIM ROACH, | § | |
| | § | |
| Counterdefendants. | § | |
| | § | |

## T2 MODUS, LLC AND ROACH RESPONSE TO MOTION FOR SUMMARY JUDGMENT [DOC. 36]

T2 Modus, LLC ("T2 Modus") and Jim Roach ("Roach") respond as follows to the Motion for Summary Judgment [Doc. 36] filed by Defendant and Counterclaimant Colynda Williams Arowolo ("Williams"):

The Motion for Summary Judgment should be denied in its entirety. There are genuine issues of disputed fact which preclude the entry of summary judgment in favor of Williams on each of the claims made by T2 Modus against her and on her counterclaims against T2 Modus and Roach. Moreover, the law applicable to each claim does not support summary judgment.

**Table of Contents**


Response to Williams' Statement of Issues to be Decided ....4

Response to Williams' Statement of Undisputed Material Facts ....5

Defendants' Additional Contentions of Undisputed Fact ....9

Memorandum Brief in Support of Opposition to Motion ....12

Issue 1: T2 Modus' unlawful-access claims ....12

A. Computer Fraud and Abuse Act ....12

B. Texas Harmful Access to Computer Act ....14

Issue 2: T2 Modus' trade secrets claim ....14

Issue 3: T2 Modus' breach-of-NDA claim ....16

Issue 4: T2 Modus' fiduciary duty claim ....16

Issue 5: Williams's unpaid wages counterclaims ....17

A. Texas Law is Applicable ....17

1. Even under California Law, Williams' is not entitled to Summary Judgment ....19

B. All Wages Which Were Due Have Been Paid ....20

C. Roach Cannot Be Held Personally Liable ....21

1. Williams Fails to Establish Facts Necessary to Pierce the Corporate Veil ....21

2. Even Under California Law, Williams Fails to Establish Facts Sufficient to Hold Roach Personally Liable ....22

D. Unjust Enrichment is Not Established and Cannot Be Claimed When There is a Contract Between the Parties ....23

E. California Bus. And Prof. Code 17200 ....24

Issue 6: T2 Modus' and Roach's defenses ....25

Conclusion ....26

## Table of Authorities

18 U.S.C. ¶1030(a)(2), (a)(4) and (a)(5)(B) ..... 12

18 U.S.C.§ 1030(e)(2)(B) ..... 13

Texas Penal Code §33.02(a) ..... 14

Texas Civil Practice and Remedies Code, Chapter 134A ..... 14

Texas CPRC §134A.002 ..... 14

Texas CPRC §134A.002(2) ..... 15

*Tex Star Motors, Inc. v. Regal Finance Company, Ltd.*,
No. 14-05-00215-CV (Tex. App. 7/19/2007) ..... 16

*Crim Truck & Tractor Co. v. Navistar International Transportation Corp.*,
823 S.W.2d 591, 593-94 (Tex. 1992) ..... 16

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex.App. 1st Dist. 2003) ..... 17

*Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Services, L.L.C.*,
20 F.4th 184, 188-89 (5th Cir. 2021) ..... 17-18

*Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1238 (9th Cir. 2021) ..... 18

*Ward v. United Airlines, Inc.*,
9 Cal.5th 732, 466 P.3d 309, 264 Cal.Rptr.3d 1 (Cal. 2020) ..... 18-19

*In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002) ..... 20

Texas Pattern Jury Charges, Business, §108.2 – §108.6 ..... 21

Cal. Labor Code §558.1(a), (b) and (c) ..... 22

*Usher v White*, 279 Cal.Rptr.3d 281 (Cal.App.4th 2021) ..... 23

*Angroson, Inc. v. Independent Communications, Inc.*,
711 S.W.2d 268, 273 (Tex. App. 1986) ..... 23

*Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) ..... 24

*Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) ..... 24

Fed.R.Civ.P. 56 ..... 25

**Response to Williams' Statement of Issues to be Decided**

1. **T2 Modus' unlawful-access claims.** Williams fails to show that there are no uncontroverted material facts and that she is entitled to summary judgment as a matter of law on T2 Modus' claims under the Computer Fraud and Abuse Act, 18 USC § 1030, or the Texas Harmful Access to Computer Act, Texas Penal Code Chapter 33.

2. **T2 Modus' trade secrets claim.** Williams fails to show that there are no uncontroverted material facts and that she is entitled to summary judgment as a matter of law on T2 Modus' claims under the Texas Uniform Trade Secrets Act, Texas Civil Practice and Remedies Code, Chapter 134A.

3. **T2 Modus' breach-of-NDA claim.** Williams fails to show that there are no uncontroverted material facts and that she is entitled to summary judgment as a matter of law on T2 Modus' claims for Williams' breach of her Non-Disclosure Agreement.

4. **T2 Modus' fiduciary duty claim.** Williams fails to show that that there are no uncontroverted material facts and that she is entitled to summary judgment as a matter of law on T2 Modus' claims for breach of fiduciary duty.

