John Mayfield Rushing (SBN # 24034659)
Ryan McCarl (Cal SBN # 302206)
Davit Avagyan (Cal SBN # 336350)
Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082 E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant Colynda Williams-Arowolo*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| T2 MODUS, LLC,<br><br>*Plaintiff*,<br>v.<br>COLYNDA WILLIAMS-AROWOLO,<br><br>*Defendant*. | Case No. 4:22-cv-263<br><br>Defendant and Counterclaimant Colynda Williams-Arowolo's Reply in Support of the Motion for Summary Judgement<br><br>[*Filed concurrently with Williams' Objections to the Declaration of Jim Roach and Roach's Response to the Statement of Undisputed Material Facts and Additional Contentions of Undisputed Fact*] |
| COLYNDA WILLIAMS-AROWOLO,<br><br>*Counter-Claimant*,<br><br>v.<br><br>T2 MODUS, LLC and JIM ROACH,<br><br>*Counter-Defendants*. | |

## TABLE OF CONTENTS


I. Introduction ........ 1

II. T2 failed to present any dispute of material fact as to any of its causes of action ...... 1

A. T2 fails to show any disputed material fact regarding the CFAA or THACA and the NDA and non-compete discussed do not affect these causes of action. ........ 1

1. T2 has not presented any evidence that it suffered a loss under the CFAA ........ 2

2. No dispute of material facts exists as to Freeman Honda's licensing agreement and the use of the accessed data is irrelevant. ........ 3

3. Freeman Honda is an owner of the data under THACA and Williams acted with the owner's consent. ........ 4

B. It is undisputed that the accessed data was not kept secret as to Freeman Honda and Freeman Honda had no duty of confidentiality as to the accessed data for the data to qualify as a trade secret. ........ 4

C. T2 does not dispute Williams' argument that the data downloaded fell outside the scope of the NDA and its own licensing agreement proves the same. ........ 5

D. T2 concedes that its breach of fiduciary duty claims are preempted, and its irrelevant arguments regarding the non-compete should be disregarded ........ 5

III. There is no dispute as to any fact regarding Williams' unpaid wage claims, only a legal dispute as to whether California or Texas law should apply. ........ 6

A. The California Labor Code applies to Williams despite the choice of law provision. 6

B. There is no dispute that Williams' contract provided for a wage of $130,000 but T2 willfully failed to pay those wages, and Williams is entitled to summary judgment as the only dispute is about T2's legal right to cut Williams' wages. ........ 8

IV. T2's Defenses ........ 9

A. Arbitration ........ 9

B. Waiver ........ 9

C. Failure to mitigate ........ 10

D. Offset ........ 10

V. Conclusion ........ 10

## TABLE OF AUTHORITIES

**Cases**

*Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610 (S.D. Tex. 2011). ....................................2

*Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986) ........................................................10

*Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227 (Tex. 1986) ......................................................9

*Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224 (5th Cir. 2016)............................................1

*Jurgens v. EEOC*, 903 F.2d 386 (5th Cir. 1990) ......................................................................10

*Melanson v. Navistar, Inc.*, Civil Action No. 3:13-CV-2018-D, 2014 U.S. Dist. LEXIS 123113 (N.D. Tex. Sep. 4, 2014) .........................................................................6

*Morgan v. Neiman-Marcus Grp., Inc.*, No. 3:05-CV-0079-G, 2005 U.S. Dist. LEXIS 34541 (N.D. Tex. Dec. 20, 2005).....................................................................10

*Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227 (2015) .....................................7, 8

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766 (S.D. Tex. 2010) .......................2

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017) ..........................................................................................................................6

*Tex Star Motors, inc. v. Regal Finance Company, Ltd*. No. 14-05-00215-CV (Tex. App. 7/19/2007). ............................................................................................................6

*United States v. Aleynikov*, 737 F. Supp. 2d 173(S.D.N.Y. 2010).............................................3

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2016) .....................................................3

*WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199 (4th Cir. 2012).................................3

**Statutes**

Cal. Lab. Code § 202..................................................................................................................8

Cal. Lab. Code § 203..................................................................................................................8

