John Rushing (331273)
Ryan McCarl (302206)
Davit Avagyan (336350)
**RUSHING MCCARL LLP**
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant Colynda Williams-Arowolo*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| T2 MODUS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>COLYNDA WILLIAMS-AROWOLO,<br><br>*Defendant.* | Case No. 4:22-cv-263<br><br>Judge: Hon. Amos L. Mazzant<br><br>**Defendant and Counterclaimant Colynda Williams-Arowolo's Notice of Motion and Motion to Compel Further Discovery Responses from Plaintiff T2 Modus, LLC and Request for Sanctions; Memorandum of Points and Authorities**<br><br>*[Concurrently filed with Declaration of Ryan McCarl, and Proposed Order]*<br><br>Complaint Filed: March 4, 2022<br>Pretrial Conference: Sept. 14, 2023, at 9:00 a.m. |

| | |
|---|---|
| | Trial Date: Not Set |
| COLYNDA WILLIAMS-AROWOLO,<br><br>*Counterclaimant,*<br><br>v.<br><br>T2 MODUS, LLC, and JIM ROACH,<br><br>*Counterdefendants.* | |

**DEFENDANT AND COUNTERCLAIMANT COLYNDA WILLIAMS-AROWOLO'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER DISCOVERY RESPONSES FROM PLAINTIFF T2 MODUS, LLC AND REQUEST FOR SANCTIONS AGAINST T2 MODUS, LLC**

Defendant and Counterclaimant Colynda Williams-Arowolo ("Williams") moves under Fed. R. Civ. P. 37 for an order compelling Plaintiff and Counterdefendant T2 Modus, LLC ("T2") to (1) produce the source code containing the alleged trade secrets over which it sued Williams a year and a half ago; (2) produce all communications about its unilateral COVID wage cuts; and (3) provide complete, nonevasive, and objection-free responses to various Williams' First Set of Interrogatories and Requests for Production, as outlined in the brief that follows this Notice of Motion as well as the concurrently filed Proposed Order.

Williams also seeks sanctions against T2, as described in the concurrently filed Proposed Order as well as Part IV of the attached Memorandum of Points and Authorities.

The grounds for this motion include the following:

1. T2 is withholding information and documents based on claimed trade secrets and confidentiality privileges, but T2 filed a trade-secrets lawsuit against Williams. T2 must identify the trade secrets alleged in its Complaint and must not be allowed to conduct a trial by ambush.
2. T2 refuses to respond to interrogatories demanding to know what facts and documents T2 has to support its claims.
3. Despite many attempts to meet and confer, in writing and by telephone, T2 made no effort to address the concerns raised in this motion by amending its responses, producing documents, or supplying verifications.
4. The discovery responses T2 has provided were evasive, incomplete, and filled with improper boilerplate objections and quotations of law rather than substantive answers.

This motion is based on the documents below as well as other papers submitted before or arguments presented at the hearing (if the Court orders one):

- Defendant Colynda Williams-Arowolo's Memorandum of Points and Authorities in Support of Motion to Compel Further Responses to Interrogatories, Requests for Production, Verification of Interrogatories, and Initial Disclosure Documents.
- Declaration of Ryan McCarl in Support of Defendant Colynda Williams-Arowolo's Memorandum of Points and Authorities in Support of Motion to Compel Further Responses to Interrogatories, Requests for Production, Verification of Interrogatories, and Initial Disclosures.

Dated: July 26, 2023

Respectfully submitted,

John Mayfield Rushing
(Cal. SBN 331273)

Ryan McCarl
(Cal. SBN 302206)

and Davit Avagyan (Cal. SBN 336350)

**RUSHING MCCARL LLP**
2219 Main St. No. 144 | Santa Monica, CA 90405
T: (310) 896-5082 | E: info@rushingmccarl.com
*Attorneys for Defendant and Counterclaimant Colynda Williams-Arowolo*

## Memorandum of Points and Authorities in Support of Colynda Williams-Arowolo's Motion to Compel Further Discovery Responses from Plaintiff T2 Modus, LLC and Request for Sanctions


I. Background ....................6

II. Legal Standards ....................7

A. Discovery relevance and motions to compel ....................7

B. Rule 26(a) initial disclosures ....................8

C. Discovery sanctions ....................9

III. Argument ....................11

A. Williams is entitled to information about the supposed trade secrets forming the basis for T2's claims ....................11

