Ryan McCarl (302206)
John Rushing (331273)
Davit Avagyan (336350)
**RUSHING MCCARL LLP**
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant*
*Colynda Williams-Arowolo*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

T2 MODUS, LLC,

*Plaintiff,*

v.

COLYNDA WILLIAMS-AROWOLO,

*Defendant.*

COLYNDA WILLIAMS-AROWOLO,

*Counter-Claimant,*

v.

T2 MODUS, LLC and JIM ROACH,

*Counter-Defendants.*

Case No. 4:22-cv-00263-ALM

Judge: Amos L. Mazzant

**Defendant Colynda Williams-Arowolo's Motions in Limine**

Complaint Filed: March 4, 2022
Pretrial Conference: Sept. 14, 2023,
Trial Date: Not set

## CONTENTS

I. Introduction and Background ........ 1
II. Legal standard ........ 1
A. Motions in limine ........ 1
B. Evidentiary standards ........ 3
C. Disclosure standard ........ 3
III. Motions in Limine ........ 4
A. Motion in Limine No. 1: T2's purported experts should be excluded because they are not qualified, do not know how the program works, and are offering irrelevant testimony. ........ 4
1. Roach is not qualified as an expert and his offered testimony is unhelpful and unfairly prejudicial. ........ 5
2. Rory Ellis' proposed testimony pertains to undisputed facts. ........ 7
B. Motion in Limine No. 2: T2 should not be allowed to testify about its source code since no witness has personal knowledge. ........ 7
C. Motion in Limine No. 3: T2 should be prevented from using unsubstantiated terms like Artificial Intelligence, Machine Learning, Propriety, or Trade Secret to refer to its software. ........ 8
1. No witness knows whether T2's software uses AI, machine learning, or is proprietary. ........ 8
D. Motion in Limine No. 4: T2's undisclosed and speculative damage amounts should be excluded. ........ 10
1. Evidence of T2's supposed damages should be excluded since T2 refused to disclose any damages in its Rule 26 disclosures or during discovery, and its failure was not substantially justified or harmless. ........ 10
E. Motion in Limine No. 5: T2 should not be allowed to make last-minute changes to its allegations about what is its trade secret. ........ 12
1. T2's only surviving pleaded trade secret is its software and T2 cannot change its mind about what trade secret was supposedly misappropriated on the eve of trial. ........ 13
F. Motion in Limine No. 6: Freeman's supposed breach T2's licensing agreement has no relevance to this case and should be excluded. ........ 14

IV. Conclusion ..........15

## Defendant Colynda Williams-Arowolo's Motions in Limine

### I. Introduction and Background

Colynda Williams-Arowolo ("Williams") was an employee of T2 Modus, LLC ("T2") from December 2019 until December 13, 2022.[1] After her resignation, a T2 client, Freeman Honda ("Freeman"), contacted Williams to ask for assistance downloading data from its client portal.[2] Freeman had login credentials to a T2 client portal that allowed it to log in and download a CSV file of its data through a feature made available by T2 in the client portal.[3] At Freeman's request, Williams helped Freeman do just that.[4]

T2 sued Williams, claiming that her assistance to Freeman constituted an attempt to defraud T2 and misappropriate its trade secrets. T2 claimed violations of the Computer Fraud and Abuse Act ("CFAA") and the Texas Harmful Access by Computer Act ("THACA"), Texas Uniform Trade Secrets Act (TUTSA), breach of contract, and breach of fiduciary duty.

### II. Legal standard

#### A. Motions in limine

Motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings,"[5] usually by

---

[1] ECF No. 47–1 (Cross-Complaint) ¶¶ 12 and 21.

[2] ECF No. 36-4, p. 3 (Declaration of Wyman King ¶ 7).

[3] *Id.*, p. 2 (¶¶ 4–6).

[4] *Id.*, p. 3 (¶¶ 7 and 10).

[5] *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436, 440 (7th Cir. 1997).

limiting testimony or evidence in a particular area.[6] Such motions help avoid lengthy arguments or interruptions at trial while saving the parties time, effort, and cost in trial preparation, or the need to neutralize the taint of prejudicial evidence.[7]

They also allow courts to consider evidence issues before trial with the benefit of briefing and oral arguments, reducing mistrials and other risks.[8] Along with protecting the trial's integrity by excluding improper evidence, the court may make rulings at the motion in limine stage to "preclude from trial arguments without factual or legal support."[9]

As rulings on motions in limine are interlocutory, the court may change its mind during trial.[10] In the meantime, the rulings provide "valuable guidance in preparing for trial by keeping irrelevant or improper evidence out of the courtroom."[11]

---

[6] *United States v. Heller*, 551 F.3d 1108, 1111-12 (9th Cir. 2009).

