Ryan McCarl (302206)
John Rushing (331273)
Davit Avagyan (336350)
**RUSHING MCCARL LLP**
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant*
*Colynda Williams-Arowolo*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

T2 MODUS, LLC,

*Plaintiff,*

v.

COLYNDA WILLIAMS-AROWOLO,

*Defendant.*

COLYNDA WILLIAMS-AROWOLO,

*CounterClaimant,*

v.

T2 MODUS, LLC and JIM ROACH,

*CounterDefendants.*

Case No. 4:22-cv-00263-ALM

Judge: Amos L. Mazzant

**Defendant Colynda Williams-Arowolo's Reply in Support of the Motions in Limine**

Complaint Filed: March 4, 2022
Pretrial Conference: Sept. 14, 2023
Trial Date: Not set

## Contents

I. Introduction ....................3

II. Motions in Limine ....................4

A. Motion in Limine No. 1: Jim Roach is a user, not an expert and T2 concedes that Ellis has no relevant information. .................... 4

B. Motion in Limine No. 2: T2 should not be allowed to testify about its source code since no witness has personal knowledge. .................... 5

C. Motion in Limine No. 3: Williams has made a clear request to prevent the use of the following terms: Artificial Intelligence, Machine Learning, proprietary, or Trade Secret. .................... 6

D. Motion in Limine No. 4: T2 fails to provide any justification for failing to disclose damages as required by Rule 37. .................... 7

E. Motion in Limine No. 5: T2's complaint only pleads as a trade secret its software and the abandoned customer list theory, and T2 cannot change its theory of the case on the eve of trial. .................... 8

F. Motion in Limine No. 6: Freeman Honda's alleged breach should be excluded because Williams is not a party to that agreement and if Freeman Honda's breach were relevant, Freeman Honda should have been joined as a necessary party. .................... 8

III. Conclusion ....................9

**DEFENDANT COLYNDA WILLIAMS-AROWOLO'S REPLY IN SUPPORT OF THE MOTIONS IN LIMINE**

## I. Introduction

As the Seventh Circuit once noted in affirming a denial to add claims long into the litigation, "[t]here must be a point at which a plaintiff makes a commitment to the theory of its case."[1] That point passed here as the parties have a final pretrial conference in one week. But in its opposition to Williams' motions in limine, T2, still presents three different theories for what its one pleaded trade secret is. T2 has only pleaded one alleged trade secret it did not affirmatively abandon: its software.

T2's opposition is an attempt to confuse the issue with long-winded explanations of what its software does, though it has been conclusively established through Jim Roach's ("Roach") deposition that neither he nor anyone on his current team knows how the software works. T2 has attempted to confuse the issue throughout the litigation through buzzwords, technical-sounding words or explanations, and other nonsense that laypeople, such as a jury, might be confused by.

Williams' MILs should be granted to ensure a trial of facts, not "theoretical-level" speculations like the ones offered by Roach in his deposition.[2]

---

1 *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993).

2 *See* McCarl Decl. Ex. M, 30:8–9.

## II. Motions in Limine

### A. Motion in Limine No. 1: Jim Roach is a user, not an expert and T2 concedes that Ellis has no relevant information.

The district judge has a gatekeeping role to exclude expert testimony that is neither reliable nor relevant.[3] The relevance prong ensures an expert's testimony is admissible only if the expert can show that their reasoning or methodology "can be properly applied to the facts in issue."[4] The burden was on T2 to show that Roach has the education, experience, and knowledge to testify as an expert.[5] But T2 has not provided any basis that qualifies Roach as an expert witness for his testimony to be admissible.[6] T2 argues that Roach should be allowed to testify as an expert because he's seen the data input into the T2 software and the output. But that is not reasoning or methodology, rather, it is the experience of any software user.

Allowing Roach to testify about how T2's software uses artificial intelligence and machine learning would be akin to allowing a typist to testify how Microsoft Word uses artificial intelligence in its spell check feature because the typist has put typos into the document, seen it marked red, and clicked on corrections.

T2 points to portions of Roach's deposition, but all his deposition shows is that he has a "theoretical-level" understanding of what the software does[7] — not any expertise. T2 has failed to meet that burden because Roach has no expertise.

---

3 *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999).

4 *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).

5 *United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

6 *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); Fed. R. Evid. 702.

7 See McCarl Decl. Ex. M, 30:8–9.

Regarding Rory Ellis ("Ellis"), T2 does not argue that Ellis' testimony is not cumulative to undisputed facts. Ellis' testimony about the time and effort (a few minutes to look up simple information while the team was having a meeting[8]) does not require Ellis to be admitted as an "expert" to testify.

### B. Motion in Limine No. 2: T2 should not be allowed to testify about its source code since no witness has personal knowledge.

T2 claims it was not required to disclose the source code because it is not the trade secret.[9] That is, despite taking the exact different position in its introduction and claiming that the "application of machine learning to enhance . . . [the customers' data] . . . is a trade secret," which is a description of its software and what it allegedly does.[10] Unless T2 "enhances" (whatever that means) customer data through witchcraft, that enhancement must occur through its software, making the software the trade secret. The software, in turn, operates only because there is a source code, hence the trade secret is the software (also known as the source code).[11]

T2's opposition that it is irrelevant if its software used open-source menu functions is *reductio ad absurdum*. Williams' argument in its motion in limine was based on the fact that nothing about T2's software may be proprietary, or its main

---

8 See McCarl Decl. Ex. M, 219:4–21; 220:7–22.

9 ECF 68 at 4.

10 ECF 68 at 2.

11 *See Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1339, 1341 (5th Cir. 1994) (what comprises a computer program at issue is known as "the source code" and that source code is necessary to determine a program's uniqueness, "as one moves away from the literal code to more general levels of a program, it becomes more difficult to distinguish between unprotectable ideas, processes, methods or functions, on one hand, and copyrightable expression on the other.").

function may not be proprietary because it is actually a third-party software or embedded with it. T2, we hope but cannot be sure at this point, is not arguing that its menu function provides it independent economic value.

