**United States District Court**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| T2 MODUS, LLC, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:22-cv-00263 |
| v. § | Judge Mazzant |
| § | |
| COLYNDA WILLIAMS-AROWOLO, § | |
| § | |
| *Defendant.* § | |
| § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant and Counterclaimant Colynda Williams-Arowolo's Notice of Motion and Motion to Compel Further Discovery Responses from Plaintiff T2 Modus, LLC and Request for Sanctions Against T2 Modus, LLC (Dkt. #61). Having considered the motion and the relevant pleadings, the Court finds that Williams's Motion to Compel Further Discovery Responses from Plaintiff T2 Modus, LLC and Request for Sanctions Against T2 Modus, LLC (Dkt. #61) should be **GRANTED in part** and **DENIED in part**.

**BACKGROUND**

This discovery dispute arises in the context of litigation over claimed trade secrets. On March 4, 2022, T2 Modus, LLC ("T2 Modus") sued Colynda Williams-Arowolo ("Williams") in the 481st Judicial District Court of Denton County, Texas, alleging that Williams had violated the Computer Fraud Abuse Act, the Texas Harmful Access to Computer Act, and the Texas Uniform Trade Secrets Act (Dkt. #2 at pp. 8–10). Additionally, T2 Modus alleges that Williams breached a non-disclosure agreement between herself and T2 Modus and breached the fiduciary

1

duty that she owed to T2 Modus (Dkt. #2 at pp. 11–12). On April 3, 2022, Williams removed the case to this Court under federal question jurisdiction and diversity jurisdiction (Dkt. #1).

On September 30, 2022, Williams filed counterclaims against T2 Modus, alleging breach of contract and unjust enrichment (Dkt. #23). Additionally, Williams alleged that T2 Modus had violated California Labor Code §§ 202 and 203, Texas Labor Code §§ 61.014 and 61.018, California Penal Code § 632, and California Business & Professional Code § 17200. On October 20, 2022, Williams amended her counterclaims and added Jim Roach as a counter-defendant (Dkt. #25). Williams alleges the same claims against T2 Modus in her amended counterclaims as in her original counterclaims; however, Williams now also brings each counterclaim against Roach as well (Dkt. #25). In addition, Williams added claims against T2 Modus and Roach for violations of California Labor Code § 558.1 (Dkt. #25). Williams contends that Roach and T2 Modus are liable for their own torts and each other's torts because they are alter egos of each other (Dkt. #25).

On September 19, 2022, Williams sent discovery requests to T2 Modus, including Williams's First Set of Interrogatories and First Set of Requests for Production (Dkt. #61 at p. 6). On October 19, 2022, T2 Modus sent its responses to Williams's First Set of Requests for Admission, the First Set of Requests for Production, and the First Set of Interrogatories (Dkt. #61 at. p. 6). In February 15, 2023, T2 Modus produced supplemental discovery responses (Dkt. #61 at pp. 6–7; Dkt #61 at pp. 64, 71, ). On March 15, 2023, T2 Modus served verified, amended, supplemental responses to the first set of interrogatories (Dkt. #61 at p. 7). On February 23, 2023, the Court issued a confidentiality and protective order governing trade secrets (Dkt. #52). On April 18, 2023, Williams served additional discovery requests and T2 Modus responded one month later

(Dkt. #61 at p. 7). On June 1, 2023, T2 Modus and Roach jointly served supplementary responses to the second set of requests for production (Dkt. #61 at p. 7).

The Court has held three hearings regarding discovery disputes in this case. The Court held the first hearing on February 8, 2023 (*See* Minute Entry entered on 2/28/2023). At the first hearing, the Court ordered T2 Modus to "supplement and update all discovery responses by 5 p.m. on [February 15, 2023]" and to "file a protective order if needed and disclose trade secrets to Defendant" (*See* Minute Entry entered on 2/28/2023). The Court held the second hearing on March 2, 2023 (*See* Minute Entry entered on 3/02/2023). The Court held the third hearing on July 17, 2023 (*See* Minute Entry entered on 7/17/2023). At the third hearing, the Court authorized Williams to file a motion to compel and allowed full briefing on the discovery matter (*See* Minute Entry entered on 7/17/2023).

