Ryan McCarl (302206)
John Rushing (331273)
Davit Avagyan (336350)
**RUSHING MCCARL LLP**
2219 Main St. No. 144
Santa Monica, CA 90405
T: (310) 896-5082
E: info@rushingmccarl.com
*Attorneys for Defendant and Counterclaimant Colynda Williams-Arowolo*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

T2 MODUS, LLC,

*Plaintiff,*

v.

COLYNDA WILLIAMS-AROWOLO,

*Defendant.*

COLYNDA WILLIAMS-AROWOLO,

*Counterclaimant,*

v.

T2 MODUS, LLC, and JIM ROACH,

*Counterdefendants.*

Case No. 4:22-cv-263

Judge: Amos L. Mazzant

**Defendant and Counterclaimant Colynda Williams-Arowolo's Trial Brief**

Complaint Filed: March 4, 2022
Final Pretrial Conference: September 14, 2023 at 9:00 a.m.
Trial Date: Not Set

**DEFENDANT COLYNDA WILLIAMS-AROWOLO'S TRIAL BRIEF**

**TABLE OF CONTENTS**


I. Introduction ..... 3
II. Claims ..... 6
A. T2's claims. ..... 6
1. T2's unlawful-access claims under the Consumer Fraud and Abuse Act ("CFAA"). ..... 7
2. T2's unlawful-access claims under the Texas Harmful Access to Computers Act ("THACA"). ..... 9
3. T2's misappropriation of trade secrets claim under the Texas Uniform Trade Secrets Act ("TUTSA") ..... 9
4. T2's breach-of-NDA claim. ..... 10
5. T2's fiduciary duty claim. ..... 11
B. Williams' unpaid wages counterclaims. ..... 12
1. T2 violated California and Texas wage laws by not paying Williams her full salary. 12
2. T2 breached its employment agreement with Williams by not paying her contractual salary. ..... 14
3. T2 was unjustly enriched by not paying Williams' wages. ..... 14
4. T2 acted unlawfully and unfairly by withholding Williams' wages. ..... 15
III. Evidentiary disputes ..... 15
A. Williams' motions in limine ..... 16
B. Williams' objections to T2's exhibits ..... 17
C. Williams' objections to T2's exhibits ..... 20
IV. Witness disputes ..... 21
A. Williams' objections to T2's and Roach's witnesses ..... 22
V. Conclusion ..... 23

## TABLE OF AUTHORITIES


**Cases**

Armenta v. Osmose, Inc., 135 Cal. App. 4th 314 (2005)................................................ 14

*Baxter & Assocs., L.L.C. v. D&D Elevators, Inc.*, 05-16-00330-CV, 2017 Tex. App. LEXIS 1352 (Tex. App. Feb. 15, 2017) ........................................................................... 10

*D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018). ........................... 12

*Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177 (Tex. App. 2018)....................... 9

*Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210 (2010) ......................................... 10

*Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829 (Tex. App. 2017)...... 11

*Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts*, 300 S.W.3d 348 (Tex. App. 2009) ........................................................................................................... 14

**Statutes**

18 U.S.C. § 1030 *et seq.*........................................................................................... 6, 7

Cal. Bus. & Prof. Code § 17200. .................................................................................... 15

Cal. Lab. Code §§ 202, 203, 558.1 ........................................................................ 12, 13

Tex. Civ. Prac. & Rem. Code §§ 134A.007(a).................................................................. 11

Tex. Lab. Code §§ 61.011, 61.018 ...................................................................................... 13


## I. Introduction

Defendant and Counterclaimant Colynda Williams-Arowolo ("Williams") wishes to alert the Court to the issues likely to be raised at trial.

Plaintiff and Counterdefendant T2 Modus, LLC ("T2") licenses customer database software to auto dealerships such as Freeman Honda ("Freeman").