5. **Williams's unpaid wages counterclaims.** Disputed issues of material fact preclude entry of summary judgment on each of Williams' counterclaims, including whether there are any unpaid wages owed to her. Moreover, Williams fails to show that she is entitled to judgment as a matter of law on her wage claim and her attempt to impose personal liability on Roach.

6. **T2 Modus' and Roach's defenses.** Williams wholly fails to present any factual basis upon which any of T2 Modus' or Roach's affirmative defenses can be the subject of summary judgment.

## RESPONSE TO WILLIAMS' STATEMENT OF UNDISPUTED MATERIAL FACTS

T2 Modus and Roach make the following response the Statement of Undisputed Material Fact attached as Document 36-1 to Williams' Motion for Summary Judgment. To the extent those allegations materially vary or are omitted from the unnumbered narrative "Statement of Uncontested Facts" found at Section II of Williams' Memorandum, T2 Modus and Roach attempt to note same, but object to having to respond to multiple versions of alleged uncontroverted facts.

1. Uncontroverted.

2. Uncontroverted.

3. Uncontroverted.

4. It is uncontroverted that Williams' title was changed from Vice President of Training and Education to Executive Vice President of Customer Excellence and Engagement. Williams' salary did not change, so whether the change of title constituted a "promotion" is subjective, but not material to any issue in her motion.

5. It is uncontroverted that Williams' initial salary was $10,833.33 per month. It is also uncontroverted that Williams' contract with T2 Modus provided: "Employee's salary will be reviewed by the Company on an annual basis, and may be subject to adjustment based on various factors including, but not limited to, [her] performance and the Company's profitability. Any adjustment to Employee's salary will be at the sole discretion of the Company." [See Exh 1, Employment Contract, ¶2(a)].

6. It is uncontroverted that Williams was never a director, owner, member or manager and that she reported to a supervisor. It is controverted that Williams never served as an officer. In her statement of Material Undisputed Fact, Williams states that she served first as a Vice President, and subsequently as an Executive Vice President. [See Exh 2, excerpts from Docs 36-1, Williams'

Undisputed Material Facts, ¶3-4]. Interestingly, Williams has asked the Court to take judicial notice of T2 Modus' denial that she was never an officer, director, executive or senior manager. See Exh 2, excerpts from Doc 36-2, Williams' Request for Judicial Notice, Exh. D, Nos. 63 and 64. This in and of itself creates a disputed issue as to whether Williams ever served as an officer of T2 Modus.

7. Uncontroverted.

8. Controverted only as to the date. Inasmuch as Williams claims lost wages for 2020, her use of 2021 may be a typographical error. The email was sent on or about March 31, 2020. [Exhibit 3, Roach Declaration, ¶ 2].

9. It is uncontroverted that Williams did not give written authorization to deduct part of her wages. It is controverted that any deduction was made from Williams' wages. Rather, as reflected by Williams' own Statement of Uncontroverted Fact, Williams' wages, along with those of all other T2 Modus' employees were reduced due to COVID-19. [Exh 2, excerpts from Doc 36-1, Williams' Undisputed Facts, ¶7-8].

10. Uncontroverted.

11. Uncontroverted.

12. Uncontroverted.

13. It is uncontroverted that Williams' salary, along with that of all other T2 Modus employees, was restored to pre-COVID-19 levels effective March 1, 2021. [See, for example, Exh 2, excerpts from Doc 36-3, Exh D] It is also uncontroverted that the difference between Williams' reduced wages during the 2020-2021 COVID-19 reduction was not paid to her and that such difference was not paid to any other T2 Modus employee. [Exhibit 3, Roach Declaration, ¶ 3].

Whether that amount constituted "back pay" is a question of law, as the term carries with it an implication that there was some legal obligation to pay it.

14. Uncontroverted, but not material.

15. Uncontroverted.

16. Uncontroverted.

17. Uncontroverted.

18. Uncontroverted.

19. Uncontroverted.

20. Uncontroverted. It is also uncontroverted that the License allowed Freeman Honda to access T2 Modus' software by an unlimited number of in-house web browser users on a single instance of the software. [Exhibit 3, Roach Declaration, ¶ 4 and Exh A thereto, ¶2].

21. Uncontroverted that data was provided by Freeman Honda and that Freeman Honda's use of the T2 Modus portal was only as permitted in its software license. Controverted as to the ownership of data provided, analysis and prediction of customer behavior provided by T2 Modus. [Exhibit 3, Roach Declaration, ¶ 5].

22. Uncontroverted as to Freeman Honda. T2 Modus objects that King lacks foundation to know what T2 Modus software requires or allows for dealerships other than Freeman Honda and that such portion of King's statement is material or relevant to any claim in this litigation.

23. Uncontroverted that on or about January 1, 2022, Freeman Honda provided a cancellation notice to T2 Modus indicating that Freeman Honda would no longer be using T2 Modus' software products.