Cal. Lab. Code § 219...........................................................................................................7, 8, 9

Tex. Pen. Code § 33.01(12).........................................................................................................4

Tex. Pen. Code § 33.01(15)....4

# COLYNDA WILLIAMS-AROWOLO'S REPLY IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

## I. Introduction

T2 Modus, LLC's and Jim Roach's (collectively referred to as "T2") response makes one thing clear, there are legal disputes between the parties, but not any legitimate disputes of fact. Williams met the initial showing that there are no genuine issues of material fact, and the burden was shifted to T2 to present evidence to the contrary. However, T2 fails to do so and its unsubstantiated assertions, request that the court draw improbable inferences, and unsupported speculations are not sufficient to defeat Williams' motion for summary judgment.[1]

## II. T2 failed to present any dispute of material fact as to any of its causes of action.

### A. T2 fails to show any disputed material fact regarding the CFAA or THACA and the NDA and non-compete discussed do not affect these causes of action.

T2's response regarding the CFAA creates no issues of fact for a jury. Williams and T2 agree regarding the facts: Williams was asked by Freeman Honda to download data in Freeman Honda's T2 account after William's employment with T2 had ended. In its opposition papers, T2 concedes that "Freeman Honda may well have been lawfully entitled to download its information pursuant to the terms of its License."[2] Freeman Honda's arguments about Williams' non-disclosure and non-compete agreements are entirely beside the point and have no bearing on the facts of the January 6 download or what T2 must show to sustain its claims.

---

[1] *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016).

[2] *T2 Modus, LLC and Roach Resp. Mot. for Summ. J.* 13, ECF 42.

**1. T2 has not presented any evidence that it suffered a loss under the CFAA.**

Though T2's response contains unsubstantiated allegations that the access was "harmful" to T2 and was for the competitive advantage of Williams, that is simply irrelevant and not the standard under the CFAA to show loss or damage.

The CFAA requires a showing of either a "loss" of over $5,000 or "damage" to the computer system, as those terms are defined within the statute. T2 has conceded that the January 6 access caused no damage, as defined under the CFAA.[3] As such, it can only satisfy the requirement by showing a loss. "[T]he term 'loss' encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption."[4] Since T2 has admitted that there were no interruptions to the availability of its services to customers,[5] its argument that it suffered a loss of monthly revenue, resulting from Freeman Honda canceling its agreement with T2, does not satisfy the requirement under the CFAA.

Second, T2 claims that it incurred a loss as a result of "investigating" the January 6 access. However, T2 has failed to present any evidence that such an "investigation" caused a loss of at least $5,000. In interrogatory responses, T2 admitted that such an "investigation" was carried out by its employees,[6] not outside experts that had to be paid a fee. When a plaintiff fails to present any evidence of a cognizable loss, its CFAA allegations should be dismissed at the summary judgment stage.[7]

---

3 *See* RJN Exh. D Nos. 32–35; *see also* RJN Exh. E Nos. 22, 24.

4 *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010).

5 *See* RJN Exh. D Nos. 32–35; *see also* RJN Exh. E Nos. 22, 24.

6 *See* RJN Exh. E No. 22.

7 *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011).

**2. No dispute of material facts exists as to Freeman Honda's licensing agreement and the use of the accessed data is irrelevant.**

Neither the CFAA nor THACA are statutes that concern themselves with how one's data is used.[8] T2's arguments about Williams competing with T2 or how the data was used after it was downloaded are simply irrelevant for the analysis of the CFAA and THACA.

It is undisputed that Freeman Honda had a license to access the account, download the data through a download feature made available by T2, and that Freeman Honda asked Williams to assist it to do so. For access under the CFAA to be "unauthorized access," it must be "without any permission at all."[9] T2 concedes that Freeman Honda was lawfully entitled to download the data in question.[10] Even if the fanciful argument by T2 that in-house means on-site could create a violation of the licensing agreement by the licensee, Freeman Honda, it does not convert the access by Freeman Honda through Williams to one without "any permission at all" to constitute a violation of the CFAA.[11]

T2's conclusory statements, without any cited authority, that Freeman Honda could not grant access to Williams, or its unsubstantiated assertions of "ethical" and other obligations owed by Williams, do not give rise to any disputed fact that affects the analysis under the CFAA or THACA.