B. T2 must specifically identify its supposed trade secrets and provide all source code and other documentation that would allow Williams to evaluate T2's claims. Marketing buzzwords and conclusory assertions are insufficient. ....................12

C. T2 has provided inadequate discovery responses related to Williams' counterclaims. ....................15

D. T2 should be required to pay the fees it forced Williams to incur in bringing this motion. ....................16

IV. Conclusion and request for relief ....................17


## Introduction

Plaintiff T2 Modus, LLC filed a baseless trade secrets lawsuit against its former sales employee, defendant Colynda Williams-Arowolo ("Williams"), costing Williams hundreds of thousands of dollars in attorney fees to date. But T2 has refused to participate in discovery as required by the Federal Rules of Civil Procedure, offering incomplete, conflicting, and inadequate responses to even the most basic requests.

On the eve of trial, more than a year-and-a-half into its lawsuit alleging the theft of trade secrets, T2 has still not turned over (or even specifically described) the supposed trade secrets alleged in the Complaint. T2's inaccurate and incomplete discovery responses and document production violate the Rules and are preventing Williams from preparing for trial. The Court should require T2 to meet its discovery obligations and compensate Williams for the expenses she has incurred in securing this relief.

## 1) Background

T2 sued Williams, alleging violation of the Computer Fraud and Abuse Act, violation of the Texas Harmful Access to Computer Act, statutory misappropriation of trade secrets, breach of contract, and breach of fiduciary duty. T2 has claimed that Williams' action giving rise to these claims was Williams' downloading some data that T2 claims are its trade secret. But in its Complaint, T2 does not identify what exactly constituted its trade secrets or what damages it incurred. Now, T2 is also refusing to identify the main subject of this litigation in its discovery responses and attempting to force Williams to litigate while blindfolded as to the facts.

Williams propounded discovery requests to T2 on September 19, 2022. On October 19, 2022, T2 sent its responses to the First Set of Requests for Admission, the First Set of Requests for Production, and the First Set of Interrogatories.[1] But T2 did not send any document production that day or for months after, despite repeated inquiries from Williams' counsel. In February 2023, T2 produced supplemental

[1] *See* Exs. A (Responses to First Set of Requests for Production) and B (Responses to First Set of Interrogatories).

discovery responses.[2] On March 15, 2023, T2 served verified, amended, supplemental responses to the first set of interrogatories.[3]

The Court entered a protective order on February 23, 2023.[4] Williams served additional discovery requests on April 18, 2023, and T2 responded a month later.[5] On June 1, 2023, T2 and Roach jointly served supplementary responses to the second set of requests for production.[6] After a July 17, 2023 teleconference on discovery issues, the Court issued a minute order authorizing Williams to file this motion.[7]

## 2) Legal Standards

### A. Discovery relevance and motions to compel

A party is presumptively entitled to discovery of any matter within the broad scope of discovery relevance set forth in Federal Rule of Civil Procedure 26. Federal discovery "rules are . . . accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials."[8] The information sought in discovery need not itself be admissible; it must only be likely to lead to the

---

[2] *See* Exs. C (Supplemental Responses to First Set of Requests for Production) and D (Supplemental Responses to First Set of Interrogatories).

[3] Ex. G.

[4] ECF 52.

[5] *See* Exs. E (Responses to Second Set of Requests for Production) and F (Responses to Second Set of Interrogatories).

[6] *See McCarl Decl. Ex.* G (Supplemental Responses to Second Set of Requests for Production).

[7] *See* July 17, 2023 Minute Order ("allow[ing] Defendant to file a motion to compel").

[8] *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

discovery of admissible evidence.[9] Information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense . . . ."[10]

If the serving party does not receive a proper response to their discovery requests, then the serving party may request an order compelling disclosure.[11] The serving party must first show that its requests are proper.[12] The party resisting discovery then has the burden to show "specifically how each discovery request is not relevant or otherwise objectionable . . . ."[13] If the motion to compel is granted, the Court should award the movant's "reasonable expenses incurred in making the motion, including attorney's fees."[14]

### B. Rule 26(a) initial disclosures

Mandatory disclosures under Federal Rule of Civil Procedure 26(a) include "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . " and "a copy—or

---

9 *See Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).

10 Loc. Civ. R. 26(d).

11 Fed. R. Civ. P. 37(a).

12 *See Exp. Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("The [first] burden lies with the moving party to show clearly that the information sought is relevant to the case and would lead to admissible evidence.")

13 *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 593 (N.D. Tex. 2017).