[7] *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *In re Cessna 208 Series Aircraft Prods. Liability Litig*, No. 1721, 2009 U.S. Dist. LEXIS 40248, at *15 (D. Kan. May 12, 2009).

[8] *See, e.g., Venable v. Patel*, 1:17-cv-01519-BAM (PC), 2022 U.S. Dist. LEXIS 18469, at *2 (E.D. Cal. Jan. 31, 2022).

[9] *Doe v. Fairfax Cnty. Sch. Bd.*, Civil Action 1:18-cv-00614-MSN-IDD, 2023 U.S. Dist. LEXIS 13886, at *10 (E.D. Va. Jan. 25, 2023).

[10] *United States v. Moi*, 3:19-cr-00112-TMB-SAO-2, 2022 U.S. Dist. LEXIS 30307, at *2 (D. Alaska Feb. 18, 2022).

[11] *Doe*, Civil Action 1:18-cv-00614-MSN-IDD, 2023 U.S. Dist. LEXIS 13866, at *3 (internal quotation marks omitted); *see also, e.g., United States v. Heller*, 551 F.3d 1108, 1111–12 (9th Cir. 2009) (noting that by ruling on admissibility at the outset of trial, the court "gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury") (internal quotation marks omitted).

### B. Evidentiary standards

Evidence may be admitted only if it is relevant and not unduly prejudicial.[12] The party seeking to introduce evidence bears the burden of proving its admissibility,[13] including by directing the court's attention to authenticating documents, testimony, or evidentiary principles under which the evidence could be considered admissible.[14] The court should exclude even relevant testimony if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[15]

A witness must have personal knowledge to testify about facts and cannot testify about hearsay statements.[16] A witness cannot provide testimony that is a legal conclusion.[17]

### C. Disclosure standard

Moreover, when a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."[18] Evasive and incomplete disclosures are

---

[12] *See* Fed. R. Evid. 402–403.

[13] *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).

[14] *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010).

[15] Fed. R. Evid. 403.

[16] Fed. R. Evid. 802 & 602.

[17] *See United States v. Izydore*, 167 F.3d 213, 218 (5th Cir. 1999); *see, e.g., Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 811 (N.D. Tex. 2013) ("[The expert witness] cannot offer the legal conclusion that '[t]here is certainly nothing confidential, nor secret, about such material[.]").

[18] Fed. R. Civ. P. 37(c)(1).

failures to disclose, which triggers an exclusion of the evidence.[19] Rule 26(a) requires a party to disclose "a computation of each category of damages claimed by the disclosing party,"[20] and Rule 26(e) requires the party to supplement in a timely manner when the prior response is incomplete.[21] "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."[22] As the Rule 37 Advisory Committee noted, the 1993 amendment requires stricter adherence to the disclosure rules by "provid[ing] a self-executing sanction for failure to make a disclosure required by Rule 26(a), without need for a motion."[23]

## III. Motions in Limine

### A. Motion in Limine No. 1: T2's purported experts should be excluded because they are not qualified, do not know how the program works, and are offering irrelevant testimony.

Jim Roach ("Roach") is not qualified as a witness and has no personal knowledge, and Rory Ellis ("Ellis")'s only opinion is as to undisputed facts. Expert testimony is admissible only if it is both relevant and reliable.[24] The court can only admit said testimony if the proponent proves that (a) the expert's scientific,

---

[19] *Id*.

[20] Fed. R. Civ. P. 27(a)(1)(A)(iii).

[21] Fed. R. Civ. P. 27(e)(1)(A).

[22] *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); Fed. R. Civ. P. 37; *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996).

[23] Fed. R. Civ. P. 37 advisory committee's note (1993).

[24] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[25] The court should exclude an expert witness' testimony if "the witness is not qualified to testify in a particular field or on a given subject."[26]

**1. Roach is not qualified as an expert and his offered testimony is unhelpful and unfairly prejudicial.**

Roach has no personal knowledge about T2's code or how it works. He does not understand (and has never seen) T2's source code.[27] He had no role in creating the source code, which was created by an individual named "Dr. Oliver,"[28] who was never disclosed during discovery. Roach was clear that "we don't know what Oliver wrote. I don't know what Oliver wrote. And nobody on my team knows what Oliver wrote."[29] Even if Roach were qualified as an expert, his testimony lacks foundation because Roach doesn't know what the source code contains or how it

---

[25] Fed. R. Evid. 702.