Even more importantly, T2 has claimed its software does what no one other software can do. That is speculation because T2 is making that bold claim without knowledge of whether its software is a third-party or open-source software masquerading as T2's.[12]

According to the Court Order[13] and Rule 26,[14] T2 was required to turn over the software (or source code) so that Williams could prepare a defense for the claim that it contains any proprietary software or is a trade secret at all. T2 refused to do so. It cannot be allowed to reap the benefits by having witnesses who have no knowledge testify or counsel refer to how the software works.[15]

### C. Motion in Limine No. 3: Williams has made a clear request to prevent the use of the following terms: Artificial Intelligence, Machine Learning, proprietary, or Trade Secret.

Williams' motion is clear and requests that T2 be prevented from using the terms artificial intelligence, machine learning, proprietary, or trade secret. Of course, the use of synonyms to evade the Court's order would also be unacceptable.

---

12 *See Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003) (evidence of a software's content requires more than oral testimony and reconstruction by an expert witness to create a genuine issue of material fact as to whether two software programs were "substantially similar" in a copyright case).

13 *See* Feb. 8, 2023 Minute Entry and ECF No. 5; *see also* ECF 7 at 4.

14 Fed. R. Civ. P. 26.

15 McCarl Decl. Ex. M, 86:8–13.

Roach has testified that neither he nor anyone on his team knows how the T2 software does what it does.[16] All they know is that they input certain data and get a certain output, and Roach thinks that it works.[17] No witness has any knowledge that T2's software uses machine learning or artificial intelligence and the jury should not be allowed to hear such unsubstantiated speculation.[18]

### D. Motion in Limine No. 4: T2 fails to provide any justification for failing to disclose damages as required by Rule 37.

Undisclosed evidence is automatically excluded under Rule 37 unless the offering party can overcome the presumption by showing its failure to disclose was substantially justified or harmless.[19] T2 did neither in its opposition. Instead, T2 argues that it did disclose damages and calculations when Roach mentioned partially incorrect damages[20] for the first time in his deposition that had to be taken *after the close of discovery*.

Disclosing damage amounts after the close of discovery and during the key witness' deposition is not substantially justified.[21] Neither is it harmless. Williams was unable to properly depose Roach, send subpoenas to third parties, depose third parties, or conduct any other discovery relevant to T2 supposed damages.

---

[16] *Id*.

[17] *Id*.

[18] *See Earnest v. Sanofi U.S. Servs. (In re Taxotere (Docetaxel) Prods. Liab. Litig.)*, 26 F.4th 256, 268 (5th Cir. 2022).

[19] Fed. R. Civ. P. 37; *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *see also Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir. 1996).

[20] ECF 68 at 5.

[21] *See e.g., Zhang v. Am. Gem Seafoods. Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003).

No computation was provided of the customers that left, how many signed with Williams, whether others were included, nor how the monthly revenue loss number was reached. Williams was provided no opportunity to investigate those supposed damages since T2 failed to disclose them until after discovery had closed.

### E. Motion in Limine No. 5: T2's complaint only pleads as a trade secret its software and the abandoned customer list theory, and T2 cannot change its theory of the case on the eve of trial.

T2 unambiguously stated that the "trade secrets are not auto dealerships themselves."[22] T2's customers are auto dealerships, hence T2 abandoned any claim that its own customers' list is a trade secret.

Based on what T2 has pleaded, it can only claim its software is the trade secret and did not later disclaim through words filed with this Court and by not putting its "customer list" among the intellectual property owned by T2.[23] T2 cannot invent new claims on the eve of trial it did not plead in its complaint.

### F. Motion in Limine No. 6: Freeman Honda's alleged breach should be excluded because Williams is not a party to that agreement and if Freeman Honda's breach were relevant, Freeman Honda should have been joined as a necessary party.

Williams had no duty to maintain secrecy (or do anything else) under the T2-Freeman licensing agreement since she was not a signatory. T2 has offered no evidence that Freeman Honda breached its licensing agreement or that Williams, a

---

[22] ECF No. 9, 12 (stating that the "trade secrets are not auto dealerships themselves."); *see also* McCarl Decl. Ex. M, 316:9-18.

[23] *See* McCarl Decl. Ex. E.

nonparty, knew the agreement's terms. T2 chose not to make Freeman a party. If T2 is now claiming that Freeman Honda breached its agreement with T2 by requesting Williams' help in accessing and downloading its data, Freeman Honda is a necessary party under Rule 19,[24] and the failure to join Freeman Honda is grounds for dismissal of the entire lawsuit.

## III. Conclusion

T2 should not be allowed to parade people with little knowledge of the software as experts or prejudice the jury by unsubstantiated talks about "artificial intelligence" and "proprietary trade secrets" supposedly contained in source code that it never revealed and that its 30(b)(6) witness has never seen.

---

[24] Fed. R. Civ. P. 19; *see e.g. Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1143 (5th Cir. 1982).

Dated: September 7, 2023

Respectfully submitted,




Ryan McCarl
(Cal. SBN 302206)

**RUSHING MCCARL LLP**
2219 Main St. No. 144 | Santa Monica, CA 90405
T: (310) 896-5082 | E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant*
*Colynda Williams-Arowolo*