On May July 26, 2023, Williams filed a motion to compel further discovery and for sanctions against T2 Modus (Dkt. #61). Williams requests the Court order T2 Modus to (1) produce the source code for software belonging to T2 Modus, (2) produce all information about its "unilateral COVID wage cuts," and (3) provide complete, non-evasive, and objection free responses to various interrogatories and requests for production in Williams's First Set of Interrogatories and First Set of Requests for Production (Dkt. #61). In addition, Williams requests that the Court levy sanctions against T2 Modus, consisting of monetary sanctions and "terminating sanctions," or nonmonetary sanctions in the alternative (Dkt. #61).[1] On August 11,

---

[1] Williams does not specify the specific "terminating sanctions" sought. However, the desired sanctions appear to consist of the following, which Williams lists in her motion, but does not expressly refer to as "terminating sanctions":
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

3

2023, T2 Modus filed a response to Williams's motion (Dkt. #62). On August 16, 2023, Williams filed her reply (Dkt. #63). On August 18, 2023, T2 Modus filed its sur-reply (Dkt. #65).

## LEGAL STANDARD

### I. Motion to Compel

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* In the case of electronically stored information, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." FED. R. CIV. P. 26(b)(2)(B). "On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." *Id.* A court "must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C)(iii).

The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "all documents, electronically stored information, witness statements, and tangible

---

      (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
      (iii) striking pleadings in whole or in part;
      (iv) staying further proceedings until the order is obeyed;
      (v) dismissing the action or proceeding in whole or in part . . .

Dkt. #61 at p. 10; FED. R. CIV. PROC. 37(b)(2)(A).

things in the possession, custody, or control of the disclosing party that are relevant to the claim or defense of any party" (Dkt. #7 at p. 4). Moreover, the Local Rules of the Eastern District of Texas ("Local Rules") provide further guidance, indicating that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . [and] (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

The Federal Rules of Civil Procedure follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on courts and parties to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1) advisory committee's note to 2015 amendment.

## II. Rule 37 Sanctions

Rule 37 authorizes sanctions for a failure to respond to discovery. FED. R. CIV. P. 37. Rule 37(b)(2) specifically addresses sanctions where a party "fails to obey an order to provide or permit discovery." FED. R. CIV. P. 37(b)(2). The court may issue just orders against the disobedient party, ranging from "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims" to "rendering a default judgment against the disobedient party." *Id.* However, a court may alternatively "order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

In addition to the codified rules, a district court also possesses the inherent power to sanction litigants for abusive practices when there is no applicable federal rule. *See Pruco Life Ins. Co. v. Villarreal*, No. H-17-2795, 2022 WL 14915624, at *4 (S.D. Tex. Oct. 25, 2022). While this is not a preferred method to sanction parties, courts may manage their own affairs to ensure "orderly and expeditious dispositions of cases." *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 83 F.3d 464, 467 (5th Cir. 1996) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962)). For a court to exercise this inherent power, there must be some component of bad faith on behalf of the party to be sanctioned. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). However, because a court's inherent powers are so potent, this power "must be exercised with restraint and discretion." *Id.* at 44.

## ANALYSIS

I.  **Interrogatories Relating to T2 Modus's Claimed Trade Secrets**

Williams requests that the Court order T2 Modus to supplement its responses to various interrogatories relating to T2 Modus's claimed trade secrets (Dkt. #61 at p. 19). The underlying basis of Williams's argument is that "where a plaintiff alleges the misappropriation of a trade secret, it must identify the trade secret adequately and produce relevant documents" (Dkt. #61 at p. 12 (citing *Developmental Techs., LLC v. Valmont Indus.*, No. 8:14-cv-2796-T-35JSS, 2016 U.S. Dist. Lexis 43765, at *7 (M.D. Fla. Mar. 31, 2016))). Williams argues that T2 Modus did not adequately identify its claimed trade secrets, only "offer[ing] the vaguest of generalities in describing its services, little different from how it might describe them to prospective customers" (Dkt. #61 at pp. 12–13). Wiliams further argues that T2 Modus did not specifically describe its claimed trade secrets (Dkt. #61 at p. 13).

In response to Williams's arguments, T2 Modus claims that its responses have been sufficient and it "has nothing more to produce and no further response to provide" (Dkt. #62 at p. 2). T2 Modus further claims that it "has repeatedly denied that it submitted false interrogatory responses and continues to do so" (Dkt. #65 at p. 2).