Williams worked for T2 from December 2019 to December 2021.[1] In January 2022, Freeman asked Williams to log into the Freeman's T2 online portal and download the its customer data.[2] Williams agreed to help. Using Freeman's login credentials, Williams accessed its T2 account and used the built-in export function to download a CSV file of Freeman's customer data.[3] T2 later sued for supposed computer hacking, theft of trade secrets, breach of contract, and breach of fiduciary duty.[4]

Williams then countersued and seeks $59,284.49 in unpaid wages and penalties because T2 did not pay Williams her full salary. As set out in her employment agreement with T2, Williams' salary was $130,000.[5] During 2020 and 2021, T2 unilaterally began failing to pay its employees' contractual salaries[6] while promising to try to make up for the underpayments.[7] Without obtaining Williams' consent, T2

---

1 Williams was Vice President of Training and Education, then Executive Vice President of Customer Excellence and Engagement. Despite her title, she was never an officer, director, owner, member, or manager. ECF No. 36-2 [Request for Judicial Notice ("RJN")] Ex. A ¶ 14, Ex. C ¶ 1–2, Ex. G ¶ 16; ECF No. 36-3 [Decl. of Colynda Williams-Arowolo in Support of Mot. for Summ. J. ("Williams Decl.")] ¶ 3, 5, 13, 14, Ex. 1.

2 Williams Decl. ¶ 20; ECF No. 36-4 [Decl. of Wyman King ("King Decl.")] ¶ 7, Ex. C (screenshot of text messages between King and Williams); ECF No. 66-1, Ex. M [Roach Dep.], 159:8–17, 336:7–10.

3 King Decl. ¶¶ 8–9, Ex. A (page one of the downloaded file), Ex. B (redacted copy of entire downloaded file); ECF No. 66-1, Ex. M [Roach Dep.], 123:18–19, 315:25–316:6, 341:17–18.

4 ECF No. 2 (Compl.) ¶¶ 26–50.

5 ECF No. 66-1, Ex. M [Roach Dep.], 203:11–13; Williams Decl. Ex. A § 2; RJN Ex. C ¶ 3.

6 RJN Ex. C. ¶ 4, Ex. G ¶¶ 13, 16; Williams. Decl. ¶ 8.

7 ECF No. 66-1, Ex. M [Roach Dep.], 210:2–5, 15–17.

underpaid Williams by about $30,000 in 2020[8] and $13,000 in 2021.[9] Additionally, when Williams resigned, T2 did not pay her final paycheck within 72 hours[10] or ever pay Williams what it owes her.[11]

None of T2's causes of action are supported by the facts. T2's unlawful access claims fail because Freeman and its agents had a right to access and download data on its own customers from T2's online portal. Williams acted as the dealership's agent when she accessed its T2 portal. Williams did not download or even access a trade secret. T2 admits that the information Williams accessed was already disclosed to a third party (Freeman), which defeats T2's breach of nondisclosure agreement claims. Williams never owed T2 a fiduciary duty, especially not on the date of the download when she was no longer a T2 employee. T2 has also not identified any damages it suffered due to Williams' actions.

T2 admits to underpaying Williams.[12] Her employment agreement for $130,000 per year was in place throughout her employment with T2,[13] and she never authorized a salary deduction.[14] Therefore, Williams' causes of action are supported by the facts and law and should succeed.

---

8 *Id.* at Ex. U, Page ID ## 275–76, No. 16; RJN Ex. B ¶ 13. Ex. D No. 56; Williams Decl. ¶ 9, Ex. B.

9 Williams Decl. ¶ 10, Ex. C; RJN Ex. C ¶ 16; ECF No. 66-1, Ex. U, Page ID ## 275–76, No. 17.

10 ECF No. 66-1, Ex. U, Page ID ## 273–74, No. 6.

11 *Id.* at Page ID # 278, No. 34, Ex. M [Roach Dep.], 210:15–17, 214:14–24.

12 *Id.* at Page ID ## 275–76, No. 16–17; RJN Ex. B ¶ 13, Ex. C ¶ 17, Ex. D No. 56.

13 ECF No. 66-1, Ex. M [Roach Dep.], 203:6–10.

14 *Id.* at Ex. U, Page ID # 277, No. 24; Ex. M [Roach Dep.], 213:18–21. *See also* RJN Ex. D, No. 51; Ex. E, No. 21; Williams Decl. ¶ 8.

## II. Claims

### A. T2's claims.

T2's claims are based on Williams' helping Freeman Honda download its own data from its online T2 portal through normal means using an export function gave Freeman for that purpose. Freeman Honda had an active software license allowing it to do exactly what T2 alleges it did with Williams' help on January 6, 2022: log into its T2 portal and export its data.