24. Uncontroverted.

25. Uncontroverted.

26. Uncontroverted.

27. It is controverted because the screenshot attached as Exhibit C to Wyman King's Declaration [See Exh 2, excerpts from Doc. 36-4] does not include any request by King for Williams to do anything, as it appears to be a single text message from Williams telling King she intends to do something, with no request, acknowledgement or response from him.

28. It is uncontroverted that King provided Freeman Honda login credentials to Williams. It is also uncontroverted that doing so did not constitute "permission" as providing Williams, a non-employee of Freeman Honda, with off-premises access to T2 Modus software violated Freeman Honda's license. [Exhibit 3, Roach Declaration, ¶ 4-7 and Exh A, ¶2).]

29. It is controverted because the factual statement alleged is not supported by the evidence cited by Williams. King, personally, had no contract or agreement with T2 Modus. T2 Modus contracted with Freeman Honda. . [Exhibit 3, Roach Declaration, ¶4-7 and Exh A.]

30. Uncontroverted.

31. Uncontroverted.

32. Uncontroverted.

33. It is uncontroverted that Freeman Honda had the authority to download data about its customers from the online portal from an in-house web browser. It is also uncontroverted that Williams' access of the portal from a location other than Freeman Honda's premises was not authorized under Freeman Honda's license. [Exhibit 3, Roach Declaration, ¶4-6 and Exh A, ¶2).]

34. Controverted. Although a portal was available, Freeman's license to access that Modus' portal was restricted to web browsers located on Freeman's premises. See Additional Undisputed Fact No. 49 below.

35. Uncontroverted.

36. Uncontroverted.

37. Uncontroverted, as of January 6, 2022.

38. Uncontroverted.

39. Uncontroverted.

40. Uncontroverted.

41. Uncontroverted.

42. Uncontroverted.

43. Uncontroverted.

44. Uncontroverted.

## DEFENDANTS' ADDITIONAL CONTENTIONS OF UNDISPUTED FACT

45. Williams resigned her position with T2 Modus on December 13, 2021. She obtained employment with AutoMiner, a competitor of T2 Modus, not later than December 17, 2021 [See Exh 2, excerpts from Doc. 36-3, Williams Declaration, Exh E]. Freeman Honda's Wyman King had knowledge of these facts. *Id.*

46. On the day she resigned, Williams deleted all of her T2 Modus e-mails. T2 Modus has been unable to recover those deleted emails. [Exhibit 3, Roach Declaration, ¶ 9].

47. Williams' employment contract with T2 Modus included a Non-Competition clause, pursuant to which she agreed:

> "for a period of two years following the termination of [her] employment with the Company for any reason, [s]he will not, directly or indirectly, engage in any business (whether as a compensated or uncompensated officer, director, consultant, advisor, partner, joint venturer, investor, independent contractor, employee or otherwise) which is, to the best of Employee's knowledge, competitive in any respect with the business in which the Company is involved or plans to be involved with as of the termination date." [See Exh 1, Employment Agreement, ¶6].

48. The Freeman Honda data downloaded from T2 Modus' server included data developed using T2 Modus' proprietary scoring software. This data was not owned by Freeman under Freeman's contract with T2 Modus. [Exhibit 3, Roach Declaration, ¶8; Exh A Freeman License Agreement, ¶2].

49. Freeman Honda's license to access and use T2 Modus' software was restricted to "an unlimited number of in-house web browsers," and was not transferable by Freeman Honda. No remote or offsite access was permitted. [Exhibit 3, Roach Declaration, ¶5; Exh A, Freeman License Agreement, ¶3].

50. Williams was aware of the terms of the License and Services Agreement for T2 Data Science and Platform Solution. [Exhibit 3, Roach Declaration, ¶10] and therefore knew or should have known that her January 6, 2022, access of T2 Modus software and servers on behalf of Freeman Honda from her location in California, while she was employed not by T2 Modus, but by a competitor violated the License Agreement and the non-competition agreement within her employment contract. [Exhibit 3, Roach Declaration, ¶11].

51. Williams has access to the Freeman Honda data which she downloaded. She admits that she downloaded a data file, uploaded it to a platform for a company [Conversica] with which her current employer partners, and has attached a printout of it to her Declaration as Exh G. [Exh 2, excerpts from Doc. 36-3, Williams Declaration, ¶22-28 and Exh F; Exhibit 3, Roach Declaration, ¶12].

52. Williams' employment contract with T2 Modus states that it shall be interpreted in accordance with and governed by the laws of the State of Texas. [Exh 1, Employment Agreement, ¶10].

53. While employed by T2 Modus, Williams worked remotely from her domicile in California with auto dealers across the United States that were T2 Modus clients. [Exhibit 3, Roach Declaration, ¶13].

54. During Williams' time with the company, T2 Modus had a single customer in California for approximately 2 months. Williams' duties did not include any effort to expand T2 Modus' presence to California. [Exhibit 3, Roach Declaration, ¶14].