---

8 *See United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016) ("CFAA criminalizes unauthorized access, not subsequent unauthorized use."); *see also WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012).

9 *United States v. Aleynikov,* 737 F. Supp. 2d 173, 191-92 (S.D.N.Y. 2010).

10 *T2 Modus, LLC and Roach Resp. Mot. for Summ. J.* 13, ECF 42.

11 The access also did not "exceed" authorized access under the CFAA, which arises when an individual has authorized "access [to] the computer, but not the particular information on the computer that is at issue." *United States v. Aleynikov,* 737 F. Supp. 2d 173, 191-92 (S.D.N.Y. 2010). It is not disputed that Honda Freeman had an active license and account when the January 6 download occurred.

**3. Freeman Honda is an owner of the data under THACA and Williams acted with the owner's consent.**

T2's argument that summary judgment should not be granted as to THACA misses the point completely. Whether Freeman Honda had the right to grant access or not under the licensing agreement, Freeman Honda was an "owner" of the accessed data under THACA's definition of the term. T2's THACA claim cannot survive.

THACA specifically defines an owner as anyone in "possession of the property, *whether lawful or not* . . . [or] is the licensee of data."[12] It is undisputed that Freeman Honda was the licensee of the data in question.[13] Moreover, it is undisputed that Freeman Honda had an account that it could access anytime and lawfully download the data in question.[14] Whether Freeman Honda had the right,[15] under its obligations to T2, to provide access to an agent working off the premises is irrelevant to the claims against Williams, a third-party non-signatory to the licensing agreement. Williams had the effective consent of the owner, and any complaint against Honda Freeman does not create disputed material facts as to the claims against Williams.

**B. It is undisputed that the accessed data was not kept secret as to Freeman Honda and Freeman Honda had no duty of confidentiality as to the accessed data for the data to qualify as a trade secret.**

T2 attempts to confuse its own duty to maintain Freeman Honda's data in confidence with a duty by Freeman Honda to do the same. There is no evidence presented by T2 that

---

12 Tex. Pen. Code § 33.01(15) (emphasis added).

13 *See* RJN Exh. D No. 1 (T2 admitted that Honda Freeman had an active software license on January 6).

14 *See* RJN Exh. D Nos. 2–3.

15 Tex. Pen. Code § 33.01(12) (Any person "legally authorized to act for the owner" may provide the effective consent necessary).

Freeman Honda owed a duty of confidentiality in connection with the downloaded data. On the contrary, the licensing agreement clearly places such a duty only on T2.[16] T2 itself made a feature available for Freeman Honda to download the data.[17] It is nonsensical that data made available for download, which is not protected by any duty of confidentiality by the downloader, is a trade secret.

**C. T2 does not dispute Williams' argument that the data downloaded fell outside the scope of the NDA and its own licensing agreement proves the same.**

T2 does not argue and thus concedes that the NDA did not encompass the data downloaded. As Williams argued in her moving papers, the NDA applies only to information shared between T2 and Williams, while the data in question was shared between Freeman Honda and Williams. T2 does not present any contrary evidence.

Additionally, T2 does not dispute that Freeman Honda had no duty of confidentiality as to the data downloaded on January 6. In fact, the licensing agreement presented by T2 shows the opposite. As such, there is no dispute of material fact that under the NDA clause H section 4(iv), the data made available to Freeman Honda through its account was expressly excluded from the scope of the NDA. T2's allegations that Williams breached a non-compete does not in any way affect the scope of the NDA or the undisputed facts regarding the data downloaded that place the data clearly outside the scope of the NDA.

**D. T2 concedes that its breach of fiduciary duty claims are preempted, and its irrelevant arguments regarding the non-compete should be disregarded.**

---

[16] *See* Declaration of Jim Roach, Exh. A.