14 Fed. R. Civ. P. 37(a)(5)(A).

a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims."[15] Local Civil Rule 26 also explains that relevant information that must be disclosed includes information "that would not support the disclosing parties' contentions," "that deserves to be considered in the preparation, evaluation, or trial of a claim or defense" or "that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate, or try a claim or defense."[16] A party's initial disclosures must also contain "a computation of each category of damages claimed by the disclosing party."[17]

### C. Discovery sanctions

This Court has inherent authority as well as authority under Fed. R. Civ. P. 37 to impose sanctions if a party engages in discovery misconduct or disobeys an order to provide discovery. Such sanctions serve the dual purposes of penalizing those whose conduct warrants the sanctions and serving as general deterrents of future similar conduct.[18]

---

[15] Fed. R. Civ. P. 26(a).

[16] E.D. Tex. L. Civ. R. 26.

[17] Fed. R. Civ. P. 26(a).

[18] *Guifu Li v. A Perfect Day Franchise, Inc.*, 281 F.R.D. 373, 390 (N.D. Cal. 2012).

The Court may:

> (i) direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) strik[e] pleadings in whole or in part;
> (iv) stay[] further proceedings until the order is obeyed; … or
> (v) render[] a default judgment against the disobedient party.[19]

Terminating sanctions are warranted when a party's failure to comply with discovery orders shows "willfulness or bad faith."[20] Disobedient conduct is willful if it is within a party's control.[21] The Court should also require the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order, unless the Court finds that the failure was substantially justified or other circumstances make an award of expenses unjust.[22]

In one instructive case, the court imposed terminating sanctions because the effect of the defendant's evasive misconduct was to frustrate effective discovery and

---

[19] Fed. R. Civ. P. 37(b)(2)(A). This list of sanctions is nonexhaustive. Other sanctions may include, for example, a jury instruction allowing the jury to make an adverse inference against the party that interfered with discovery. *See, e.g.*, *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013).

[20] *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011).

[21] *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 525 (9th Cir. 1997).

[22] Fed. R. Civ. P. 37(b)(2)(C).

make it impossible to be sure of the case's facts.[23] The delayed discovery responses appeared calculated to prevent the plaintiffs from learning and proving the truth.[24]

**3) Argument**

**D. Williams is entitled to information about the supposed trade secrets forming the basis for T2's claims.**

Companies may not sue former employees for misappropriating trade secrets and then refuse to disclose those supposed trade secrets in discovery — but T2 has done just that throughout this litigation.

Most of Williams' discovery requests have sought to understand what trade secrets T2 alleges she has stolen.[25] As Williams has explained to T2, Williams received the right to this information when T2 filed trade-secret-based claims against her.[26] This legal right of discovery is and has long been the law.[27] Where a "core allegation is that Defendants misappropriated … trade secrets … [those] trade

---

[23] *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1094 (9th Cir. 2007).

[24] *Id.* at 1095.

[25] *See, e.g.*, McCarl Decl. ¶¶ 2–10.

[26] *See* McCarl Decl. Ex. H (Oct. 24, 2022 letter) at 2 ("If T2 wished not to have to reveal its supposed trade secrets to Williams, T2 should not have filed a trade-secrets claim against her.").

[27] *See Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324 (S.D. Fla. 2001) ("By bringing a claim under the Uniform Trade Secrets Act, and thereby placing the trade secrets at issue, Del Monte essentially has waived its right to assert the trade secret privilege.") (citing *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1476 (11th Cir. 1984) (finding that plaintiff waived psychotherapist-patient privilege by claiming damages for mental anguish).

secrets are both relevant and necessary," so they must be produced.[28] In *M-I*, the plaintiff-employer sought the *defendants'* trade secrets, and the court held that these must be produced.[29] The same principle applies even more strongly where, as here, the plaintiff chose to initiate the lawsuit asserting the existence of trade secrets that it won't produce, even after the Court ordered them to do so and after three discovery deadlines have come and gone.[30]

### E. T2 must specifically identify its supposed trade secrets and provide all source code and other documentation that would allow Williams to evaluate T2's claims. Marketing buzzwords and conclusory assertions are insufficient.

Where a plaintiff alleges the misappropriation of a trade secret, it must identify the trade secret adequately and produce relevant documents.[31] T2 has not done this.

---

[28] *See M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 802 (S.D. Tex. 2010) (applying both Texas and federal law to "find[ ] that the trade secret drawings and other confidential information, which form the crux of this entire case, to be discoverable.").