[26] *Carlson v. Bioremedi Therapeutic Sys.*, Inc., 822 F.3d 194, 199 (5th Cir. 2016) (internal quotation marks omitted).

[27] McCarl Decl. Ex. M, 26:19–22; 29:13–15; *see, e.g., Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (affirming the trial court's decision to exclude a potential accounting expert witness when the expert did not conduct an independent review of the sales figures at issue).

[28] McCarl Decl. Ex. M, 25:7–24, 22–25; 26:1–4 (Roach was not personally involved in writing the code; someone named Dr. Oliver originally wrote the code, but Roach isn't sure of his last name, when he started, or when he left T2).

[29] *Id.* at 86:10–13.

works. An expert's testimony must be based on sufficient facts and derive from reliable principles, not guesswork about a code Roach has never seen.[30]

Roach also lacks any education or training in computer science and does not have current knowledge of any coding language. Roach has a BM in Musical Theory from Northwestern and hasn't "coded ever on tech companies."[31] In fact, Roach admits he forgot anything he knew about coding,[32] knows nothing about the coding language at issue (Python),[33] and lacks any education to qualify him as an expert.[34] Roach has no qualifications in computer science, coding, or artificial intelligence technologies.[35] With only theoretical knowledge, Roach is no more an expert than the jurors.

Roach was also disclosed as an expert on T2's efforts to maintain the confidentiality of its products as a trade secret. What efforts T2 took to maintain confidentiality do not require expert testimony and Roach should not have the prejudicial stamp of "expertise" when testifying about it.[36]

---

[30] Fed. R. Evid. 702.

[31] McCarl Decl. Ex. M, 25:1–2; 75:6–9.

[32] *Id.* at 25:1–2; 26:23–27:5.

[33] *Id.* at 20:7–8; 24:20–23.

[34] *Id.* at 75:10–20; *see e.g., Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (affirming the trial court's decision to exclude a potential accounting expert who lacked any formal or professional training in accounting).

[35] Fed. R. Evid. 702; *see also Rider v. Sandoz Pharmaceutical Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) (holding that a jury cannot be asked to take a leap of faith and believe an expert with no factual or scientific support).

[36] *See, e.g., In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 260 (5th Cir. 2022) (noting how the emphasis on "expert" testimony can prejudice a jury).

**2. Rory Ellis' proposed testimony pertains to undisputed facts.**

T2 listed Ellis as an "expert" to testify about the actions T2 took to identify who accessed the data.[37] These facts are not disputed; Williams does not dispute that she was the one who accessed Freeman's account. Any testimony would be cumulative under Fed. R. Evid. 403 and unhelpful to the jury.[38]

**B. Motion in Limine No. 2: T2 should not be allowed to testify about its source code since no witness has personal knowledge.**

T2 has refused to disclose its source code and should not be allowed to introduce evidence about it and what it supposedly contains. Jim Roach ("Roach"), T2's 30(b)(6) witness, could not testify to T2's source code because he had never seen it.[39] He and the rest of T2's current employees did not write the source code and do not "touch the code" now.[40] There is no witness available who has personal knowledge about T2's code.

Williams cannot know whether T2 even owns its source code because T2 did not disclose it, despite a Court order,[41] or check whether the source code used software

---

37 *See* McCarl Decl. Ex. Q.

38 *See, e.g., French v. Allstate Indem. Co.*, 637 F.3d 571, 578 (5th Cir. 2011) (affirming the trial court's decision to exclude potential expert because the issues they would testify on pertained to undisputed facts and were therefore "unhelpful and needlessly cumulative" under rule 403).

39 McCarl Decl. Ex. M, 29:13–15, 184:11–13.

40 *Id.* at 86:8–18, 25:20–24.

41 *See* Feb. 8, 2023 Minute Entry ("Plaintiff should file a protective order if needed and disclose trade secrets to Defendant."). A protective order was entered on Feb. 23, *see* ECF No. 52.

from third parties.[42] T2 did not name a knowledgeable 30(b)(6) witness or competent expert who can discuss the code at trial. This prevents Williams from investigating and rebutting T2's arguments about the source code, including that T2's technology is not proprietary nor a trade secret, or how T2's technology works. Admitting any reference to the source code would unduly prejudice Williams and mislead the jury, while rewarding T2's obstructionism during discovery.