Federal Rule of Civil Procedure 33 governs written interrogatories to parties. Rule 33 requires responses to interrogatories to "the extent [the interrogatory] is not objected to, be answered separately and fully in writing under oath." FED. R. CIV. P. 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(4).

7

Plaintiffs bringing a trade secrets case must "identify with reasonable particularity, the claimed trade secrets at issue." *UOP LLC v. Exterran Energy Sols., L.P.*, No. 4:21-cv-02804, 2021 WL 8016712, at *1 (S.D. Tex. Sep. 28, 2021) (quoting *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013)). Disclosures that only reveal "the end results of, or functions performed by, the claimed trade secrets" do not constitute reasonable particularity. *StoneEagle Servs., Inc.*, 2013 WL 9554563, at *4 (citing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 679 (N.D. Ga. 2007)). Additionally, disclosures that contain only "various concepts, elements, or components that make up designs" do not constitute reasonable particularity. *Id.* (citing *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012)). Various courts have found that identification through reasonable particularity may occur through the provision of a "list that separately breaks out each of the alleged trade secrets and identifies the trade secrets with sufficient particularity so that defendants understand how each claimed trade secret differs from information in the public domain." *UOP LLC*, 2021 WL 8016712, at *1; *StoneEagle Servs., Inc.*, 2013 WL 9554563, at *5; *Zenimax Media, Inc. v. Oculus VR, Inc.*, No. 3:14-cv-1849, 2015 WL 2015 WL 11120582, at *3 (N.D. Tex. Feb. 13, 2015); *United Servs. Auto. Ass'n v. Mitek Sys.*, No. SA-12-CA-282-FB, 2013 WL 1867417, at *1 (W.D. Tex. Apr. 24, 2013).

### A. Interrogatory No. 26

Williams takes particular issue with T2 Modus's response to Interrogatory No. 26 in Williams's Second Set of Interrogatories (Dkt. #61 at p. 13). Williams claims that T2 Modus's response is conclusory and nearly mirrors a section of the Texas Uniform Trade Secrets Act (Dkt. #61 at p. 13). The interrogatory asks:

> For all alleged intellectual property that was listed in the document entitled "T2 Intellectual Property" was sent by T2's counsel to Williams's counsel on March 2, 2023, state all facts supporting your contention that the intellectual property is a trade secret.

(Dkt. #61, Ex. 1 at p. 84).

T2 Modus's response begins with an objection: "Objection. The interrogatory is overly broad and T2 could not possibly 'state all facts'" (Dkt. #61, Ex. 1 at pp. 84–85). Then, T2 Modus's response proceeds to describe its trade secrets nearly verbatim in terms of the definition of "trade secret" under the Texas Uniform Trade Secrets Act (Dkt. #61, Ex. 1 at pp. 84–85). *See* TEX. CIV. PRAC. & REM. CODE § 134A.002(6).

T2 Modus's response to Interrogatory No. 26 in Williams's Second Set of Interrogatories does not identify any claimed trade secret at issue with reasonable particularity. Rather, it describes T2 Modus's claimed trade secrets only with general statutory language.

The Court orders T2 Modus to supplement its response to Interrogatory No. 26 in Williams's Second Set of Interrogatories via a list that separately breaks out each of the claimed trade secrets and identifies said claimed trade secrets with sufficient particularity so that Defendant understands how each claimed trade secret differs from information in the public domain. The supplemental response will not be sufficient if it merely describes the end results of or functions performed by the claimed trade secrets. Further, the supplemental response will not be sufficient if it merely contains various concepts, elements, or components that make up the trade secrets without further specificity. To illustrate the previous sentence, T2 Modus's supplemental response may not merely describe the claimed trade secret in conclusory terms such as "artificial intelligence," "machine learning," or "proprietary software" without including additional specific information.

### B. Interrogatory No. 16

The Court will not require T2 Modus to supplement its response to Interrogatory No. 16 in Williams's First Set of Interrogatories. However, the Court will require T2 Modus to certify that its response to Interrogatory No. 16 in Williams's First Set of Interrogatories is complete and accurate.

### C. Interrogatory No. 24

The Court will not require T2 Modus to supplement its response to Interrogatory No. 24 in Williams's Second Set of Interrogatories. However, the Court will require T2 Modus to produce all documents responseive to Interrogatory No. 24 in Williams's Second Set of Interrogatories that are not subject to T2 Modus's objections.