T2 experienced no damages. T2 admits that the January 6, 2022 download did not cause T2 any downtime or server interruption.[15] Nor did it cause any T2 data, program, system, or information to become unavailable to T2 or any of its customers.[16] T2's data and servers were not damaged.[17] T2 did not incur costs investigating the January 6 download; an employee discovered the download in a few minutes during a meeting, and T2 did not investigate it again.[18] T2 has no knowledge that Williams solicited T2 customers or used any customer list after her resignation.[19]

---

15 ECF No. 66-1, Ex. A, Page ID # 18, No. 39; RJN Ex. D No. 32, 33.

16 RJN Ex. D No. 35. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8).

17 ECF No. 66-1, Ex. A, Page ID # 18, No. 37, Ex. M [Roach Dep.], 341:19–25; RJN Ex. D No. 34.

18 *Id.* at Ex. M [Roach Dep.], 219:4–11, 17–21, 220:7–9, 221:11–16.

19 *Id.* at 232:12–21, 233:2–8, 307:2-5; 339:15–19.

### 1. T2's unlawful-access claims under the Consumer Fraud and Abuse Act ("CFAA").

T2 has failed to establish that Williams had either fraudulent intent or unauthorized access, so it cannot prove its CFAA claim.[20] Wyman King, General Sales Manager at Freeman, asked Williams to log into Freeman's T2 account to download Freeman's customer data.[21] He gave Williams his login credentials and password,[22] which she then used.[23] Williams' access was authorized because Freeman was a licensed client of T2 with the right and ability to log into its online T2 portal and export its data at any time. Williams downloaded the CSV file from Freeman's account with its express consent (and at its request).

Freeman was authorized and able to log into its T2 account on January 6, 2022.[24] Freeman was a licensed T2 customer able to use T2's export function to download customer data.[25] T2 had not limited or cut off Freeman's access on that date, as its

---

[20] 18 U.S.C. § 1030 *et seq*. Section 1030(a)(4) of the CFAA prohibits "knowingly and with intent to defraud, access[ing] a protected computer without authorization, or exceed[ing] authorized access, and by means of such conduct further[ing] the intended fraud and obtain[ing] anything of value"; Section 1030(a)(5)(B) prohibits "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, recklessly caus[ing] damage."

[21] *See* Williams Decl. ¶ 20; King Decl. ¶ 7, Ex. C (screenshot of text messages between King and Williams); ECF No. 66-1, Ex. M [Roach Dep.], 159:8–17, 170:7–12, 301:1–2, 336:7–10.

[22] Williams Decl. ¶ 21; King Decl. ¶ 7.

[23] *See* ECF No. 66-1, Ex. M [Roach Dep.], 115:8–11, 120:20–121:12.

[24] *See id.* at 114:10–24, 121:25–22:5, 158:16–20, 194:1–10, 349:12–16. *See also* ECF No. 66-1, Ex. A, Page ID # 9, Nos. 7, 28, Nos. 7, 8; RJN Ex. D No. 1, 16.

[25] *See* ECF No. 66-1, Ex. B, Page ID # 28, No. 8 ("T2 removed Freeman Honda's access to T2's online platform on January 31, 2022."); RJN Ex. D No. 1, 16.

software license was in effect.[26] Under Freeman's licensing agreement with T2, Freeman's access to T2's services extended for 30 days beyond that termination notice (well after the January 6 download).[27]

Williams did not exceed her authorization when downloading the customer file on January 6. Williams downloaded the CSV file of customer data by using the export function built into T2's client portal.[28] All the data she accessed was available for Freeman to view and download.[29]

T2 has not established that Williams intended to defraud T2, that T2 suffered any damage from Williams' actions, or that Freeman (and, by extension, Williams) was unauthorized to access its portal. With no intent to defraud and no unauthorized access, Williams cannot have violated the CFAA.

---

[26] *Id.* at Ex. M [Roach Dep.], 114:10–24 ("Q. And so as of – as of January 6th, 2022, you haven't terminated Freeman Honda's access to its account? A. Obviously."), 158:5–10 ("As of that date [January 6th, 2022] we weren't aware that there was a cancellation.").

[27] *Id.* at 195:19–23 ("Q. So the actual license agreement applicable to Freeman Honda says that termination occurs 30 days after receipt of termination notice, correct? A. That is correct.").

[28] *See id.* at 122:6–11; King Decl. ¶ 6.