55. During her employment with T2 Modus, Williams' positions as a Vice President and Executive Vice President made her an officer of the company. [Exhibit 3, Roach Declaration, ¶15].

56. Williams' responsibilities as an employee of T2 Modus included training T2 Modus' clients, including, but not limited to Freeman Honda, how to operate the software licensed to those clients. [Exhibit 3, Roach Declaration, ¶16].

57. Williams acted as T2 Modus' agent in negotiating and signing agreements with customers on T2 Modus' behalf. [Exhibit 3, Roach Declaration, ¶17].

58. Williams acted as an agent of T2 Modus as late as December 2021, when she waived a customer's monthly fee for using T2 Modus' services. [Exhibit 3, Roach Declaration, ¶18].

59. Roach owns 34.898% of the outstanding units in T2 Modus. Although this makes him the owner of more units than any other unit owner, it does not constitute a majority of outstanding units. [Exhibit 3, Roach Declaration, ¶19].

## MEMORANDUM BRIEF IN SUPPORT OF OPPOSITION TO MOTION

**Issue 1: T2 Modus' unlawful-access claims.**

A. Computer Fraud and Abuse Act

The uncontroverted facts of this case establish that Williams was employed by Auto Miner LLC, a competitor of T2 Modus, on the day that she accessed T2 Modus' computer system using the Freeman Honda access code and password provided by Wyman King. Williams downloaded information from T2 Modus' server, which she claims belonged to Freeman Honda. However, regardless of any alleged ownership of the data, any access to T2 Modus' server by Freeman Honda, or any person acting on its behalf, was limited by its License Agreement to on-site access from Freeman Honda. Williams, who was in violation of her non-compete agreement, accessed her former employer's proprietary software, for the purpose of downloading information which she then uploaded to a partner of her new employer, in furtherance of providing her new employer with competitive advantage over her former employer with whom she could not lawfully compete.

T2 Modus' claims against Williams include a claim under 18 U.S.C. ¶1030, which allows suit to be brought against a person causing loss aggregating $5,000 in value if that person:

> (a)(2) intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains-... (C) information from any protected computer; or …
>
> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period; or …
>
> (5) (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or...(C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss.

"Protected Computer" is defined to include a computer, which is used in or affecting interstate or foreign commerce or communication. 18 U.S.C.§ 1030(e)(2)(B).

Freeman Honda may well have been lawfully entitled to download its information pursuant to the terms of its License. Freeman Honda was not, however, entitled to tortiously interfere with the non-compete agreement between T2 Modus and Williams. A material issue fact not addressed by Williams is why, if the information on T2 Modus' server "belonged to" Freeman Honda, did Freeman Honda not have concurrent possession of its own data which could be shared with Williams. Why was it necessary to download the information from T2 Modus? Obviously, the implication of this unresolved question is that the formatting and proprietary information woven into the information by T2 Modus added value to the raw data. Williams' actions were nefarious and intended to and did cause financial harm to T2 Modus, i.e. the loss of monthly revenue and costs of investigating an apparent data breach, and intended to benefit Williams and her new employer.

Williams, as a former employee of T2 Modus subject to a non-competition agreement, could not obtain permission from Freeman Honda to access T2 Modus' server without a breach of ethical, fiduciary and legal obligations to T2 Modus. Freeman Honda had no lawful right under its license agreement to grant such permissions. Williams could not lawfully access T2 Modus' server in violation of her non-competition agreement, regardless of the validity of the permission she thought she had, as her conduct was blatantly wrongful and harmful to T2 Modus.

Williams is not entitled to summary judgment on T2 Modus' claims under the Computer Fraud and Abuse Act.

B. Texas Harmful Access to Computer Act

Texas Penal Code §33.02(a) states: "A person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner."

Williams claims that she is entitled to summary judgment on T2 Modus' claims under the Texas Harmful Access to Computer Act because she had Freeman Honda's consent. Whether Freeman Honda had the right to give such consent under its license is controverted. The license limits access to its employees and to its on-site computers. Williams, using her own computer in California, while subject to an agreement not to compete with T2 Modus, was so far outside the scope of license as to be wholly without the effective consent of T2 Modus or Freeman Honda.

Williams' actions were knowing, because as a former T2 Modus employee, who recruited customers and had those customers sign license agreements similar to the one signed by Freeman Honda, knew or should have known that both she and Freeman Honda were not authorized to access T2 Modus' servers in the manner and for the purpose that they did.

Williams freely admits that she contacted Freeman Honda for the purpose of soliciting their account. This violated her non-compete agreement and caused damage to T2 Modus in the form of lost revenue from the Freeman Honda account.

Williams is not entitled to summary judgment on the THACA claim.