[17] *See T2 Modus, LLC and Roach Resp. Mot. for Summ. J.* 13, ECF 42 ("Freeman Honda may well have been lawfully entitled to download its information pursuant to the terms of its License.")

T2 fails to present any argument that its claims are not preempted by TUTSA as held by the Texas Court of Appeals in *Super Starr*.[18] T2's argument is based first on a mistaken assumption that any agent owes a fiduciary duty to its principal and, secondly on entirely irrelevant clauses in the employment agreement.

T2's reliance on *Tex Star* is misplaced. The court was discussing whether formal and informal fiduciary duties created issues of law or fact.[19] The law in Texas is clear. "An at-will employment relationship generally does not satisfy the strict standard for recognizing the existence of an informal fiduciary relationship."[20] The court in *Melanson* granted summary judgment because no evidence was presented that would turn a regular at-will employment relationship into one where an employee owed a fiduciary duty.

While T2 also presents arguments regarding a non-compete in Williams' employment contract, the non-compete does not change the at-will employment status of Williams, create fiduciary duties,[21] and was never alleged as a breach in T2's complaint. T2 presents no evidence that Williams somehow owes her former at-will employer fiduciary duties.

## III. There is no dispute as to any fact regarding Williams' unpaid wage claims, only a legal dispute as to whether California or Texas law should apply.

### A. The California Labor Code applies to Williams despite the choice of law provision.

---

[18] *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017).

[19] *Tex Star Motors, inc. v. Regal Fin. Co., Ltd*. No. 14-05-00215-CV (Tex. App. 7/19/2007).

[20] *Melanson v. Navistar, Inc.*, Civil Action No. 3:13-CV-2018-D, 2014 U.S. Dist. LEXIS 123113, at *33 (N.D. Tex. Sept. 4, 2014)

[21] If this non-compete was not void as a matter of law, it could only create a contractual obligation.

It is undisputed that Williams worked for T2 from California, that T2 had a California client, and that the employment contract contained a choice-of-law provision. The dispute is that the choice of law provision has any legal validity, which is a question of law.

T2's attempts to distinguish the plaintiffs in *Ward* from Williams is unconvincing as the employees there and Williams are similarly situation. In answering the certified question, the California Supreme Court has held that the application of the California Labor Code should be determined by testing the job situs, which is "certainly satisfied when the employee spends the majority of his or her working hours in California."[22]

T2 places heavy reliance on the choice of law provision in its employment agreement but choice-of-law provisions in contracts of adhesion should not be enforced against the weaker party if enforcement would create "substantial injustice."[23] If foreign law will result in statutory protections being evaded, the foreign law is not to be given effect.[24] Williams was an at-will employee with no bargaining power regarding the terms, making the agreement one of adhesion.[25]Analyzing a similar choice of law provision that forced a California employee to accept Texas law, the California Court of Appeals held that since Texas law did not contain the same protections as California, the choice of law provision operated as an advanced waiver of rights protected by the California Labor Code.[26] The California Labor Code prohibits the waiver of certain statutory protections.[27]

---

[22] *Id*. at 754.

[23] *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 247 (2015).

[24] *Id*. at 249.

[25] *Id*. at 242 ("The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.") (internal quotation marks omitted).

[26] *Id*. at 251.

[27] Cal. Lab. Code § 219

If the agreement is held to apply, it will act as a waiver of Williams' statutory rights under the California Labor Code. For example, protections under Cal. Lab. Code §§ 202, 203, 219 are not provided for in the Texas Labor Code and would be waived. The mere potential that protection might be undermined is enough to justify refusing the enforcement of a choice-of-law provision.[28] Here, the loss of protection is not merely theoretical. Williams will lose the protections of California statutes protecting employees if the choice-of-law provision is enforced.

**B. There is no dispute that Williams' contract provided for a wage of $130,000 but T2 willfully failed to pay those wages, and Williams is entitled to summary judgment as the only dispute is about T2's legal right to cut Williams' wages.**

Whether California or Texas law applies, there are no genuine disputes as to any material fact. T2 and Williams agree that they entered into an agreement that set Williams' wages at $130,000, that the agreement contained a provision that required a signed writing to modify or amend the agreement, and that no such writing modifying the contract exists.