[29] *See id.* at 804 ("The Court therefore rejects Defendants' attempts to analogize the instant litigation to cases where trade secret discovery has been rejected on Rule 507 grounds.").

[30] *See* McCarl Decl. ¶¶ 3, 26, 37.

[31] *See Developmental Techs., LLC v. Valmont Indus.*, No. 8:14-cv-2796-T-35JSS, 2016 U.S. Dist. LEXIS 43765, at *7 (M.D. Fla. Mar. 31, 2016) ("At this point in the litigation—two months after the close of fact discovery—Plaintiff should be aware of the specific documents that comprise its trade secret and must identify those documents in discovery."). *See also id.* at *6 (finding only "a lengthy description of the compilation of information that it contends constitutes its combination trade secret" constituted an adequate interrogatory response).

Instead, it has offered the vaguest of generalities in describing its services, little different from how it might describe them to prospective customers.

Interrogatory No. 26 asks, "For all alleged intellectual property . . . state all facts supporting your contention that the intellectual property is a trade secret." T2's conclusory response was largely copied and pasted from the Texas Uniform Trade Secrets Act.[32] Copying and pasting a statute is not a sufficient discovery response.

In other interrogatory responses, T2 asserts that the information sought in the interrogatory may be gleaned from T2's document production.[33] T2's production has included several thousand irrelevant and useless documents but no source code or other documentation substantiating T2's trade secrets claims (or even specifically describing the supposed secrets).[34] Evasive responses along these lines are never appropriate,[35] but they are especially unacceptable here because T2 previously

---

32 *See McCarl Decl.* ¶ 30.

33 *See*, *e.g.*, McCarl Decl. Ex. D (Supp. Resp. to Interrogatory No. 16) at 3–4 ("the answer to this interrogatory may be ascertained from the documents T2 will produce in response to Defendant's requests for production.").

34 *See* McCarl Decl. ¶ 32.

35 *See Pac. Lumber Co. v. Nat'l Union Fire Ins. Co.,* No. C 02-4799 SBA (JL), 2005 U.S. Dist. LEXIS 1773, at *14-15 (N.D. Cal. Jan. 5, 2005) (citing cases and authorities) (quotation omitted):

> Responding to an interrogatory with a reference … to a document … is improper. It is well established that an answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to … other documents … at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.

claimed that the source code did not exist,[36] then, once that claim was exposed as false, refused to produce it or allow Williams' counsel to review it.[37]

T2 apparently expects Williams and the Court to take T2's word for it that its source code contains trade secrets that can be reverse-engineered from a single text file containing information about one auto dealership's customers. But T2's 30(b)(6) witness and purported expert Jim Roach turned out to have never looked at T2's software code[38] and, not knowing the relevant programming language or having any relevant training or credentials,[39] may lack the background to understand it even if he had looked.

---

*Accord Moser v. Navistar Int'l Corp.*, Civil Action No. 4:17-00598, 2018 U.S. Dist. LEXIS 127007, at *16 (E.D. Tex. July 27, 2018) (Mazzant, J.) (noting "answers to … interrogatories should provide a clear and easily traceable answer" that specifies the responsive documents).

[36] *See McCarl Decl. Ex.* C at 10 (responding to a request for all documents related to trade secrets "including … source code," T2 said that, because it "does not document trade secrets or have any technical documentation … no such documents exist."). RFP No. 12's request for "DOCUMENTS relating to each T2-owned trade secret alleged in YOUR Complaint" and RFP No. 19's request for "all T2-owned confidential information alleged in YOUR Complaint" received effectively the same response. *See id.* at 7 and 9. *See also* McCarl Decl. ¶¶ 2, 13.

[37] *See*, *e.g.*, McCarl Decl. Ex. F at 4 ("The source code resides on T2's server and occupies 8TB of space. There is no specified medium of adequate size to produce a copy of it to Williams. Further, T2 objects to providing direct access to its source code to the experts designated by Williams as neither claims any expertise pertinent to the subject matter.").

[38] *See*, *e.g.*, McCarl Decl. Ex. M (Roach Dep.) 26:19–22, 29:13–15, 170:7–172:14 ("I don't know the code.), 173:11–23, 184:11–13 (Q: ". . . you haven't seen the source code? A: Exactly."), 287:24–288:16.

[39] *See id.* 26:23–27:5 ("I've forgotten about everything I know about that."), 86:10–13.