### C. Motion in Limine No. 3: T2 should be prevented from using unsubstantiated terms like Artificial Intelligence, Machine Learning, Propriety, or Trade Secret to refer to its software.

A witness can testify about a matter only if there is sufficient evidence that the witness has personal knowledge.[43] A witness cannot be invited to speculate about a subject, and the fruits of speculation should be kept from the jury.

#### 1. No witness knows whether T2's software uses AI, machine learning, or is proprietary.

T2 has no evidence that its technology uses AI or machine learning since it refused to produce the code and its 30(b)(6) witness has never seen the code and does not know how it works.[44] When asked to produce all AI that Williams downloaded, T2 only provided a report of customer data (including customer names, addresses, and car details) similar to what they imagined Williams downloaded.[45] T2 claimed that the information they provide clients is "over-laid and

---

[42] *Id.* at 27:9–14.

[43] Fed. R. Evid. 602.

[44] McCarl Decl. Ex. M, 86:8–18; 25:20–24.

[45] *See* McCarl Decl. Ex. C, No. 25; ECF No. 36-4, pp. 6-24 (King Exh. A–B).

enhanced with T2's artificial intelligence and predictive analytics."[46] But when asked to produce documents supporting that claim, T2 responded, "[N]o such documents exist."[47] T2 provided a list conclusorily stating that T2 uses "Predictive Machine Learning," but offered no evidence of that claim, including the source code[48] or a witness with personal knowledge to testify about how the software works.[49]

The use of the term "AI" is particularly problematic given the recent advances in the AI field, including the widespread use of new generative AI software such as ChatGPT. There is no evidence that T2's software contains any innovations, much less any technology that justifies classifying it as "AI." Mentioning these terms at trial would confuse and prejudice the jury about the nature of T2's technology.

Moreover, T2 has no evidence or a competent witness to testify that whatever technology they have is "proprietary." T2's 30(b)(6) witness did not even know whether T2 owns all parts of the software they claim was proprietary, since he had no idea whether its code uses or is derived from third-party software;[50] if so, T2 would not own whatever trade secrets that code contains.

Since calling information "proprietary" asserts a legal conclusion about ownership, and T2's witnesses lack any foundation to testify about what their code contains or who owns it, T2 should be barred from using that term at trial. Allowing T2 to continue its litigation-spanning pattern of conclusorily asserting that the code it refuses to reveal is "proprietary" and contains "trade secrets" would lead a jury of

---

[46] ECF No. 1-1 (Compl.) ¶ 12.

[47] McCarl Decl. Ex. C, No. 23.

[48] *Id.* at Ex. F, No. 62.

[49] *Id.* at Ex. M, 25:7–14, 29:13–15.

[50] *Id.* at 27:9–14.

laypersons to draw inaccurate and unsupported inferences about T2's software, preventing Williams from getting a fair trial.

### D. Motion in Limine No. 4: T2's undisclosed and speculative damage amounts should be excluded.

As discussed in Section II.C, undisclosed evidence is automatically excluded under Rule 37 unless the offering party can overcome the presumption by showing its failure to disclose was substantially justified or harmless.[51]

#### 1. Evidence of T2's supposed damages should be excluded since T2 refused to disclose any damages in its Rule 26 disclosures or during discovery, and its failure was not substantially justified or harmless.

Despite Williams' counsel's many efforts to convince T2's attorneys to provide substantive discovery responses, update its initial disclosures, and produce relevant documents supporting its claims, T2 refused to meet its discovery obligations.[52] Among its more notable failings is that T2 provided no computation or evidence of damages in its Rule 26 disclosures or at any time (presumably because T2 experienced no damages).[53] All T2's claims require it to prove damages, and some require proof of specific amounts. For example, T2 alleges that Williams violated the

---

[51] Fed. R. Civ. P. 37; *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996).

[52] *See generally* ECF No. 61 and 6-1 (Williams' motion to compel and for sanctions with supporting declaration); McCarl Decl. Exs. H, I, J, K, T (letters to T2's attorneys).

[53] *See* Fed. R. Civ. P. 26(a)(1)(A)(iii); McCarl Decl. Exs. P (T2's initial disclosures), J (Sept. 24, 2022 letter re: T2's deficient initial disclosures).

Computer Fraud and Abuse Act (CFAA), which requires T2 to prove a loss exceeding $5,000. T2 has yet to provide any documents or competent testimony showing that it experienced even a dime of damages.