### D. Interrogatory No. 25

The Court will not require T2 Modus to supplement its response to Interrogatory No. 25 in Williams's Second Set of Interrogatories. However, the Court will require T2 Modus to certify that its response to Interrogatory No. 25 in Williams's Second Set of Interrogatories is complete and accurate.

### E. Interrogatory No. 28

The Court orders T2 Modus to supplement its response to Interrogatory No. 28 in Williams's Second Set of Interrogatories by providing contact information for each witness that T2 Modus listed in its pretrial disclosures that is responsive to Interrogatory No. 28 in Williams's Second Set of Interrogatories (Dkt. #75; Dkt. #76). This interrogatory would have been premature prior to T2 Modus's pretrial disclosures. *See Brill v. Napolitano*, No. CV 09–0421–PSG(RCx), 2010 WL 11512400, at *4 (C.D. Cal. May 12, 2010).

### F. Interrogatory No. 29

The Court orders T2 Modus to supplement its response to Interrogatory No. 29 in Williams's Second Set of Interrogatories by describing with specificity how the intellectual property listed in the "T2 Intellectual Property" document differs from publicly available software or information. Interrogatory No. 29 in Williams's Second Set of Interrogatories states:

> For all alleged intellectual property that was listed in the document entitled "T2 Intellectual Property" was sent by T2's counsel to Williams's counsel on March 2, 2023, state all facts supporting your contention that this intellectual property differs from publicly available software or information.

(Dkt. #61, Ex. 1 at p. 86). An indicative example of T2 Modus's response consists of:

> Rather, it is T2's compilation, program, code, method, property claimed by T2 as a trade secret. As to that trade secret, no company other than T2 has a procedure, method, technique or process comparable to that of T2 technique, procedure, process and financial data as a whole which constitutes the intellectual property claimed by T2 as a trade secret.

(Dkt. #61, Ex. 1 at pp. 86–87). T2 Modus's response only indicates that it believes its intellectual property is different from publicly available software or information. However, T2 Modus's response does indicate how it believes its intellectual property different from publicly available software or information in clear and specific terms.

## II. Requests for Production Relating to T2 Modus's Claimed Trade Secrets

Williams argues that T2 Modus's production of documents relating to its claimed trade secrets has been insufficient (Dkt. #61 at p. 13). Williams claims that she is entitled to documents relating to T2 Modus's claimed trade secrets because where a plaintiff alleges the misappropriation of a trade secret, it must identify the trade secrets adequately and produce relevant documents (Dkt. #61 at p. 12 (citing *Developmental Techs., LLC*, 2016 U.S. Dist. Lexis 43765, at *7)). Citing *M-I LLC v. Stelly*, Williams notes that where a "'core allegation is that Defendants misappropriate . . .

11

trade secrets . . . [those] trade secrets are both relevant and necessary,' so they must be produced" (Dkt. #61 at p. 11–12 (quoting 733 F. Supp. 2d 759, 802 (S.D. Tex. 2010))).

In response to Williams's arguments, T2 Modus claims that (regarding its responses to requests for production generally):

> T2 Modus has diligently and in good faith searched all of its records, and the records of its employees, to the extent that they are in possession or control of T2 Modus and has provided copies of all items responsive to Williams['] requests to Williams. T2 Modus has nothing more to produce and no further responses to provide.

(Dkt. #62 at p. 2). Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign the request, response, or objection, certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee's note to 1983 amendment.

A plaintiff may not sue for trade secret misappropriation without disclosure of the trade secret. In *M-I LLC*, the plaintiff brought suit against the defendant for misappropriation of trade

12

secrets. *M-I LLC*, 733 F. Supp. 2d at 802. The plaintiff sought discovery of the defendant's trade secrets in order to support an essential element of its claim. *Id*. However, the defendant resisted the discovery of its trade secrets (particularly trade secret drawings and other confidential information). *Id*. The court rejected the defendant's contentions and found that the trade secrets, "form[ed] the crux of this entire case." *Id*. The court noted that the protection the defendant sought would effectively result in "a dismissal of all of [the plaintiff's] claims." *Id*. This principal applies equally where a plaintiff brings suit against a defendant and refuses to disclose its trade secrets, since a civil defendant must receive an opportunity for a fair trial. *See Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) ("[T]he aims of the Federal Civil Rules [include] to eliminate trial by ambush and afford full and fair litigation of disputed issues.").