[29] *See* ECF No. 66-1, Ex. M [Roach Dep.], 98:24–99:3 ("[W]hen the dealership exports data from the portal, it is only records . . . and data that they have a right to see. . . ? A. That's correct."), 151:19–160:13, 349:12–16. *See also* ECF No. 66-1, Ex. B, Page ID # 29, No. 11; King Decl. ¶ 5, 8–10; RJN Ex. E Nos. 11, 14; Williams Decl. ¶ 27.

**2. T2's unlawful-access claims under the Texas Harmful Access to Computers Act ("THACA").**

THACA states that it is an offense if a "person knowingly accesses a . . . computer system without the effective consent of the owner."[30] An "owner" is one who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor" or who is the "licensee of the data."[31] Freeman was a licensee of the data in its T2 account.[32] That data was generated based on information provided by Freeman to T2.[33] Williams logged in and downloaded data on Freeman's behalf and at their request.[34] Therefore, T2 has failed to establish that Williams violated THACA.

**3. T2's misappropriation of trade secrets claim under the Texas Uniform Trade Secrets Act ("TUTSA").**

Under TUTSA, the elements of misappropriation of a trade secret are (1) ownership of a trade secret; (2) misappropriation of the trade secret; and (3) an injury.[35] "Trade secrets" are information that "derives independent economic value . . . from not being generally known to . . . other persons who can obtain

---

30 Tex. Pen. Code § 33.02(a).

31 Tex. Pen. Code § 33.01(15).

32 *See* RJN Ex. D No. 3.

33 All the data in the downloaded file or otherwise available in Freeman's T2 account belonged to Freeman Honda, pertained to Freeman Honda's customers, and was made available by T2 for Freeman Honda to view or download at any time. King Decl. ¶ 10; Williams Decl. ¶ 27.

34 *See* Williams Decl. ¶ 21, Ex. G; King Decl. ¶ 7.

35 *Morgan v. Clements Fluids S. Tex., Ltd.*, 589 S.W.3d 177, 186 (Tex. App. 2018).

economic value from its disclosure" and "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[36]

Throughout this litigation, T2 has refused to state what trade secrets they allege that Williams stole. T2 admits that it "does not contend that the Freeman data itself constitutes a trade secret"; [i]t is T2's analytics when applied to the data uploaded by licensed customers which are the trade secret."[37] T2 admits that Williams did not download those analytics or T2's source code, algorithms, or neural network data.[38] T2's software cannot be downloaded from a dealership portal (which is all that Williams accessed).[39] As held in *Silvaco Data Sys. v. Intel Corp.*, "one does not, by executing machine-readable software, 'use' the underlying source code; nor does one acquire the requisite knowledge of any trade secrets embodied in that code."[40] Anything that Williams downloaded was freely disclosed to Freeman and its agents, meaning it was not secret and therefore not a trade secret.

**4. T2's breach-of-NDA claim.**

T2 alleges that Williams violated a non-disclosure agreement (NDA) by accessing and disclosing confidential information.[41] The NDA aims to "protect certain

---

[36] *Baxter & Assocs., L.L.C. v. D&D Elevators, Inc.*, 05-16-00330-CV, 2017 Tex. App. LEXIS 1352, at *23 (Tex. App. Feb. 15, 2017) (internal citations omitted).

[37] ECF No. 66-1, Ex. C, Page ID # 44, No. 20.

[38] *See id.* at Ex. N, Page ID # 237, No. 81; Ex M. [Roach Dep.] 300:6–15.

[39] *See id.* at Ex. N, Page ID # 236, No. 78 ("Admit that T2's software cannot be downloaded from a dealership's licensed T2 account. ANSWER: Admit.").

[40] *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 216 (2010) (affirming a motion for summary judgment because using software is not trade secret misappropriation) (overruled in part on other grounds).

[41] Compl. ¶ 45–46; *see* Compl. Ex. A.

confidential information, which may be disclosed between T2 and [Williams]."[42] The NDA excludes information that "is disclosed generally to a third party by [T2] without a duty of confidentiality on the third party."[43] The NDA also excludes confidential information rightfully received without an associated duty of confidentiality.[44]

The information Williams accessed was available to Freeman through its T2 portal.[45] It was not kept confidential from Freeman and its agents. Freeman rightfully received that information according to its software license.[46] As a third party, Freeman and its agents did not have a duty of confidentiality as to the downloaded data. Williams did not breach the nondisclosure agreement because the information she downloaded as Freeman's agent was disclosed to and rightfully received by Freeman.