**Issue 2: T2 Modus' trade secrets claim.**

The Texas Uniform Trade Secrets Act ("TUTSA") [Texas Civil Practice and Remedies Code, Chapter 134A] prohibits misappropriation of trade secrets. Under TUTSA, Texas CPRC §134A.002, "misappropriation" includes:

> "(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) derived from or through a person who used improper means to acquire the trade secret;

(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret."

WiIliams' breach of her non-compete and non-disclosure agreements and use of Freeman Honda's login credentials in violation of its license agreement restrictions raise disputed issues of material fact as to whether Williams' access to T2 Modus' servers and the information on them constituted "improper means" as defined by TUTSA, Texas CPRC §134A.002(2).

T2 Modus received information from Freeman Honda under a duty to maintain confidentiality and took steps to safeguard that information from persons other than employees of Freeman Honda by limiting licensed access to that information to Freeman Honda's employees, while located on Freeman Honda's premises. That Freeman Honda chose to disregard the restrictions of its license does not affect the strength of T2 Modus' claim that Williams violated TUTSA. The arguments set forth above with regard to the CFAA and THACA claims are equally applicable here and are incorporated by reference.

That the data had value can be answered via a rhetorical question. If there was no enhancement of the Freeman Honda data by T2 Modus, why would Freeman Honda and Williams not simply use the data Freeman Honda originally uploaded to T2 Modus? Clearly, the data was enhanced and processed by T2 Modus into a format which could be uploaded to Conversica, a partner company with Auto Miner, in furtherance of Williams' continued breach of her non-

competition agreement with T2 Modus. The printouts of the data attached to various declarations attached to Williams' motion do nothing but show the data in the columns displayed.

**Issue 3: T2 Modus' breach-of-NDA claim.**

The additional facts cited throughout this response are incorporated by reference into this section. Williams' access to the Freeman Honda data was done without any effective permission or consent of T2 Modus or Freeman Honda. The data was accessed by Williams in furtherance of her ongoing violation of her non-competition agreement. If factually accurate, Williams' subsequent actions in uploading the exact file downloaded from T2 Modus to her current employer's server raises a factual question as to whether it was a disclosure of information by her in violation of the NDA. The Court should deny summary judgment.

**Issue 4: T2 Modus' fiduciary duty claim.**

As a Vice President and Executive Vice President of T2 Modus, Williams acted as T2 Modus' agent and, accordingly, was a fiduciary to T2 Modus. "[T]he formal relationships that exist between … principals and agents give rise to a fiduciary duty as a matter of law." *Tex Star Motors, Inc. v. Regal Finance Company, Ltd.*, No. 14-05-00215-CV (Tex. App. 7/19/2007). See also *Crim Truck & Tractor Co. v. Navistar International Transportation Corp.*, 823 S.W.2d 591, 593-94 (Tex. 1992).

Additionally, as a part of her employment, Williams agreed to non-disclosure and non-compete agreements without which she would not have been employed nor received access to T2 Modus' confidential information. However, Williams resigned and immediately took employment with a competitor in violation of that non-compete clause in her Employment Agreement. She alleges it is a constitutional right for a former employee to compete with her former employer in Texas. She ignores the fact that she had a non-competition agreement and in doing so, misstates

the law. Indeed, in the case cited by Williams, the First Court of Appeals noted that one of the special circumstances in which a former employee cannot compete is when she is party to a non-competition agreement. *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex.App. 1st Dist. 2003).

While employed by a competitor in violation of her non-compete agreement, Williams logged into T2 Modus' computer system. Williams knew or should have known that her remote log-in violated Freeman Honda's License Agreement, as she used that form of agreement during the course of her employment with T2 Modus. Williams' purpose in "helping" Freeman Honda was in furtherance of her violation of her non-compete agreement and breached her duty not to share T2 Modus' confidential information – in this case, Freeman Honda customer data, formatted using T2 Modus' proprietary property – when she uploaded the data to her new employer.

These facts conflict with those urged by Williams in support of her motion and preclude the entry of summary judgment on T2 Modus' fiduciary duty claim.

**Issue 5: Williams's unpaid wages counterclaims.**

A. Texas Law is Applicable

Williams' Employment Contract [Exh 1, ¶10 and ¶8] includes a choice of law provision which requires the Court to apply Texas law to any disputes. The Fifth Circuit enforces choice of law provisions.

> "Texas recognizes that 'parties can agree to be governed by the law of another state.' *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014) ; see also TEX. BUS. & COM. CODE § 1.301(a) ('[W]hen a transaction bears a reasonable relation to this state and [another state] the parties may agree that [either law] shall govern their rights and duties.'). Numerous Texas cases thus apply the law the parties agreed would govern. See, *e.g.*, *Drennen* , 452 S.W.3d at 331; *Gator Apple, LLC v. Apple Tex. Restaurants, Inc.*, 442 S.W.3d 521, 534–35 (Tex. App.—Dallas 2014, pet. denied) ; *Mary Kay Inc. v. Woolf*, 146 S.W.3d 813, 817 (Tex. App.—Dallas 2004, pet. denied).