T2 attempts to argue that Williams waived her wage claims by continuing to work after being told her wages would be temporarily reduced. However, unpaid wage claims cannot be waived under the Cal. Lab. Code § 219. Under Texas law, T2 has the burden to prove that that there was "(1) notice of the change; and, (2) acceptance of the change."[29] T2 has not made any such showing. Its only argument is that after the fact, when Williams asked how withheld wages would be paid, she was told she would not be receiving them.

---

[28] *Pinela*, 238 Cal. App. 4th at 249.

[29] *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986).

Williams need only show that T2 "intentionally fail[ed] to pay wages to an employee when those wages are due."[30] The failure to pay is willful if the employer "knows what [it] is doing [and] intends to do what [it] is doing."[31] T2's willfulness is evidence by T2 telling Williams, when she inquired, that her unpaid wages would not be paid.[32].

## IV. T2's Defenses

### A. Arbitration

The employment contract between Williams and T2 contained an arbitration provision that made all claims "relating" to the employment of Williams by T2 subject to arbitration. While the clause contains an exception for misuse or misappropriation of trade secrets, this exception does not relate to the claims brought by T2 regarding violations of the CFAA or THACA. The Supreme Court, in *Morgan v. Sundance, Inc.*, held that the only relevant question to determine waiver of a right to arbitrate was whether the holder of the right took action that was inconsistent with the right to arbitrate.[33] T2, having filed its claims in court rather than bringing it through arbitration, and having failed to move to arbitrate, waived the right. Moreover, it is irrelevant as it creates no issue of fact for a jury.

### B. Waiver

As discussed in section III.B) above, under Cal. Lab. Code § 219 Williams' cannot waive her right to unpaid wages. Whether under Texas law T2's notice and Williams' action amounted to waiver are a question of law.[34]

---

[30] *Diaz v. Grill Concepts Servs., Inc.*, 23 Cal. App. 5th 859, 868 (2018). *See also Barnhill v. Robert Saunders & Co.*, 125 Cal.App.3d 1, 7 (1981).

[31] *In re Trombley*, 31 Cal.2d 801, 807 (1948).

[32] *See* Williams Decl. Exh. D.

[33] 142 S. Ct. 1708, 1714 (2022).

[34] *See Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986).

### C. Failure to mitigate

Although an employee has a duty to mitigate, at the summary judgment stage, the employer "bears the burden of proving to the court 'beyond peradventure' that [the employee] failed to mitigate her damages."[35] T2 has presented no evidence that Williams' failed to mitigate. T2 instead argues that Williams should have resigned, which would accomplish the opposite of mitigation as she would not have even been making the reduced amount T2 paid. An employee may mitigate damages by remaining on the job.[36]

### D. Offset

In the case cited by T2, the Court held there were genuine issue of material fact as to set off because of evidence presented by both parties.[37] The mere presence of a set off defense is not enough and T2 has produced no evidence that there are genuine issues of material fact.

## V. Conclusion

There are no genuine disputes of material fact as to any of T2's claims or Williams' counterclaims. Even taken in the light most favorable to T2, any disputes between the parties are legal in nature, not factual. Williams respectfully requests the Court grant the Motion for Summary Judgement in its entirety.

---

[35] *Morgan v. Neiman-Marcus Grp., Inc.*, No. 3:05-CV-0079-G, 2005 U.S. Dist. LEXIS 34541, at *27 (N.D. Tex. Dec. 20, 2005) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

[36] *See Jurgens v. EEOC*, 903 F.2d 386, 389-90 (5th Cir. 1990) (holding that "where an employer discriminatorily denies promotion to an employee, that employee's duty to mitigate damages encompasses remaining on the job.").

[37] *Driveline Retail Merch., Inc. v. PepsiCo, Inc.*, Civil Action No. 4:17-CV-00423, 2018 U.S. Dist. LEXIS 84590, at *29 (E.D. Tex. May 21, 2018).

Dated: December 7, 2022

Respectfully submitted,

Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082 E: info@rushingmccarl.com