For all we know, the lone unencrypted text file Williams helped Freeman Honda export from its licensed T2 software portal contained randomly generated numbers rather than the clues needed to reverse-engineer whatever unpatented, undocumented functions in T2's software produced them.[40] (Of course, T2 may not even own these functions, and the software could rely entirely on libraries developed by third parties; Roach, having not looked at the code, couldn't testify one way or the other.)[41]

This is an improvement from the days when T2 denied such documents existed, but it remains thoroughly inadequate. The existence of the protective order makes T2's refusal even less comprehensible.[42]

### F. T2 has provided inadequate discovery responses related to Williams' counterclaims.

T2's initial disclosures named only Jim Roach, though he was later shown to be far from an expert in the alleged source code, and no computation of alleged damages.[43] Williams' Request for Production No. 50 sought communications with T2 employees "relating to the salary decreases T2 implemented between 2020–2021."[44] T2's first response was to cite "Roach's response [to similar requests] and documents produced in response" as well as to promise that, "as agreed during Roach's deposition, a further search is being made for documents responsive to this request and if any responsive documents are found, this response will be seasonably

---

40 *See id.* 24:21–25:14, 75:6–13.

41 *See id.* 23:24:16–19, 86:10–13, 171:4–172:14, 288:7–16.

42 *See* McCarl Decl. ¶ 38.

43 *See* McCarl Decl. ¶¶ 22–29.

44 *See McCarl Decl. Ex.* E (Resp. to 2 RFP) at 1.

supplemented."[45] Two weeks later, T2 and Roach jointly identified and produced three documents over nine pages.[46] As Williams explained, this is not only apparently but demonstrably incomplete.[47]

### G. T2 should be required to pay the fees it forced Williams to incur in bringing this motion.

If this Court finds that T2 has not complied with the Federal Rules of Civil Procedure in its discovery responses, Williams should be awarded fees and expenses associated with this motion.

Further, Rule 37(d)(1) provides that the Court may impose sanctions against a party that fails to serve answers, objections, or written responses after being served with interrogatories and request for inspection. T2's pervasive discovery misconduct demands sanctions under Rule 37. T2 began discovery by (1) refusing to verify its discovery responses as required; (2) providing incomplete, evasive, and unverified interrogatory responses accompanied by meritless and general objections; and (3) producing no responsive documents or a privilege log identifying any withheld documents. After months of correspondence and effort by Williams, and intervention of the Court, T2 began to make some verified responses, but these remain incomplete and inadequate, and T2 has made only meager production in response to some requests and wholly refused to produce documents critical to T2's own claims in response to others.

T2's refusal to engage in the discovery process made this Motion to Compel necessary, and its obstructionism must not be allowed to continue. Sanctions are

---

[45] *See McCarl Decl. Ex.* F (Resp. to 2 ROG) at 1–2.

[46] *See* Ex. D (Supp. Resp. to 2 ROG) at 2.

[47] *See* McCarl Decl. Ex. I (July 13, 2023 letter from Ryan McCarl) at 2–3.

essential to reimburse Williams and deter T2's ongoing willful noncompliance with the Federal Rules of Civil Procedure.

### 4) Conclusion and request for relief

Without the Court's intervention, T2 will continue concealing evidence and refusing to produce responsive documents and adequate responses. Williams cannot litigate the case while being forced to guess what is alleged, what T2 claims is a trade secret, or on what documents T2 bases its contentions. Nor is Williams required to take T2 at its word when it claims that its source code contains trade secrets that can be reverse-engineered from one unencrypted text file listing one auto dealership's customers.

T2 dragged Williams, a mid-level former sales employee, into a lawsuit filed halfway across the country from where Williams resides. Williams lacks the considerable resources of T2 (a company that claims to have been valued at over $70 million) or its CEO Roach (who secretly exempted himself from the unilateral 20% salary cut he imposed on Williams and other employees during COVID).

T2's refusal to divulge the supposed trade secrets on which its lawsuit is based tends to confirm that T2's claims lack any legal or factual merit, and that this is a frivolous lawsuit filed and maintained in bad faith. When T2's claims are disposed of, Williams will seek full reimbursement of the hundreds of thousands of dollars in attorney fees that T2 has unjustly imposed on her in its quest to fish for information about Williams' new employer (a T2 competitor).

**Monetary sanctions.** T2 rather than Williams should have to pay for this motion and for the costs T2 has imposed by refusing to divulge its supposed trade secrets and otherwise evading discovery. If the Court holds that monetary sanctions are

warranted, Williams' counsel will file a supplemental declaration describing the relevant fees and costs T2 has imposed.