As with its conclusory trade secrets claim, T2 has hid the ball on damages throughout the lawsuit. In its Rule 26 disclosures, T2 claimed that it had "not yet computed its damages."[54] Later, when asked by Williams through discovery to provide its damages, T2 again refused to provide such a computation.[55] T2 only provided a "laundry list of categories" that were not a computation of damages that meet the standard required by the Federal Rules.[56] And T2's later admission that it cost nothing to investigate Williams' access[57] means that all T2 ever disclosed were unspecified legal fees and lost revenue without any actual computations of either.

Neither of the broad damage categories (lost revenue or attorney fees) qualifies as damage or loss under the CFAA.[58] Williams has still not been notified of the relevant damages weeks before trial. The discovery deadline has already been extended several times over Williams' objection to accommodate T2's indolence,[59]

---

[54] McCarl Decl. Ex. P, No. 6.

[55] McCarl Decl. Ex. D, No. 22.

[56] *United States v. Dawn Props.*, No. 1:14CV224-LG-JCG, 2016 U.S. Dist. LEXIS 172141, at *7 (S.D. Miss. Dec. 13, 2016).

[57] McCarl Decl. Ex. M, 218:20–219:21, 220:7–221:16; 80:24–81:8.

[58] *See Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766, 776 (S.D. Tex. 2010) ("[T]he term 'loss' encompasses only two types of harm: costs to investigate and respond to a computer intrusion, and costs associated with a service interruption.").

[59] *See generally*, *e.g.*, ECF No. 54 and 54–1 (Williams' opposition to T2's second motion to extend deadlines and supporting declaration).

but T2 did not use those extensions to support its claims. Now, on the eve of trial, it is too late for Williams to learn of any grounds T2 might have to support its claims.

T2's failure to adhere to the rules is neither justified nor harmless,[60] so the presumptive exclusion rules of Rules 26 and 37 should apply.[61]

### E. Motion in Limine No. 5: T2 should not be allowed to make last-minute changes to its allegations about what is its trade secret.

The disclosure and discovery requirements exist, in part, to ensure that the parties enter a trial with full knowledge of what a plaintiff claims and what defenses may be offered.[62] This is intended to allow the parties to adequately prepare for trial and increase judicial efficiency.[63] As the Fifth Circuit explained, "each party is entitled to know what is being tried, or at least to the means to find out."[64] Those means are the required disclosures and the period of discovery.[65]

---

[60] *See, e.g., CQ Inc. v. TXU Mining Co. LP*, 565 F.3d 268, 280 (5th Cir. 2009); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008).

[61] *See, e.g., Honey-Love v. United States,* 664 F. App'x 358, 362 (5th Cir. 2016) (holding that presumptive sanction for failing to disclose a witness or evidence is to exclude or limit it).

[62] *See Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (noting "the aims of the Federal Civil Rules [include] to eliminate trial by ambush").

[63] *See id.* ("Judicial economy would best be served if defendants seek the facts they desire through discovery.")

[64] *Jimenez v. The Tuna Vessel "Granada"*, 652 F.2d 415, 420 (5th Cir. 1981) ("Notice remains a first-reader element of procedural due process, and trial by ambush is no more favored here than elsewhere.").

[65] *See*, *e.g.*, *Klepper Krop*, 411 F. Supp. at 281.

### 1. T2's only surviving pleaded trade secret is its software and T2 cannot change its mind about what trade secret was supposedly misappropriated on the eve of trial.

It is the burden of the plaintiff to establish the existence and define the extent of a trade secret.[66] If T2 has pleaded the existence of any trade secret, it has done so only concerning its software.[67] In discovery responses served on Williams near the close of discovery, T2 suddenly suggested the existence of other trade secrets, such as customer identities or pricing models.[68] T2 has never produced any customer list and conceded that its customers' identities are not a trade secret, and its pleaded "customer list" refers to Freeman's customer "data . . . as manipulated by T2 software and analytics."[69] That is the sole file downloaded by Williams on January 6, 2022. T2 should not be allowed to reinvent its trade secrets allegation on the eve of trial.[70]

---

[66] *See, e.g., Source Prod. & Equip. Co. v. Schehr*, No. 16-17528, 2019 U.S. Dist. LEXIS 168365, at *20 (E.D. La. Sep. 30, 2019) ("It is the plaintiff's burden to prove that a trade secret exists.") (citing *Idx Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002)). *Accord Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998).

[67] ECF No. 1-1 (Compl.) ¶ 35.