### A. Request for Production No. 62

At this time, the Court will not require T2 Modus to produce the source code to its claimed trade secrets in response to Request for Production No. 62 in Williams's Second Set of Requests for Production. However, Williams may make a narrower request for production regarding the source code of T2 Modus's claimed trade secrets. Williams may also send an additional interrogatory to T2 Modus regarding whether the source code of T2 Modus's claimed trade secrets relies on functions contained in third-party software libraries.

Williams has carried her burden as the movant to show that the source code to T2 Modus's claimed trade secrets is relevant to this action. T2 Modus has put forth claims of trade secret misappropriation against Williams (Dkt. #2 at pp. 10–11; Dkt. #61 at p. 12). To prove a trade secret misappropriation claim, T2 Modus must prove that Williams misappropriated its trade secret. *See*

TEX. CIV. PRAC. & REM. CODE § 134A.002(3). Williams correctly states that the source code would substantiate T2 Modus's trade secret claims (Dkt. #61 at p. 13).

T2 Modus has not carried its burden as the nonmovant to resist discovery. T2 Modus's initial argument resisting discovery of the source code is that "T2 Modus has repeatedly told Williams during discovery that its proprietary software is its trade secret" (Dkt. #62 at p. 2). However, the Court is not aware of any privilege log by T2 Modus asserting this privilege for its source code, and the Court has issued a protective order regarding T2 Modus's trade secrets (Dkt. #52). Next, T2 Modus argues that Williams provides no authority supporting her position that "100% of the source code used as a part of that proprietary software must have originated within T2 Modus" (Dkt. #62 at p. 2). Regardless of whether the previous statement is true, the source code is still relevant to this action. Finally, T2 Modus argues that "Williams provides no authority supporting her position that she is entitled to examine the source code nor has Williams identified any expert witness with the ability to do so" (Dkt. #62 at p. 2). T2 Modus's final argument does not demonstrate that the source code is irrelevant to this action or is otherwise outside the scope of discovery.

However, the Court will not order T2 Modus to produce the source code to its claimed trade secrets because Williams's proposed discovery lies outside the scope of Federal Rule of Civil Procedure 26(b)(1). *See* FED. R. CIV. P. 26(b)(2)(C)(iii). Specifically, the burden or expense of Williams's proposed discovery outweighs its likely benefit. *See* FED. R. CIV. P. 26(b)(1). The source code for T2 Modus's claimed trade secrets consists of eight terabytes of electronically stored information (Dkt. #61, Ex. 1 at p. 77). The burden and expense of processing through the eight terabytes of source code would be significant, especially considering that this case will most likely

go to trial in approximately three months (Dkt. #80). Disclosure of T2 Modus's claimed trade secret through the methods the Court has discussed elsewhere in this order will provide a more effective use of both the parties and the Court's resources.

### B. Remaining Requests for Production

The Court will not require T2 Modus to supplement its responses to Requests for Production Nos. 12, 19, 22, 23, and 33 in Williams's First Set of Requests for Production and Request for Production No. 61 in Williams's Second Set of Requests for Production. However, the Court will require T2 Modus to certify that its responses to Requests for Production Nos. 12, 19, 22, 23, and 33 in Williams's First Set of Requests for Production and Request for Production No. 61 in Williams's Second Set of Requests for Production are complete and accurate.

### III. Request for Production Relating to Williams's Counterclaims

Williams argues that T2 Modus's production of documents in response to Request for Production No. 50 in Williams's Second Set of Requests for Production is insufficient, such that it is "demonstrably incomplete" (Dkt. #61 at pp. 15–16). T2 Modus and Roach jointly identified and produced three documents of over nine pages (Dkt. #61 at p. 16; Dkt. #61, Ex. 1 at pp. 113–14). To support her claim, Williams produced a letter by Williams's counsel stating that the documents at that point in response to the request for production were insufficient (Dkt. #61, Ex. 1 at pp. 101–02).

In response to Williams's claims, T2 Modus states that it had diligently and in good faith searched and that it "has nothing more to produce and no further response to provide" (Dkt. #62 at p. 2).

The Court will not require T2 Modus to supplement its response to Request for Production No. 50 in Williams's Second Set of Requests for Production. However, the Court will require T2 Modus to certify that its response to Request for Production No. 50 in Williams's Second Set of Requests for Production is complete and accurate.