**5. T2's fiduciary duty claim.**

T2 alleges that Williams breached a fiduciary duty to T2 despite having no evidence that she owes such a duty. This claim is also preempted by TUTSA because it seeks relief based on the same conduct.[47] T2 has failed to establish that Williams had a fiduciary duty to T2 at any time, especially not after she resigned. Employees "are not fiduciaries of their employers simply by virtue of the employment

---

[42] *See* Compl. Exh. A, preamble.

[43] *Id.* at § 4(iv).

[44] *Id.* at § 4(iii).

[45] *See* King Decl. ¶ 10; Williams Decl. ¶ 27.

[46] *See* RJN Ex. D Nos. 1–3.

[47] Tex. Civ. Prac. & Rem. Code §§ 134A.007(a); *Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 843 (Tex. App. 2017); *see* Compl. ¶ 34-40 (Count 3, alleging violation of TUTSA).

relationship."[48] If an employee does owe their employer a fiduciary relationship, that duty ends when the employment relationship ends.[49] Therefore, Williams never owed T2 a fiduciary duty and could not have breached any duty even if the claim were not preempted.

### B. Williams' unpaid wages counterclaims.

Williams' contractual salary was $130,000 per year.[50] T2 admits that it paid Williams $99,949.78 in 2020, which is a shortfall of $30,051.22.[51] T2 paid Williams $111,084.22 in 2021, which is a shortfall of $13,757.08.[52] Based on the number of unpaid business days that Williams worked, T2 owes her a penalty of $15,476.19.[53] In total, Williams' damages are $59,284.49.

#### 1. T2 violated California and Texas wage laws by not paying Williams her full salary.

California law requires that companies pay employee wages on time.[54] If an employee resigns without providing a 72-hour notice, her employer must send any

---

48 *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 216 (5th Cir. 2018).

49 *See id.* at 219.

50 *Id.* at 180:11–13; Williams Decl. Ex. A § 2; RJN Ex. C ¶ 3.

51 ECF No. 66-1, Ex. E, Page ID # 279, No. 31.

52 Williams Decl. ¶ 10.

53 Williams worked 59 unpaid business days. The maximum number of days under California's penalty law is 30 days, so T2 owes a penalty of $15,476.19. Cal. Lab. Code § 203(a).

54 *See* Cal. Lab. Code §§ 202, 203, 558.1. California law applies because Williams worked and lived in California throughout her employment with T2. *See* ECF No. 66-1, Ex. M [Roach Dep.], 186:3–5.

owed wages within 72 hours. If not, penalties begin to accrue.[55] In Texas, wages cannot be withheld for more than a month without the employee's legal cause or written authorization.[56]

In a written employment agreement, T2 agreed to pay Williams a salary of $130,000 per year.[57] In 2020, T2 and counterdefendant Jim Roach ("Roach") unilaterally decided not to pay Williams that full salary.[58] Instead, Williams was underpaid by $43,808.30.[59] Williams never authorized that deduction,[60] and T2 admits that it never paid Williams her missing wages.[61]

Any employer or "person acting on behalf of an employer" who causes a violation of the relevant California labor laws may be held liable.[62] Roach was T2's manager and CEO.[63] Because T2's salary underpayments were not accidental, but occurred under a policy that Roach deliberately implemented for T2 in March 2020,

---

55 Cal. Lab. Code § 203(a).

56 *See* Tex. Lab. Code §§ 61.011, 61.018.

57 Williams Decl. Ex. A § 2; RJN Ex. C ¶ 3.

58 *See* RJN Ex. C. ¶ 4, Ex. G ¶¶ 13, 16; Williams. Decl. ¶ 8.

59 *See* ECF No. 66-1, Ex. U, Page ID # 278, Nos. 31, 33.

60 *Id.* at Ex. U, Page ID # 277, No. 24 ("Roach admits that there was no written authorization to make a deduction from wages[.]").

61 *See id.* at Ex. M [Roach Dep.], 214:14–24

62 Cal. Lab. Code § 558.1.

63 *See* ECF No. 66-1, Ex. U, Page ID # 274, Nos. 10–11.

the underpayments were willful.[64] Roach, as T2's manager and majority owner, is liable under California law for Williams' unpaid wages claim.

All the relevant facts are admitted. Williams is entitled to unpaid wages, statutory penalties, and attorney's fees for her unpaid wages, and T2 and Roach are jointly and severally liable for these amounts.

**2. T2 breached its employment agreement with Williams by not paying her contractual salary.**

T2 and Williams had an employment contract effective from December 1, 2019, to Williams' resignation in 2021.[65] Williams did her job, but T2 failed to pay her full salary.[66] By not fulfilling its obligations, T2 breached its employment agreement with Williams.

**3. T2 was unjustly enriched by not paying Williams' wages.**

In Texas, "one who receives benefits unjustly should make restitution for those benefits."[67] T2 benefited from Williams' strong performance in her role with T2, but

---

[64] *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay, without abatement or reduction, … in accordance with Section[] 202, … any wages of an employee … who quits, the wages of the employee shall continue as a penalty from the due date thereof … for … 30 days."). "As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 325 (2005).

[65] *See* ECF No. 36-3 [Williams Decl.] Ex. A; ECF No. 36, 32; ECF No. 66-1, Ex. M [Roach Dep.], 203:1–5.

[66] *See* ECF No. 66-1, Ex. U, Page ID ## 275–76, Nos. 16–17.

[67] *Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts*, 300 S.W.3d 348, 367 (Tex. App. 2009).

T2 withheld her wages.[68] T2 cannot justify this failure, so Williams is entitled to restitution of her lost wages.

**4. T2 acted unlawfully and unfairly by withholding Williams' wages.**

California law prohibits unlawful or unfair business acts.[69] This includes failing to pay wages, as the court may order payment of "wages unlawfully withheld from an employee."[70] Williams is entitled to such payment for the reasons given above.

## III. Evidentiary disputes

Williams filed six motions *in limine* with the Court to raise evidence objections. T2 did not file any motions *in limine*. Williams' objections to T2's exhibits and witnesses are summarized below. T2 did not object to Williams' exhibits by the Court's deadline, so any such objections are not listed here.

---

68 *See* ECF No. 66-1, Ex. U, Page ID ## 275–76; Ex. M [Roach Dep.], 210:15–17, 214:14–24.

69 Cal. Bus. & Prof. Code § 17200.

70 *Id.* at § 17203.

**A. Williams' motions in limine**

| MIL # | Description |
|---|---|
| 1 | T2's purported experts, Jim Roach and Rory Ellis ("Ellis"), should be excluded because they are not qualified, do not know how T2's program and software work, and offer irrelevant testimony.[71] Roach knows nothing about T2's source code or how it works.[72] Roach also lacks any education in computer science.[73] Ellis' proposed testimony pertains to undisputed facts, making it cumulative and unhelpful to the jury. |
| 2 | T2 should not be allowed to testify about its source code since no witness has personal knowledge.[74] Roach and the rest of T2's current employees did not write the source code and do not "touch the code" now.[75] T2 did not name a competent expert who can discuss the code at trial. Without this information, Williams cannot investigate and rebut T2's arguments about its source code, trade secrets, or technology. |
| 3 | T2 should be prevented from using terms like "artificial intelligence," "machine learning," and "proprietary" to refer to its software because no witness knows whether T2's technology uses AI and machine learning or is proprietary.[76] Using "proprietary" or "trade secret" asserts a legal conclusion. |
| 4 | T2's undisclosed and speculative damage amounts should be excluded under Rule 37.[77] T2 has not provided a computation of damages. This failure is neither justified nor harmless. |

---

[71] *See* ECF No. 66 [Williams' Motions in Limine], pp. 4–7.
[72] Roach has never seen T2's source code. ECF No. 66-1 Ex. M, 26:19–22; 29:13–15.
[73] *See id.* at 75:13–15. Roach has not "coded ever on tech companies." *Id.* at 25:1–2.
[74] *See* ECF No. 66 [Williams' Motions in Limine], pp. 7–8.
[75] ECF No. 66-1 Ex. M, 25:20–24, 86:8–13.
[76] *See* ECF No. 66 [Williams' Motions in Limine], pp. 8–10.
[77] *See id.* at pp. 10–12.

| | |
|---|---|
| 5 | T2 should not be allowed to make last-minute changes to its allegations about what its trade secret is. Doing so circumvents disclosure and discovery requirements.[78] |
| 6 | Freeman's supposed breach of T2's licensing agreement has no relevance and should be excluded. Williams was not a signatory to the licensing agreement, and Freeman is not a party to this lawsuit. Disputing what Freeman could do under its licensing agreement is irrelevant and unduly prejudicial.[79] |

**B. Williams' objections to T2's exhibits**

| Exh. # | Objection | Description |
|---|---|---|
| P1 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No Bates label is provided to identify which screenshot is to be introduced.<br>Based on Williams' reasonable understanding, Williams also objects as follows:<br>Authenticity (FRE 901).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Hearsay (FRE 801).<br>Compound (FRE 106 and 1002).<br>Best-evidence rule and discovery misconduct (FRE 1002 and FRCP 37). T2 is trying to introduce | CRM Screenshots (RFP 24) |

---

[78] *See id.* at pp. 12–14.
[79] *See id.* at pp. 14–15.

| | | |
|---|---|---|
| | evidence about its software, although it has refused to produce the software and its code. | |
| P2 | Authenticity (FRE 901).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Hearsay (FRE 801).<br>Compound (FRE 106 and 1002).<br>Best-evidence rule and discovery misconduct (FRE 1002 and FRCP 37). T2 is trying to introduce evidence about its software although it has refused to produce the software and its code. | T2 Modus Data Field Catalog (RFP 7) |
| P3 | Authenticity (FRE 901).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Cumulative (FRE 403) – relates to stipulated facts.<br>Hearsay (FRE 801 and 805). | Screenshot of users 1-28-2022 (RFP 5) |
| P4 | Unfairly prejudicial, irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Hearsay (FRE 801). | License and Services Agreement for T2 Data Science and Platform Solution between T2 and Freeman Honda (RFP 8) |
| P5 | Authenticity (FRE 901).<br>Hearsay (FRE 801 and 805).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Improper legal conclusions and opinion testimony (FRE 701).<br>Improper negotiation evidence (FRE 408). | Letter from T2 counsel to Freeman Honda 3-7-22 (RFP 8) |
| P6 | Authenticity (FRE 901).<br>Hearsay (FRE 801 and 805). | Draft data breach notice to Freeman Honda (RFP 8) |

| | | |
|---|---|---|
| | Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Improper legal conclusions and opinion testimony (FRE 701).<br>Improper negotiation evidence (FRE 408). | |
| P7 | Authenticity (FRE 901).<br>Hearsay (FRE 801 and 805).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Improper legal conclusions and opinion testimony (FRE 701).<br>Improper negotiation evidence (FRE 408). | Letter from T2 counsel to The AutoMiner 3- 7-22 (RFP 9) |
| P8 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No Bates number or other way to identify the document is provided. Based on Williams' reasonable understanding of what this exhibit might be, Williams also objects as follows:<br>Authenticity (FRE 901).<br>Hearsay (FRE 801 and 805).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403).<br>FRCP 26 & 37. The document was not disclosed. | T2 correspondence with ADP re wage reduction |
| P10 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No Bates label or other way to identify the document is provided.<br>Authenticity (FRE 901). | Email from Williams re resignation of employment (RFP 3) |

| | | |
|---|---|---|
| | Irrelevant and cumulative (FRE 402 and 403). | |
| P11 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No Bates label or other way to identify the document is provided.<br>Authenticity (FRE 901).<br>Hearsay (FRE 801 and 805). | Williams' W2s from T2 for 2020 and 2021 [redacted] |
| P12 | FRCP 26 & 37. The document was not disclosed until after the close of discovery.<br>Hearsay (FRE 801 and 805).<br>Irrelevant, misleading, and confusing the issue. (FRE 401, 402, 403). | Text message exchange between Williams and Roach on 3-5-2021 (RFP 3 Texts, p. 119) |
| P13 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No Bates label or other way to identify the document is provided.<br>Authenticity (FRE 901). | The file "Freeman Honda VNLO JAN HSRP.csv," downloaded on January 6, 2022 [customer names and contact info redacted] |

**C. Williams' objections to T2's exhibits**

| Exh. # | Objection | Description |
|---|---|---|
| R1 | Hearsay (FRE 801).<br>Irrelevant, unfairly prejudicial, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Authenticity (FRE 901); Best evidence (FRE 1004). | email between Roach and Brad Nichols re salary reductions (RFP 48) |
| R2 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No | emails between Nichols and Matthews re pay reduction |

| | | |
|---|---|---|
| | Bates label or other way to identify the document is provided.<br>FRCP 26 & 37 – document was not disclosed.<br>Hearsay (FRE 801).<br>Irrelevant, unfairly prejudicial, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Authenticity (FRE 901); Best evidence (FRE 1004). | |
| R3 | Williams objects to this exhibit since it is unintelligibly vague as to what document(s) are listed. No Bates label or other way to identify the document is provided.<br>FRCP 26 & 37 – document was not disclosed.<br>Hearsay (FRE 801).<br>Irrelevant, unfairly prejudicial, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Authenticity (FRE 901); Best evidence (FRE 1004). | emails between Nichols and Melton re pay reduction |
| R4 | FRCP 26 & 37 – document was not disclosed.<br>Hearsay (FRE 801).<br>Irrelevant, unfairly prejudicial, misleading, and confusing the issue. (FRE 401, 402, 403).<br>Authenticity (FRE 901); Best evidence (FRE 1004). | Roach Pay 2020-2022 (RFP 16) |

## IV. Witness disputes

T2 did not object to Williams' witnesses by the Court's deadline, so any such objections are not listed here.

**A. Williams' objections to T2's and Roach's witnesses**

1. **Jim Roach** should not be allowed to testify as an expert on topics in which he has no specialized knowledge. In his deposition, Roach testified that he has never seen the T2 source code and therefore does not know how it works.[80] Roach intends to offer testimony based on hearsay from undisclosed third parties and speculation.[81]

2. **Rory Ellis'** testimony is cumulative and unhelpful to the jury. Williams objects to Ellis as an expert witness testifying on the topics listed in T2's Rule 26 initial disclosures.

3. **"Witnesses identified by Williams and Roach"** is not a proper witness designation. Williams is entitled to know who T2 intends to call as a witness, and no other witnesses were disclosed in T2's Rule 26(a) disclosures. T2 may not engage in trial by surprise.

4. **Brad Nichols** was never listed in T2's or Roach's Rule 26 disclosures. Under Rule 37, he should not be allowed to testify. T2 should not be rewarded for its refusal to provide substantive Rule 26(a) disclosures (despite Williams' counsel repeatedly identifying the disclosures' deficiencies). Additionally, any testimony he could offer would be irrelevant, unfairly prejudicial, and lacking in foundation.

5. **Meri Glade** should not be allowed to testify per Rule 37 because Jim Roach never served Rule 26 disclosures listing Meri Glade as a potential witness. T2 should not be rewarded for its refusal to provide substantive Rule 26(a) disclosures (despite Williams' counsel repeatedly identifying the disclosures' deficiencies). Additionally, any testimony she could offer would be irrelevant, unfairly prejudicial, and lacking in foundation.

---

[80] ECF No. 66-1 Ex. M [Roach Dep.], 26:19–22; 28:13–15.

[81] *See* ECF No. 66, pp. 4–7.

6. **Jason Matthews** should not be allowed to testify per Rule 37 because Jim Roach never served Rule 26 disclosures listing Jason Matthews. T2 should not be rewarded for its refusal to provide substantive Rule 26(a) disclosures (despite Williams' counsel repeatedly identifying the disclosures' deficiencies). Additionally, any testimony he could offer would be irrelevant, unfairly prejudicial, and lacking in foundation.

## V. Conclusion

T2 sued Williams for helping T2's client Freeman Honda log in to its licensed T2 software portal and export its own data, which it had the right to do. T2 has not shown that it suffered any damages or that it has any trade secret, much less that any trade secret was misappropriated. It has refused to provide the software code supposedly implementing its trade secret, so there is no reason to believe the code contains any trade secrets and no way to verify T2's vague and conclusory assertions that it does. Meanwhile, T2 admits that it implemented unilateral wage underpayments beginning in March 2020. It unlawfully withheld over $40,000 of Williams' earned wages without her consent.

As explained in Williams' Motion for Reconsideration and Summary Judgment (ECF Nos. 86-1, 85-2, and 90), all the relevant facts are admitted; T2 did not experience and has not disclosed any damages; and T2 had failed to coherently identify any trade secrets and refused to disclose whatever trade secrets its software supposedly contains.

Dated: October 13, 2023

Respectfully submitted,

John Mayfield Rushing
(Cal. SBN 331273)

Ryan McCarl
(Cal. SBN 302206)

and Davit Avagyan (Cal. SBN 336350)

**RUSHING MCCARL LLP**
2219 Main St. No. 144 | Santa Monica, CA 90405
T: (310) 896-5082 | E: info@rushingmccarl.com

*Attorneys for Defendant and Counterclaimant*
*Colynda Williams-Arowolo*