*Cannon Oil & Gas Well Servs., Inc. v. KLX Energy Services, L.L.C.*, 20 F.4th 184, 188-89 (5th Cir. 2021). T2 Modus is a Texas limited liability company, based in Texas, and thus the employment relationship has a sufficient relationship with Texas for Texas law to be applicable, as chosen by the parties.

Williams conveniently ignores that her contract requires application of Texas law in making her motion for summary judgment. Her Amended Counterclaim [Doc 25] includes a footnote citing *Ward v. United Airlines, Inc.,* 986 F.3d 1234, 1238 (9th Cir. 2021), in which the Ninth Circuit applied a holding from a certified question to the California Supreme Court as to the application of the California Labor Code's pay stub information requirements to airline workers whose job responsibilities were performed nationwide but who were "based" in California. The scope of when a California court might choose to apply California law to an employment action is not found in that opinion, however, but rather in the certified question decision.

The California Supreme Court's decision on the certified question, *Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 466 P.3d 309, 264 Cal.Rptr.3d 1 (Cal. 2020), is a case which wholly supports application of Texas law, rather than California law, to Williams' claims. In *Ward*, the statute in question was Cal. Labor Code §226, which sets forth requirements for the content of an employee's wage statement, a provision which does not form the basis of any claim made by Williams. The California Supreme Court limited its decision to the particular facts before it, stating:

> "First, when it comes to the regulation of interstate employment, it is not sufficient to ask whether the relevant law was intended to operate extraterritorially or instead only intraterritorially, because many employment relationships and transactions will have elements of both. The better question is what kinds of California connections will suffice to trigger the relevant provisions of California law. And second, the connections that suffice for purposes of one statute may not necessarily suffice for another. There is no single, all-purpose answer to the question of when state law will apply to an interstate employment relationship or set of transactions. As is true of statutory interpretation generally, each law must be considered on its own terms."

*Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 466 P.3d 309, 318-319, 264 Cal.Rptr.3d 1 (Cal. 2020).

*Ward* involved airline employees operating under a collectively bargained contract. Williams' contract is not collectively bargained. In *Ward*, there is no analysis of the effect a choice of law provision would have, because there was no such provision.

Here, the parties' agreement specifies the application of Texas law. T2 Modus has no office or base of operations in California. It had a single employee who worked from her home during a pandemic in which tens of millions of people worked from home nationwide. The fact that Williams' home was in California has no bearing on validity and enforcement of the contractual choice of Texas law to govern her relationship with T2 Modus. During Williams time with the company, T2 Modus had a single customer in California for approximately two months and Williams' duties did not include any effort to expand T2 Modus' presence to California.

Texas law should be applied and summary judgment should be denied as to any claim made by Williams under California law.

1. *Even under California Law, Williams is not entitled to Summary Judgment*

Even if California law applies, Williams is not entitled to summary judgment. She relies on Cal. Labor Code § 203(a) which requires showing that the employer has acted willfully. Williams makes the conclusory allegation that T2 Modus "violated Cal. Labor Code §§ 202, 203, and 558.1 by failing Williams owed wages on time," but provides not a single contention of uncontroverted fact to even allege that T2 Modus acted "willfully." Having failed to even allege that T2 Modus acted willfully, let alone support that allegation with uncontroverted facts, Williams' motion for summary judgment on her California based wage claims must be denied.

B. All Wages Which Were Due Have Been Paid.

The undisputed facts establish that T2 Modus was compelled to make a company-wide wage reduction in March 2020, as a result of the COVID-19 pandemic. Williams' contract with T2 Modus allows T2 Modus sole discretion to adjust Williams' salary. Williams makes no contention that the full amount of her reduced wages were not paid to her. Her Declaration establishes that she was told those amounts would not be paid and that there was no obligation to do so, to which Williams replied with a ♥ emoticon, expressing acceptance and love for the statement made to her. [Exh 2, excerpts from Doc 36-3, Williams Declaration, Exh D]. Accordingly, there is no basis for an award of any unpaid wages to Williams.

The employment agreement between Williams and T2 Modus was for no specified term allowed either party to terminate the employment relationship at any time [See Exh 1, Employment Agreement, ¶3(a)], making Williams' employment an employment at-will. Texas law is well settled that the terms of an at-will employment may be modified by the employer. For example, in *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002), the Texas Supreme Court noted:

> In *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227 (Tex.1986), we outlined the manner in which an employer may change the terms of an at-will employment contract. We held that the party asserting a change to an at-will employment contract must prove two things: (1) notice of the change, and (2) acceptance of the change. *Id.* at 229. We stated that 'to prove notice, an employer asserting a modification must prove that he unequivocally notified the employee of definite changes in employment terms.' *Id.* Yet we made clear that when an employer notifies an employee of changes to the at-will employment contract and the employee 'continues working with knowledge of the changes, he has accepted the changes as a matter of law.' *Id.* (citation omitted).

The Employment Agreement and Williams' at-will employment status allow T2 Modus to adjust Williams' wages at the sole discretion of the Company. There is nothing in the Agreement which requires Williams' signature for such a change. Just as there is no written amendment

memorializing the change in Williams' job title, no written modification is required for a change in her compensation. T2 Modus provided notice of the salary reduction. Williams continued to work for T2 Modus after the salary reduction and therefore accepted the change as a matter of law. *Halliburton, id.* As a matter of law, she is not entitled to summary judgment.

C. Roach Cannot Be Held Personally Liable

1. *Williams Fails to Establish Facts Necessary to Pierce the Corporate Veil*

In her Section V.A. of her Motion for Summary Judgment, Williams makes the conclusory statements that "Roach is T2's managing member and was Williams' employer while she worked for T2" and cites to Item 1 in T2 Modus' initial disclosures, which merely states that the parties are correctly named in Plaintiff's Original Petition. Contrary to Williams' assertion, and as evidenced by the W-2 Forms submitted by her [Exh 2, excerpts from Doc 36-3, Williams Declaration, Exh B & C] her employer was T2 Modus. Roach's name does not appear on either W-2. Roach was not Williams' employer.

Attached as Exhibit 4 hereto and incorporated by reference herein are true and correct copies of Texas Pattern Charges, Business, 2016, Sections 108.2 – 108.6 and the comments thereto. To summarize, in Texas, the corporate veil can be pierced and a member of a limited liability company may be held personally liable for debts of the limited liability company if a creditor establishes that the limited liability company was organized and operated an alter ego (Texas Pattern Jury Charges, Business, §108.2), or was uses as a sham for the purpose of perpetrating an actual fraud (PJC, Business §108.3), or as a means of evading an existing legal obligation for the purpose of purpose of perpetrating an actual fraud (PJC, Business §108.4), or to circumvent a statute purpose of perpetrating an actual fraud (PJC, Business §108.5), or by using

the limited liability company to protect a crime or to justify a wrong purpose of perpetrating an actual fraud primarily for the benefit of the party perpetrating the fraud (PJC, Business §108.6).

Williams alleges no facts to establish any of these bases for piercing the corporate veil and imposing liability on Roach and therefore summary judgment is inappropriate.

2. *Even Under California Law, Williams Fails to Establish Facts Sufficient to Hold Roach Personally Liable*

In her motion, Williams cites a portion of Cal. Labor Code §558.1 in arguing that Roach is personally liable for any unpaid wages due under California law. Notwithstanding that Texas law is applicable and that there are no unpaid wages due to Williams, her claim still fails to meet the standard for summary judgment. Cal. Labor Code §558.1 provides in full:

> "(a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation.
>
> (b) For purposes of this section, the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term 'managing agent' has the same meaning as in subdivision (b) of Section 3294 of the Civil Code.
>
> (c) Nothing in this section shall be construed to limit the definition of employer under existing law."

Williams' allegations as to Roach include that he is the CEO of T2 Modus and that he is "managing member" of T2 Modus. As shown above, no evidence supports her claim that Roach is "managing member" of T2 Modus. But, more importantly, Williams makes no allegation that Roach "violated or caused to be violated" Section 203 of the California Labor Code. She produces no evidence that Roach sent the e-mail announcing the company wide pay reduction, that he established or revised the rate of pay of any employee of T2 Modus, that he reviewed payroll

information, signed checks, authorized ACH payments, or otherwise participated in the payroll process.

In *Usher v White*, 279 Cal.Rptr.3d 281, 291 (Cal.App. 2021), the California court said:

> "to be held liable under section 558.1, an 'owner' such as Shirley must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation.
>
> "Determining whether an 'owner' 'violate[d], or cause[d] to be violated' the enumerated provisions in subdivision (a) of section 558.1 cannot be determined by any bright line rule, as this inquiry requires an examination of the particular facts in light of the conduct, or lack thereof, attributable to the 'owner.'"

Here, rather than even alleging any personal involvement by Roach, Williams argues that "T2 violated Cal Labor Code §§202, 203 and 558.1 by failing to pay Williams owed wages on time" and asserts that Roach is liable only because he is CEO and Managing Member. (See Williams Brief Section V.A. p. 28). Her allegations fail to establish that the criteria of §558.1 are satisfied and summary judgment should be denied if California law is found to be applicable.

D. Unjust Enrichment is Not Established and Cannot Be Claimed When There is A Contract Between the Parties

Under Texas law unjust enrichment claims are generally determined as claims for quantum meruit. "Recovery is permitted in quantum meruit to prevent unjust enrichment." *Angroson, Inc. v. Independent Communications, Inc.*, 711 S.W.2d 268, 273 (Tex. App. 1986), which continues:

> "The elements of quantum meruit include proof that:
>
> 1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged."

Williams fails to allege facts sufficient to establish these elements, perhaps most notably, that she never alleges that she complained about the company wide salary reduction or claimed that it was wrongfully imposed or resulted in her not being fairly compensated for her services. To the contrary, all indications from the facts are that she continued to provide services, and if her factual allegations are to be believed, did so to such an extent that in May, 2021, more than a year after the pay reduction, she merited a promotion to Executive Vice President of Customer Excellence and Engagement. She establishes no uncontroverted fact to show that her services were worth anything more than the amounts she was paid.

Additionally, where a valid express contract covering the services rendered or materials furnished exists, recovery on quantum meruit generally is not allowed under Texas law. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988); *see also Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964).

E. California Bus. And Prof. Code 17200.

As demonstrated above, the parties in this action elected to be governed by Texas law. California law is inapplicable to the relationship between these parties. Unlike her claim under the California Labor Code, Williams cites no case in which California's unfair competition law has been extended to an employer located in another state. This alone is sufficient to deny summary judgment.

Regardless, even if California law could be applied to compel payment of unpaid wages, Williams must first establish that there are unpaid wages. As shown above in Section 5B, there are disputed issues of fact as to whether there are any unpaid wages. Summary judgment must be denied.

**Issue 6: T2 Modus' and Roach's defenses**

Arbitration. T2 Modus' claims against Williams do not arise from her employment or under her Employment Agreement and thus are not subject to arbitration. In fact, they are specifically excluded from the Arbitration provision [Exh 1, Employment Agreement, ¶8]. Accordingly, Williams' contention that there has been a waiver by T2 Modus is legally insufficient. Conversely, Williams' claims against T2 Modus arise directly from the Employment Agreement and are thus subject to the Arbitration Clause. Summary judgment should be denied as a matter of law.

Prior Breach. This affirmative defense is withdrawn.

Waiver. Williams waived any right to recover alleged unpaid wages when she continued to perform services for T2 Modus after the company-wide salary reduction. Further, her clear acceptance and agreement when advised that there would be no catch up of the reduced salaries also waived any claim for recovery. (Exh 2, Excerpts from Doc. 36-3, p. 19). These facts provide adequate evidence for the waiver defense to survive summary judgment.

Failure to Mitigate. Williams accepted the company-wide reduction of wages and continued to work. If her claims for recovery of wages are accurate, they could have been avoided by refusing the salary reduction and, if necessary, resigning. The uncontroverted facts show that she took no such action. These facts provide adequate evidence for the failure to mitigate defense to survive summary judgment.

Offset. Offset is also known as setoff. This Court has stated in *Driveline Retail Merch., Inc. v. Pepsico, Inc.*, Civil Action No. 4:17-CV-00423 (E.D. Tex. May 21, 2018):

> "Setoff is a form of equitable counterclaim which brings together obligations of parties opposing each other, and *by judicial action*, makes each obligation extinguish the other. *See* 67 Tex.Jur.3d § 3 *Setoffs, Counterclaims, and Cross Actions* (1989). The object of equitable setoff is "to adjust the demands between the parties and allow a recovery of only the balance that is due." *Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 666 (Tex.App.—El Paso 1992, writ denied)

> (citing *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 544 (Tex.App.—Texarkana 1990, no writ)). "In order for one demand to be set off against another, both demands must mutually exist between the same parties." *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex.App.—Dallas 1984, no writ) (citing *Western Shoe Co. v. Amarillo Nat'l Bank*, 127 Tex. 369, 94 S.W.2d 125, 128 (Comm'n App.1936, opinion adopted)). Indeed, setoff "is proper only where demands are mutual, between the same parties, and in the same capacity or right." *Brook Mays Organ Co., Inv. B. Sandock*, 551 S.W.2d 160, 166 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). *Capital Concepts Props 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994)."

In Driveline, as here, disputed issues of material fact, specifically whether each party was entitled to judgment against the other, prevented the entry of summary judgment on the defense. Accordingly, summary judgment on this defense should be denied.

**Conclusion**

Williams has failed to establish that there are undisputed issues of material fact and that she is entitled to judgment as a matter of law as to any claim made by T2 Modus or as to any of her counterclaims claims against T2 Modus and Roach.

Wherefore, T2 Modus and Roach urge the Court to deny Williams' all aspects of motion for summary judgment.

Respectfully Submitted,

/s/ Terry D. Criss
Terry D. Criss
Attorney & Counselor at Law
State Bar No. 24079656
3010 LBJ Freeway, Suite 1200
Dallas, Texas 75234
972-919-6150
972-525-0053 fax
tcriss@terrycrisslaw.com
Attorney for Plaintiff T2 Modus, LLC
and Counter-defendant Jim Roach

**Certificate of Service**

I hereby certify that on November 30, 2022, I submitted this pleading to the Clerk of the Court and served the same on all counsel of record via the Court's ECF system.

/s/ Terry D. Criss
Terry D. Criss