**Terminating sanctions.** The Court should also impose terminating sanctions on T2, a party that has flouted the rules of discovery and wasted this Court's time by filing and refusing to drop claims it either cannot or will not substantiate. A plaintiff should not be allowed to bring a trade-secrets lawsuit to the brink of trial without divulging the supposed secrets.

The case for terminating sanctions is especially strong because (1) T2 disobeyed the Court's unambiguous February 8, 2023 Order instructing T2 to disclose its trade secrets after securing a protective order, and (2) T2 lied about the existence of source code containing its supposed secrets, then came clean only after discovery had closed for a third time.[48] T2 has irreparably prejudiced Williams' right to a fair trial and guaranteed a trial-by-ambush.

**Alternative nonmonetary sanctions**. Alternatively, Williams asks the Court to:

1. Require T2 to immediately produce its source code, as it should have done with its initial disclosures in May 2022;
2. Bar T2 from calling any witness not listed in T2's deficient Rule 26(a) disclosures, which T2 failed to supplement despite Williams' requests;
3. Bar T2 from introducing any evidence of damages, as it didn't identify any in its Rule 26(a) disclosures and has admitted that it incurred no damages as a result of the January 6, 2022 download alleged in its Complaint;

---

[48] *See* McCarl Decl. ¶ 26.

4. Bar T2 from calling any expert witness, as the sole expert it offered as capable of testifying about its alleged trade secrets — CEO Jim Roach — has no relevant expertise and has not even looked at T2's software code;[49]
5. Require T2 to immediately produce any other responsive documents it has withheld or concealed, including documents responsive to Williams' RFP No. 50 to T2 Modus (Set Two), which sought communications about T2's unilateral wage cuts;
6. Require T2 to immediately provide complete, nonevasive, objection-free responses to the following discovery requests, which can be found in the exhibits to the McCarl Declaration:

    - Williams' Interrogatory No. 16 to T2 Modus (Set One), seeking information about T2's trade secrets allegations.[50]

- Williams' Interrogatory Nos. 24, 25, 26, 28, and 29 to T2 Modus (Set Two), seeking information about T2's trade secrets allegations.[51]

- Williams' RFPs Nos. 12, 19, 22, 23, 33 to T2 Modus (Set One), seeking documents substantiating T2's trade secrets allegations.[52]

---

49 The other purported expert listed in T2's expert disclosures, other than T2's former attorneys, is a T2 employee named Rory Ellis. But Ellis was listed only for the purposes of testifying that Williams was the person who logged into Freeman Honda's licensed T2 software portal on January 6, 2022 and exported the relevant text file. That fact is stipulated, so no expert testimony is needed.

50 *See* McCarl Decl. Ex. C at 2.

51 *See id.* Ex. D at 2–5.

52 *See id.* Ex. E at 2–7.

- Williams' RFP No. 50 to T2 Modus (Set Two), seeking communications about T2's unilateral COVID-era wage cuts for T2 employees (except CEO Jim Roach, who continued giving himself his usual salary).[53]

- Williams' RFPs to T2 Modus Nos. 61 and 62 (Set Two), seeking the relevant source code and other documents substantiating T2's trade secrets allegations.[54]

Dated: July 26, 2023
Respectfully submitted,

John Mayfield Rushing
(Cal. SBN 331273)

Ryan McCarl
(Cal. SBN 302206)

and Davit Avagyan (Cal. SBN 336350)

**RUSHING MCCARL LLP**
2219 Main St. No. 144 | Santa Monica, CA 90405
T: (310) 896-5082 | E: info@rushingmccarl.com
*Attorneys for Defendant and*
*Counterclaimant Colynda Williams-Arowolo*

---

53 *See id.* Ex. F at 1–2.

54 *See id.* Ex. F at 3–4

## CERTIFICATE OF CONFERENCE

Pursuant to Federal Rule of Civil Procedure 37(a)(1) and Local Rule CV-7(h), Defendant Colynda Williams-Arowolo filed this Motion to Compel Discovery after attempting in good faith to meet and confer with T2 and its counsel. The Court stated at the July 17, 2023 telephonic discovery hearing that Williams may file this motion. The motion is opposed.

Dated: July 26, 2023

Respectfully submitted,

Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

## CERTIFICATE OF SERVICE

I certify that on July 26, 2023, I submitted this filing to the Clerk of the Court and served it on all counsel of record through the Court's ECF system.

Dated: July 26, 2023

Respectfully submitted,

Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com