[68] *See* McCarl Decl. Ex. E, 75 (Request for production related to "the document entitled 'T2 Intellectual Property' that was sent by T2's counsel to Williams' counsel on March 2, 2023.").

[69] ECF No. 9, 12 (stating that the "trade secrets are not auto dealerships themselves."); *see also* McCarl Ex. M, 316:9-18.

[70] *See Next Commc'ns, Inc. v. Viber Media, Inc.*, 758 F. App'x 46, 49 (2d Cir. 2018) (criticizing a plaintiff's varying descriptions of its trade secret at different stages of litigation).

T2 filed the Complaint almost 18 months ago. Williams has moved to dismiss, counterclaimed, conducted discovery, and moved for summary judgment.[71] T2 never sought to amend the Complaint. It would be improper and unduly prejudicial against Williams to allow T2 to do so now when discovery has long closed, and the parties are about to go to trial. Williams cannot effectively prepare a defense against unpleaded and ever-shifting claims.

### F. Motion in Limine No. 6: Freeman's supposed breach T2's licensing agreement has no relevance to this case and should be excluded.

T2 has claimed that Freeman breached its licensing agreement by asking Williams to access its portal, but its evidence is bare legal conclusions and irrelevant. As discussed in the legal standards section, proposed evidence must be relevant and be based on proper testimony.

T2 has repeatedly asserted that Freeman's licensing agreement was limited to access from the physical premises of Freeman, despite the agreement having no such clause. But Williams was not a signatory to the Freeman licensing agreement,[72] was unaware of its provisions, and is not alleged to be a third-party beneficiary of the T2-Freeman agreement. This lawsuit is filed against Williams individually. Whether Freeman breached its licensing agreement by providing Williams authorization to

---

[71] *See* ECF Nos. 6, 23, 36.

[72] *Marinor Assocs. v. M/V Panama Express*, No. H-08-1868, 2011 U.S. Dist. LEXIS 16964, at *10 (S.D. Tex. Feb. 18, 2011) (stating that "to become subject to the obligations of a contract, a third party must either accept to be bound to the contract or be bound through agency principles.").

access the T2 portal is not relevant[73] and has a high risk of unfair prejudice. This sort of evidence has a high likelihood of confusing the issue about who is responsible for a supposed breach of the T2- Freeman agreement and unfairly prejudicing Williams by affiliating her with Freeman's breach. That is, if T2 even had evidence that Freeman had breached its agreement.

## IV. Conclusion

If there is to be a trial — because the Court does not grant Williams' pending motions for summary judgment and terminating sanctions (ECF No. 61)[74] — it ought to be short. T2 has yet to provide any evidence supporting any of its claims, so it should not be allowed to bamboozle a jury with unsubstantiated talk about "artificial intelligence" and "proprietary trade secrets" supposedly contained in source code that it never revealed and that its 30(b)(6) witness and purported expert never reviewed.

---

[73] *See e.g.*, *In re Delta Towing LLC*, No. 07-3910, 2008 U.S. Dist. LEXIS 98394, at *8 (E.D. La. Nov. 5, 2008); *Momax v. Rockland Corp.*, Civil Action No. 3:02-CV-2613-L, 2005 U.S. Dist. LEXIS 18010, at *6–7 (N.D. Tex. Aug. 23, 2005).

[74] ECF Nos. 36 (William's motion for summary judgment), 61 (sanctions)

Dated: August 24, 2023

Respectfully submitted,


Ryan McCarl
(Cal. SBN 302206)

**RUSHING MCCARL LLP**
2219 Main St. No. 144 | Santa Monica, CA 90405
T: (310) 896-5082 | E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant*
*Colynda Williams-Arowolo*

## Certificate of Conference

Under to Federal Rule of Civil Procedure 37(a)(1) and Local Rule CV-7(h), Defendant Colynda Williams-Arowolo filed this Motion to Compel Discovery after attempting in good faith to meet and confer with T2 and its counsel. The motion is opposed. T2 has failed and refused to voluntarily supplement its discovery responses or produce any documents despite repeated outreach from Williams' counsel.

Dated: August 24, 2023

Respectfully submitted,

Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

## CERTIFICATE OF SERVICE

I certify that on December 30, 2022, I submitted this filing to the Clerk of the Court and served it on all counsel of record through the Court's ECF system.

Dated: August 24, 2023

Respectfully submitted,



Ryan McCarl
SBN # 302206

Rushing McCarl LLP
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com