## IV.     T2 Modus's Initial Disclosures Regarding Computation of Damages

In her request for potential nonmonetary sanctions, Williams asks that T2 Modus be prohibited from introducing any evidence of damages "as [T2 Modus] didn't identify any in its Rule 26(a) disclosures . . ." (Dkt. #61 at p. 18).[2] Via affidavit, one of Williams's counsel, Ryan McCarl, states "T2's disclosures also did not compute or offer any evidence of the supposed damages alleged in T2's Complaint" (Dkt. 61, Ex. 1 at p. 9). Although T2 Modus does not directly respond to this argument, it states in its response that "T2 Modus has nothing more to produce and no further responses to provide" (Dkt. #62 at p. 2).

The Court will not bar T2 Modus from introducing any evidence of damages at this time. However, the Court will not allow T2 Modus to present evidence of damages outside of the scope of its initial disclosures, supplementations to its initial disclosures, or information otherwise made known to Williams in the course of discovery. *See* FED. R. CIV. P. 37(c)(1).

## V.     Williams's Request for Sanctions

The Court will not impose sanctions on T2 Modus at this time.

---

[2] Williams states that T2 Modus "has admitted that it incurred no damages as a result of the January 6, 2022 download alleged in its Complaint" (Dkt. #61 at p. 18). However, the Court cannot evaluate this claim as Williams has not provided a source for T2 Modus' alleged admission.

## CONCLUSION

It is therefore **ORDERED** that Defendant and Counterclaimant Colynda Williams-Arowolo's Notice of Motion and Motion to Compel Further Discovery Responses from Plaintiff T2 Modus, LLC and Request for Sanctions Against T2 Modus, LLC (Dkt. #61) is hereby **GRANTED in part** and **DENIED in part**.

T2 Modus shall produce supplemental responses to the following within 14 days following the issuance of this order:

- Interrogatory No. 26 in Williams's Second Set of Interrogatories. T2 Modus must make the supplemental response in the form of a list that separately breaks out each of the claimed trade secrets and identifies said claimed trade secrets with sufficient particularity so that Defendant understands how each claimed trade secret differs from information in the public domain. The supplemental response will not be sufficient if it merely describes the end results of or functions performed by the claimed trade secrets. Further, the supplemental response will not be sufficient if it merely contains various concepts, elements, or components that make up the trade secrets without further specificity. To illustrate the previous sentence, T2 Modus's supplemental response may not merely describe the claimed trade secret in conclusory terms such as "artificial intelligence," "machine learning," or "proprietary software" without including additional specific information.

- Interrogatory No. 24 in Williams's Second Set of Interrogatories. The supplemental response must address the interrogatory to the extent that that the interrogatory is not objected to.

- Interrogatory No. 28 in Williams's Second Set of Interrogatories. The supplemental response must provide contact information for each witness that T2 Modus listed in its pretrial disclosures that is responsive to the interrogatory.
- Interrogatory No. 29 in Williams's Second Set of Interrogatories. The supplemental response must describe with specificity how the intellectual property listed in the "T2 Intellectual Property" document differs from publicly available software or information.
- Request for Production No. 61 in Williams's Second Set of Requests for Production. The supplemental response must address the request for production to the extent that that the request for production is not objected to.

T2 Modus shall produce all documents response to Interrogatory No. 24 in Williams's Second Set of Interrogatories that are not subject to T2 Modus's objections within 14 days following the issuance of this order.

T2 Modus shall verify that the following discovery responses are complete and accurate within 14 days following the issuance of this order:

- Interrogatory No. 16 in Williams's First Set of Interrogatories.
- Interrogatory No. 25 in Williams's Second Set of Interrogatories.
- Requests for Production Nos. 12, 19, 22, 23, and 33 in Williams's First Set of Requests for Production.
- Requests for Production Nos. 50 and 61 in Williams's Second Set of Requests for Production.

Williams may file additional discovery requests as follows within 7 days following the issuance of this order:

18

- A narrower request than Request for Production No. 62 in Williams's Second Set of Requests for Production regarding the source code of T2 Modus's claimed trade secrets.

- An interrogatory to T2 Modus regarding whether the source code of T2 Modus's claimed trade secrets relies on functions contained in third-party software libraries.

**IT IS SO ORDERED.**

**SIGNED this 25th day of September, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE